IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETER M. GALLIGAN,

Plaintiff,

v.

ADTALEM GLOBAL EDUCATION INC., et al.,

Defendants

Case No. 1:17-cv-06310
Hon. Joan H. Lefkow

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Brian Stolzenbach
bstolzenbach@seyfarth.com
Megan E. Troy
mtroy@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

March 27, 2018

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Adtalem Global Education Inc. (ATGE), Adtalem Global Health, Inc. (AGH), and Ross University School of Medicine School of Veterinary Medicine (St. Kitts) Limited (Ross or RUSVM) respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint in its entirety.

## Introduction

Plaintiff Peter Galligan was dismissed from Ross University School of Veterinary Medicine, a graduate-level veterinary school located on the island of St. Kitts, because he failed to meet the school's academic requirements. Now, he should be dismissed from this Court for failure to state a cognizable claim for relief.

Plaintiff alleges nine (in reality, eight) causes of action against the school and two of its parent corporations. First, he claims that Defendants violated Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701, *et. seq.*, and Title III of the Americans with Disabilities Act ("ADA Title III"), 42 U.S.C. §§ 12101, *et. seq.*, by failing to accommodate his test anxiety, dismissing him from school, discriminating against him for complaining about this supposed failure to accommodate, and failing to provide him with certain information during his appeal of the dismissal. He also claims that Defendants defrauded him, in violation of both common law and an Illinois consumer fraud statute, and engaged in a civil conspiracy to defraud him. In addition, he contends that Defendants breached a fiduciary duty and a contract. Finally, he makes an "alter ego" allegation, pled in the alternative to his civil conspiracy claim, that is not so much a separate cause of

action, as an attempt to ensure that he does not lose his grip on the parent companies.

In reality, he has no grip on anyone. Plaintiff's is a proverbial "throwing spaghetti against a wall" complaint, but notwithstanding the sheer volume of claims Plaintiff makes, each one should be dismissed under Rule 12(b)(6) for failure to state a claim. Neither the Rehab Act nor ADA Title III apply outside the borders of the United States (*i.e.*, in St. Kitts, where the alleged wrongdoing occurred). Along similar lines, the Illinois consumer fraud statute has no application to alleged fraudulent activity that took place in either California or St. Kitts, but not in Illinois. At any rate, Plaintiff fails to state a plausible claim for relief under that statute even if one supposes that the alleged fraudulent activity occurred in Illinois. Finally, with respect to his common law claims, Plaintiff does not make any allegations sufficient to create a plausible claim for relief. As a result, the Second Amended Complaint should be dismissed.

## Basic Factual Background

Defendant RUSVM is a graduate school of veterinary medicine with its academic campus located on the island nation of Saint Christopher and Nevis (commonly known as "St. Kitts"). (Second Amended Complaint ("SAC") ¶¶ 8, 19.) Defendant ATGE is RUSVM's ultimate parent company, a publicly-traded corporation with its headquarters in Illinois. (*Id.* ¶¶ 6, 7.) Defendant AGH is an intermediate subsidiary between ATGE and RUSVM. (*Id.* ¶¶ 7, 14.)

Plaintiff moved to St. Kitts and commenced his studies at Ross in May 2013. (*Id.* ¶¶ 1, 28.) Plaintiff purportedly suffers from test anxiety and needs a separate room and extended testing time during exams. (*Id.* ¶¶ 29-31.) Upon arrival in St. Kitts, he allegedly informed a school psychologist about his test anxiety and requested accommodations for the condition, only to be denied. (*Id.*)

During his second semester, Plaintiff failed three of his four classes. (*Id.* ¶ 32.) He then left school for a spell to take what he calls a "therapeutic sabbatical." (*Id.* ¶¶ 33, 37.) Eventually, he returned (on academic probation) and continued his studies. (*Id.* ¶ 35.) Upon his return, he allegedly asked the school psychologist once again for accommodations to address his test anxiety, but he claims his requests were denied once again. (*Id.* ¶ 36.) Plaintiff later failed another class, in violation of his academic probation, and was dismissed from school. (*Id.* ¶¶ 40, 41.) He appealed the dismissal, but the school denied the appeal. (*Id.* ¶ 42.)

## Argument

### I. The Rehab Act and Title III of the ADA Do Not Apply in St. Kitts.

For his first two causes of action, Plaintiff brings claims for failure to accommodate his alleged disability under two separate federal statutes, the Rehab Act and ADA Title III. These statutes are American federal statutes with applicability in the United States and its territories; they do not govern conduct occurring in St. Kitts. Because Plaintiff's alleged requests for accommodations (and the denials of those requests) occurred in St. Kitts, (SAC ¶¶ 29, 31, 36), his claims under the Rehab Act and ADA Title III must be dismissed.

3

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotations omitted) (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (*Aramco*), and *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)); *see also Government of Bermuda v. Lahey Clinic, Inc.*, No. 17-cv-10242, 2018 WL 1243954, *3 (D. Mass. March 8, 2018) (citing *Morrison*) ("This presumption [against extraterritoriality] holds that absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application.").

Notwithstanding this longstanding principle, various district courts and courts of appeals demonstrated a tendency over the years to "divine" a Congressional intention towards exterritorial application even when no such intention was clearly expressed by the legislature. *See Morrison*, 561 U.S. at 255-61. In *Morrison*, the Supreme Court bluntly rebuked this approach, reiterated the strong presumption against extraterritorial application of American statutes, and explained that the presumption may be overcome only by "affirmative" and "clearly expressed" Congressional intent. *See id.* at 255. "When a statute gives no clear indication of an extraterritorial application, it has none." *Id.*

Based on this Supreme Court precedent, it is beyond serious dispute that the Rehab Act and ADA Title III apply only in the United States, not in St. Kitts. *See Archut v. Ross Univ. Sch. of Veterinary Medicine*, No. 10-1681, 2012 WL 5867148,

4

*10, 12 (D.N.J. Nov. 18, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014). In *Archut*, another former Ross veterinary student sued the school under the same statutes for an alleged failure to accommodate her disability during exams, but the Third Circuit affirmed the district court's dismissal of those claims because the Rehab Act and ADA Title III do not apply outside the United States. *See id.*

In fact, the Rehab Act specifically states that it applies only to "individual[s] with a disability in the United States." *See* 29 U.S.C. § 794. Under the *Morrison* test, such specificity is not even necessary because there is a presumption of strictly domestic application. Even so, the text of this particular statute removes all doubt. *See Archut*, 2012 WL 5867148 at *4 (noting that the Rehab Act "prohibits discrimination in any program or activity against any 'otherwise qualified individual with a disability in the United States'"); *cf. also Phillips v. St. George's Univ.*, Case No. 07-cv-1555, 2007 WL 3407728, *1, 5 (E.D.N.Y. 2007) (holding that Title IX's prohibition on sex discrimination in higher education does not apply in Grenada, noting that "Title IX's use of 'person in the United States' suggests that the statute applies only to persons located in the United States").

It is equally clear that ADA Title III does not apply in St. Kitts. In addition to the default presumption articulated in *Morrison*, the legislative history of the ADA places the question beyond dispute. In 1991, the Supreme Court held that Title VII of the Civil Rights Act of 1964 did not apply overseas, even to American employers who employ Americans abroad. *See Aramco*, 499 U.S. at 248. In response, Congress amended Title VII of the Civil Rights Act and **Title I** of the ADA (dealing with

5

disability discrimination in **employment**) to "provide for limited extraterritorial application." *See Asplundh Tree Expert Co. v. NLRB*, 365 F.3d 168, 180 (3d Cir. 2004). Although Congress amended Title I of the ADA, it did not amend Title III, which covers public accommodations like universities. *See* 102 P.L. 166 § 109; *compare* 42 U.S.C. §§ 12112(a), 12112(c)(2)(A) *with* 42 U.S.C. §§ 12181-12189. Recognizing this, the courts have held that ADA Title III does not apply abroad, and this includes the specific holding that it does not apply to Ross in St. Kitts. *See Archut*, 2012 WL 5867148 at *12; *Loving v. Princess Cruise Lines, Ltd*, No. 08-2898, 2009 U.S. Dist. LEXIS 130477 (C.D. Cal. 2009).[1]

Even if Supreme Court precedent, statutory language, and legislative history did not make all this clear, the Department of Education and the Department of Justice both have issued opinions supporting Defendants' position. *See Arizona State Univ.*, Case No. 08012047 (Dep't of Educ., Dec. 3, 2001) (Exh. A) (Rehab Act does extend outside the United States); U.S. Dep't of Justice Letter re: Access Abroad, 17 Nat'l Disability L. Rep. (Lab. Rel. Press) ¶ 262 (July 29, 1999) (Exh. B) (ADA Title III does not have extraterritorial application). The "respect" owed to these agency opinions only further supports the dismissal of Plaintiff's claims. *See Christensen v.*

---

[1] Defendants note that, while reaching the correct result on both the Rehab Act and ADA Title III, the district court in *Archut* at times veered into irrelevant issues in its analysis, in somewhat similar fashion to the courts that were rebuked by the Supreme Court in *Morrison* for looking at factors other than the presumption against extraterritorial application and whether Congress expressed clear intentions to the contrary. The extraterritoriality analysis with respect to the Rehab Act and ADA Title III is very straightforward, especially given the relevant statutory text and legislative history.

*Harris County*, 529 U.S. 576, 587 (2000). Accordingly, Plaintiff's claims under the Rehab Act and ADA Title III should be dismissed with prejudice.

II.  **The ICFA Does Not Apply to Alleged Fraud Outside Illinois, and Plaintiff Has Not Alleged a Plausible IFCA Claim, Regardless.**

In his fourth cause of action, Plaintiff alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS §§ 505/1, *et. seq.* This claim also should be dismissed as a matter of law. Plaintiff alleges that he was induced to leave his home in California to attend veterinary school in St. Kitts by various statements made in promotional videos about Ross that he watched on "YouTube" and statements he read in materials found on Defendants' websites. (SAC ¶¶ 22-26.) He then claims that these statements turned out not to be true, based on the school's alleged failure to accommodate his disabilities and eventual dismissal from school. (*Id.* ¶¶ 27, 65, 73.) Plaintiff fails to state a claim under the IFCA because he does not allege any fraud occurring in Illinois and because his allegations would not state a plausible claim even if there were a connection to Illinois.

The Illinois Supreme Court established a test in *Avery v. State Farm*, 835 N.E.2d 801 (Ill. 2005), that "severely limited the extraterritorial reach of the ICFA." *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). The *Avery* decision held that "the ICFA did not create a cause of action for fraudulent acts that had little or no connection to the state of Illinois" and specifically limited nonresident plaintiffs' ability to sue under the statute. *See id.* Although *Avery* calls for a fact-specific inquiry rather than a bright line rule, *see id.*, in this case **none** of

7

the alleged conduct, fraudulent or otherwise, occurred in Illinois. Plaintiff claims he was induced to attend Ross while living in California and suffered the effects of the so-called fraudulent inducement while living in St. Kitts. This lawsuit's only connection to Illinois is the mere location of ATGE's principal place of business. (SAC ¶ 6.) This tenuous connection is not enough to invoke the ICFA. *See International Equipment Trading, Ltd. V. Illumina, Inc.*, No. 17 C 5010, 2018 WL 1087641, \*4 (N.D. Ill. Feb. 28, 2018) (granting motion to dismiss an IFCA claim where the only "tangible connection to Illinois" was the defendant's state of incorporation and principal place of business); *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, No. 11 C 8894, 2013 WL 1337303, \*7 (N.D. Ill. Mar. 29, 2013) (finding no substantial connection when only connection to Illinois is plaintiff being an Illinois business); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 316 (Ill. App. Ct. 2007) (location of defendant's headquarters is not sufficient; the test focuses on where the allegedly fraudulent activities occurred).

Even if Plaintiff's ICFA claim could apply to the alleged conduct at issue, he still would not have plausibly stated a claim under the IFCA. Mere "puffing"—*i.e.*, "subjective descriptions relating to quality," such as "high quality" or "magnificent"—cannot constitute deceptive advertising. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). The alleged fraud in this case is limited to materials touting Ross's "supportive" and "wonderful" faculty; "the opportunity [for Ross students] to follow their chosen career"; Ross's "academic excellence"; Ross's dedication to helping students "achieve their goals"; and Ross's "culture of

8

care." (SAC ¶¶ 22-26.) Under *Barbara's Sales*, these statements are mere "puffing" and not actionable as fraudulent or deceptive advertising under the IFCA. *See also Carlay Co. v. Federal Trade Commission*, 153 F.2d 493, 496 (7th Cir. 1946) (holding that words such as "wonderful" and "excellent" are regarded in law as mere puffing upon which no charge of misrepresentation can be based).

III. **Plaintiff's Common Law Claims for Fraudulent Inducement and Negligent Misrepresentation Fail To State a Plausible Claim for Relief.**

The factual assertions underlying Plaintiff's third and fifth claims for relief are the same as those underlying his IFCA claim, and these assertions do not state a plausible common law claim of fraud or negligent misrepresentation any more than they state a claim under the statute. Whether suing for intentional or negligent misrepresentation, Plaintiff must allege justifiable reliance on a false statement of material fact, as well as damages (among other things). *See Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165, 171 (2004) (setting forth the basic elements of a fraud claim); *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286 (1980) (reliance must be justifiable); *Board of Educ. of City of Chi. v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989) (difference in elements of negligent misrepresentation are defendant's mental state and existence of duty by defendant to communicate accurate information to plaintiff).[2] Plaintiff's claims fail because he cannot plausibly

---

[2] For convenience and in order to avoid unnecessary choice of law disputes, Defendants are content to apply the case law of the forum state in addressing Plaintiff's common law claims; however, it should be noted that both California and St. Kitts are common law jurisdictions, as well. *See Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1160 (9th Cir. 1995); *Clarke v. Marriott International, Inc.*, No. 2008-086, 2013 WL 4758199, *8 (D.V.I. Sept. 4, 2013).

9

claim justifiable reliance based on the generalized "puffery" he cites in the Second Amended Complaint. *See All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999) ("puffing" does not support claims of intentional and negligent misrepresentation); *see also Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999) (defining puffing as "meaningless superlatives that no reasonable person would take seriously"). Indeed, even more tangible, yet generalized, statements have been found to be insufficient grounds for a misrepresentation claim. *See Evans v. Illinois Ins. of Technology*, 2014 IL App (1st) 123611-U ¶ 47 (reliance on generalized employment statistics unreasonable as a matter of law); *Johnson v. John Marshall Law School*, 2014 IL App (1st) 123610-U ¶ 72 (same). His claims also fail because he simply alleges that he has been harmed "in an amount to be proven at trial." (SAC ¶¶ 68, 82.) This is insufficient. *See Evans*, 2014 IL App (1st) 123611-U ¶ 97 (affirming dismissal with prejudice at the pleadings stage for failure to adequately plead actual damages); *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 323 (1998) (evidence must include a basis for computing damages with a fair degree of probability). The Court should dismiss these claims as a result.

## IV. Plaintiff's Claim for Breach of Contract Also Fails as a Matter of Law.

Plaintiff alleges that, by virtue of his admission to Ross, he and Defendants

> agreed to an express and implied contract . . . which included: actualization of all [RUSVM's] advertising and promotional statements; full compliance with all federal and state laws; adherence to the disability and class examination protocols, assurances, and promises contained in the RUSVM Student Handbook and other publications by Defendants; and conformity with industry standards

10

> and norms including, but not limited to, accommodations for students with disabilities.

(SAC ¶79.) This is nonsense; Plaintiff has not plausibly alleged the existence of any such enforceable contract.

Primarily, Plaintiff is seeking to turn generalized policy statements found in student handbooks and school regulations into a contract, but such statements are not contractual in nature, as a matter of law. *See, e.g., Abrams v. Illinois Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979) (provision stating that instructors should periodically inform students of their progress was not a binding contractual obligation but only an unenforceable expression of intention); *Eisele v. Ayers*, 381 N.E.2d 21, 26 (Ill. App. Ct. 1978) (statements in medical school catalog reserving right to raise tuition "without notice" or "on short notice" were "lacking in the certainty necessary to impose a binding obligation" on the university); *Mostaghim v. Fashion Institute of Technology*, No. 01 Civ. 8090 (HB), 2002 WL 1339098, *7 (S.D.N.Y. June 19, 2002) ("such statements do not create contractual commitments"); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) ("general statement of adherence by [the school] to existing anti-discrimination laws" insufficient to maintain a breach of contract claim).

Indeed, courts consistently have held that anti-discrimination and anti-retaliation policies are merely general references of adherence to existing law and are not independent contractual obligations. *See, e.g., Harris v. Adler School of Professional Psychology*, 209 Ill. App. 3d 856, 723 N.E.2d 717 (1st Dist. 1999). "The promise to do something one already is already legally obligated to do is not

11

consideration, and no new obligation is thereby created." *Id.* (citing *Moehing v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 266, 170 N.E.2d 100 (1960)).

More fundamentally, Plaintiff's contract claim essentially asks the Court to review a private university's decision regarding student performance without plausibly alleging that the decision was "arbitrary and capricious," which is defined by Illinois courts as lacking "any discernible rational basis." *See Drobetsky v. Chicago School of Professional Psychology*, 2016 IL App (1st) 152797-U ¶¶ 49, 50; *see also Bilut v. Northwestern Univ.*, 645 N.E.2d 536, 542-43 (Ill. App. Ct. 1994). This deferential standard stems from a deep judicial "reluctance to interfere with the academic affairs of a private college or university." *See Bilut*, 645 N.E. 2d at 543. In this regard, conclusory accusations that a university's conduct was "arbitrary and capricious" are insufficient. *See Frederick v. Northwestern Univ. Dental Sch.*, 617 N.E.2d 382, 387-88 (Ill. App. Ct. 1993); *Harris*, 723 N.E.2d at 720. Voicing disagreement with a university's decision, or arguing that such decision was unwise, mistaken, or procedurally erroneous, also is insufficient to state a claim. *See Raethz v. Aurora Univ.*, 805 N.E.2d. 696, 699-700 (Ill. App. Ct. 2004). Even a violation of a university's catalogs or handbooks, in and of itself, would be insufficient to establish arbitrary and capricious conduct. *See id.* Rather, to warrant judicial review, a university's decision must be completely irrational, such that the university arguably "did not exercise its academic judgment at all." *See id.* Plaintiff has not alleged anything of the sort.

Meanwhile, Plaintiff has not alleged any basis for turning unidentified "industry standards and norms" or generalized promotional statements by RUSVM about "supportive" and "wonderful" faculty, "academic excellence," and the like into an enforceable contract. Indeed, there is none. *See Mulvey v. Carl Sandburg High School*, 66 N.E. 3d 507, 514 (Ill. App. 2016) (policies that do not promise that an institution will take any particular action in any specific circumstance not a contract); *Harris v. Adler School of Professional Psychology*, 723 N.E.2d 717, 772 (Ill. App. 1999) (a statement of adherence to existing law did not constitute an independent contractual obligation); *University of Baltimore v. Iz*, 716 A.2d 1107, 1125 (Md. App. 1998) ("general statements of policy" do not meet contractual requirements of an offer); *Goodkind v. University of Minn.*, 417 N.W.2d 636, 639 (Minn. 1988) (same).

At bottom, Plaintiff's breach of contract claim fails as a matter of law because he has not alleged an actual contract requiring RUSVM to provide him with extended test times or a separate testing room. No such contract exists, and Plaintiff cannot create one out of non-contractual, unilateral, aspirational statements in a student handbook or from promotional materials, much less from unspecified "industry norms."

## V.    Plaintiff Has No Claim for Breach of Fiduciary Duty.

Plaintiff cannot proceed with his claim for breach of fiduciary duty because there is no fiduciary duty between an institution of higher education and its students. *See Phillips v. DePaul Univ.*, No. 12 CH 3523, 2012 Ill. Cir. LEXIS 3299, *10 (Cir. Ct. Cook Cty. Sept. 11, 2012) (citing *Valente v. Univ. of Dayton*, 438 F. App'x 381, 386-

13

87 (6th Cir. 2011)); *Moy v. Adelphi Inst. Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994); *Ohio Univ. Bd. of Trustees v. Smith*, 724 N.E.2d 1155, 1160 (Ohio App. Ct. 1999); and *Maas v. Corp. of Gonzaga Univ.*, 618 P.2d 106, 108 (Wash. Ct. App. 1980).

## VI. Plaintiff Has Not Alleged a Cognizable Claim of Civil Conspiracy.

Plaintiff's claim for civil conspiracy to commit fraud should be dismissed for two reasons: (1) he failed to state a cognizable claim for fraud in the first place, and (2) he failed to plead the necessary elements for a conspiracy. To begin with, "conspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." *See Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. Ct. 1st Dist. 2013) (citation omitted); *accord Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.*, No. 05 C 318, 2006 WL 211823, *7 (N.D. Ill. Jan. 19, 2006). Regardless, even if Plaintiff had alleged a cognizable fraud claim, he still would not have plausibly stated a claim for civil conspiracy. To plead and prove a civil conspiracy, the plaintiff must demonstrate (1) a combination of two or more persons, (2) for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means, (3) concerted action, and (4) an overt tortious or unlawful act to further the plan. *See Al Maha Trading v. Darley*, No. 12 C 1920, 2014 WL 2459674, *8 (N.D. Ill. June 2, 2014). "[M]ere parallel conduct is insufficient as a matter of law to prove a conspiracy." *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1065 (N.D. Ill. 2015). In the Second Amended Complaint, Plaintiff barely distinguishes among Defendants, generally preferring to treat them as a single entity, and he certainly alleges nothing more than "parallel conduct" among them. His conspiracy claim should be dismissed.

14

### VII. Plaintiff's "Alter Ego" Claim Is Not an Independent Cause of Action Even When Pled in the Alternative.

The "alter ego" theory of liability arises in the context of piercing the corporate veil. *See Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 774 (7th Cir. 2013), rev'd on other grounds, 135 S. Ct. 1932 (2015). It is not a standalone cause of action. *See Buckley v. Abuzir*, 2014 IL App (1st) 130469 ¶ 9 (citing *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 527 (2002)) ("Piercing the corporate veil is not a cause of action but, rather, a means of imposing liability in an underlying cause of action."); *see also Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219 ¶ 19 (2015) (same). Because Plaintiff has failed to state any other cognizable claim for all the reasons stated above, Plaintiff's "alter ego" claim should be dismissed as well.

### Conclusion

For all the reasons set forth herein, Defendants respectfully submit that Plaintiff's lawsuit should be dismissed in its entirety.

Respectfully submitted,

> ADTALEM GLOBAL EDUCATION INC., et al.
>
> By: s/ Brian Stolzenbach
>     Brian Stolzenbach

15

## CERTIFICATE OF SERVICE

I do hereby certify that I have caused a true and correct copy of the foregoing by filing a copy with the Court's CM/ECF system, which will send notification to the following, on this 27th day of March, 2018:

>Michael W. Ford, Esq.
>Law Offices of Michael W. Ford
>4 Timberwood Lane
>Riverwoods, IL 60015
>mfordski@aol.com
>
>Emil T. Bayko
>Porter Hedges LLP
>1000 Main Street, 36th Floor
>Houston, Texas 77002
>tbayko@porterhedges.com

s/Brian Stolzenbach