# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PETER M. GALLIGAN, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL CASE NO. 1:17-cv-06310 |
| | § | |
| ADTALEM GLOBAL EDUCATION INC. F/K/A | § | |
| DEVRY EDUCATION GROUP; ADTALEM | § | |
| GLOBAL HEALTH, INC. F/K/A DEVRY | § | |
| MEDICAL INTERNATIONAL, INC.; ROSS | § | |
| UNIVERSITY SCHOOL OF MEDICINE | § | |
| SCHOOL OF VETERINARY MEDICINE (ST. | § | |
| KITTS) LIMITED; AND DOES 1 THROUGH 50, | § | |
| | § | |
| DEFENDANTS | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

6611537

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

RELEVANT BACKGROUND ....................................................................................................... 1

LEGAL STANDARD...................................................................................................................... 2

ARGUMENT AND AUTHORITIES............................................................................................. 3

I.     Because the Rehabilitation Act of 1973 and Title III of the Americans with
Disabilities Act Can Apply Extraterritorially, Plaintiff's Claims 1 and 2 Should
Not Be Dismissed. ........................................................................................................... 3

     A.     Decisions by Other Courts and the OCR Regarding the Extraterritorial
Application of the Rehab Act and Title III are Highly Persuasive. ...................... 4

     B.     Extraterritoriality is Further Supported by the Language of the Rehab Act
and Title III. ........................................................................................................... 8

     C.     Public Policy Further Warrants the Extraterritorial Application of the
Rehab Act and Title III. ........................................................................................ 9

II.     Because Plaintiff Pleads a Viable Claim under the Illinois Consumer Fraud and
Deceptive Business Practices Act, Claim 4 Should Not Be Dismissed........................... 10

     A.     Defendants' Conduct Occurred Primarily and Substantially in Illinois. ............. 11

     B.     Defendants' Statements Amount to More than Mere Puffing. ............................. 14

III.     Plaintiff's Claims 3 and 5 Should Not Be Dismissed Because They Are Based on
Actionable Statements and Because Plaintiff Has Adequately Pled Damages................ 16

     A.     Defendants Made False Statements of Material Fact on Which Plaintiff
Justifiably Relied. ................................................................................................. 16

     B.     Plaintiff Adequately Pled Damages for Claims 3 and 5. ..................................... 18

     C.     At the Very Least, Plaintiff Should Be Permitted to Amend His Complaint
to More Clearly Plead Damages. .......................................................................... 19

IV.     Plaintiff has Alleged a Cognizable Breach of Contract Claim. ....................................... 20

     A.     Plaintiff Has Alleged the Existence of an Express or Implied Contract.............. 20

     B.     Plaintiff Has a Cognizable Breach of Contract Claim for Defendants'
Arbitrary and Capricious Conduct. ...................................................................... 24

6611537

V.     Defendants' Laconic Argument Regarding Breach of Fiduciary Duty Does Not
       Support the Dismissal of Claim 7. ......................................................................... 25

VI.    Claim 8 Should Not Be Dismissed because Plaintiff Has Pled a Viable Claim of
       Civil Conspiracy. ................................................................................................... 27

VII.   Plaintiff Has Accurately Pled Alter Ego. ............................................................. 29

CONCLUSION ...................................................................................................................... 30

6611537

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Ill. Coll. of Podiatric Med.*,
    77 Ill. App. 3d 471, 395 N.E.2d 1061 (Ill. App. Ct. 1st Dist. 1979)......................................21

*Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*,
    No. 12 C 1920, 2014 WL 2459674 (N.D. Ill. June 2, 2014) ..................................27

*Am. Guardian Warranty Servs., Inc. v. JCR-Wesley Chapel, LLC*,
    2017 WL 2224883 (N.D. Ill. May 22, 2017) ........................................................20

*ASARCO, LLC v. Americas Mining Corp.*,
    382 B.R. 49 (S.D. Tex. 2007) ................................................................................28

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill.2d 100, 835 N.E.2d 801 (2005) ....................................................10, 11, 14

*Barbara's Sales, Inc. v. Intel Corp.*,
    227 Ill. 2d 45, 879 N.E.2d 910 (2007) ..............................................................14, 15

*Bird v. Lewis & Clark College*,
    104 F. Supp. 2d 1271 (D. Ore. 2000).......................................................................5

*City of Chicago v. Michigan Beach Housing Cooperative*,
    297 Ill. App. 3d 317, 696 N.E.2d 804 (Ill. App. Ct. 1st Dist. 1998)......................18

*Clearing Corp. v. Fin. & Energy Exch. Ltd.*,
    No. 09 C 5383, 2010 WL 2836717 (N.D. Ill. July 16, 2010) ................................11

*In re Conticommodity Servs., Inc.*,
    733 F. Supp. 1555 (N.D. Ill. 1990), *rev'd in part on other grounds*, *Brown v. U.S.*, 976 F.2d 1104 (7th Cir. 1992)...............................................................28

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984).................................................................................................28

*Cosmetique, Inc. v. ValueClick, Inc.*,
    753 F. Supp. 2d 716 (N.D. Ill. 2010) ....................................................................11

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) .................................................................................13

*Dean-Hines v. Ross Univ. Sch. of Veterinary Med.*,
    No. 05-3486, 2006 U.S. Dist. LEXIS 101375 (D.N.J. Aug. 10, 2006) ................5, 6

i

*Dewick v. Maytag Corp.*,
296 F. Supp. 2d 905 (N.D. Ill. 2003) ......................................................................19

*Dloogatch v. Brincat*,
396 Ill. App. 3d 842, 920 N.E.2d 1161 (Ill. App. Ct. 1st Dist. 2009).......................18

*EEOC v. Arabian American Oil Company*,
499 U.S. 244 (1991) .................................................................................................4

*Eisele v. Ayers*,
63 Ill. App. 3d 1039, 381 N.E.2d 21 (Ill. Ct. App. 1st Dist. 1978)...........................21

*Evans v. Ill. Inst. of Tech.*,
2014 IL App (1st) 123611-U (Ill. App. Ct. 1st Dist. Sept. 26, 2014) .......................17

*Gittens-Altman, A.M.A. v. HCB Contractors*,
No. 90-6908, 1992 WL 111357 (E.D. Pa. May 15, 1992) ........................................20

*Glenwood Farms, Inc. v. Ivey*,
228 F.R.D. 47 (D. Me. 2005) ...................................................................................20

*Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*,
16 C 7371, 2017 WL 2880899 (N.D. Ill. July 5, 2017) ...........................................20

*Harris v. Adler Sch. of Prof'l Psychology*,
309 Ill. App. 3d 856, 723 N.E.2d 717 (Ill. App. Ct. 1st Dist. 1999)........................22

*Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*,
No. 13 C 1129, 2013 WL 4599903 (N.D. Ill. Aug. 29, 2013) .................................11

*IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*,
191 F. Supp. 3d 790 (N.D. Ill. 2016) ......................................................................13

*Johnson v. John Marshall Law Sch*,
2014 IL App (1st) 123610-U (Ill. App. Ct. 1st Dist. Sept. 26, 2014) .......................17

*King v. Eastern Michigan University*,
221 F. Supp. 2d 783 (D. Mich. 2002) .......................................................................5

*Kleen Prods., LLC v. Packaging Corp. of Am.*,
775 F. Supp. 2d 1071 (N.D. Ill. 2011) .....................................................................28

*LeDonne v. Axa Equitable Life Ins. Co.*,
411 F. Supp. 2d 957 (N.D. Ill. 2006) .......................................................................10

*Liu v. Nw. Univ.*,
78 F. Supp. 3d 839 (N.D. Ill. 2015) ...........................................................21, 23, 24

*Maas v. Corp. of Gonzaga Univ.*,
 618 P.2d 106 (Wash. Ct. App. 1980) ................................................................................26

*Miller v. William Chevrolet/GEO, Inc.*,
 326 Ill. App. 3d 642, 762 N.E.2d 1 (Ill. App. Ct. 1st Dist. 2001) ..........................................14

*Minuti v. Johnson*,
 No. 02 C 4551, 2003 WL 260705 (N.D. Ill. Feb. 5, 2003) ............................................18, 19

*Mostaghim v. Fashion Inst. of Tech.*,
 No. 01 Civ. 8090 (HB), 2002 WL 1339098 (S.D.N.Y. June 19, 2002) ...............................21

*Moy v. Adelphi Inst., Inc.*,
 866 F. Supp. 696 (E.D.N.Y. 1994) ......................................................................................26

*Muir v. Playtex Prods., LLC*,
 983 F. Supp. 2d 980 (N.D. Ill. 2013) ....................................................................................14

*Mulvey v. Carl Sandburg High School*,
 2017 IL App (1st) 151615, 66 N.E.3d 507 (Ill. App. Ct. 1st Dist. 2016) ..............................22

*O'Driscoll v. Argosy Univ.*,
 No. 12 C 10164, 2014 WL 714023 (N.D. Ill. Feb. 25, 2014) ....................................21, 23, 24

*Ohio Univ. Bd. of Trs. v. Smith*,
 724 N.E.2d 1155 (Ohio App. Ct. 1999) ................................................................................26

*Olson v. Champaign Cty., Ill.*,
 784 F.3d 1093 (7th Cir. 2015) ..............................................................................................3

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
 524 F. Supp. 2d 1031 (N.D. Ill. 2007) ................................................................................28

*Phillips v. Bally Total Fitness Holding Corp.*,
 372 Ill. App. 3d 53, 865 N.E.2d 310 (Ill. App. Ct. 1st Dist. 2007) ......................................26

*Phillips v. DePaul Univ.*,
 No. 12 CH 3523, 2012 Ill. Cir. LEXIS 3299, at *11 (Cir. Ct. Cook Cty. Sept.
 11, 2012) ............................................................................................................................26

*Pickett v. Hous. Auth. of Cook Cty.*,
 114 F. Supp. 3d 663 (N.D. Ill. 2015) ...............................................................................2, 3

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
 764 F. Supp. 2d 991 (N.D. Ill. 2011) ....................................................................................28

*Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*,
 No. 11 C 2569, 2012 WL 3686776 (N.D. Ill. Aug. 24, 2012) ...............................................13

iii

*Renfrow v. CTX Mortg. Co., LLC*,
No. 3:11-CV-3132-L, 2012 WL 3582752 (N.D. Tex. Aug. 20, 2012)....................................20

*Seifert v. Solem*,
387 F.2d 925 (7th Cir. 1967) ....................................................................................................19

*Smith v. Short Term Loans*,
No. 99 C 1288, 2001 WL 127303 (N.D. Ill. Feb. 14, 2001)...........................................18, 26

*Specht v. Google, Inc.*,
660 F. Supp. 2d 858 (N.D. Ill. 2009) .......................................................................................11

*Spector v. Norwegian Cruise Line Ltd.*,
545 U.S. 119 (2005)......................................................................................................................6

*Stargel v. NutraSweet Co.*,
No. 13-cv-7575, 2014 WL 1662989 (N.D. Ill. Apr. 24, 2014).........................................29, 30

*Std. Iron Works v. ArcelorMittal*,
639 F. Supp. 2d 877 (N.D. Ill. 2009) .................................................................................27, 28

*Stevens v. Premier Cruises, Inc.*,
215 F.3d 1237 (11th Cir. 2000) (per curiam)............................................................................6

*Tango Music, L.L.C. v. Deadquick Music, Inc.*,
No. 99 C 7331, 2001 WL 897606 (N.D. Ill. Aug. 9, 2001).....................................................30

*Univ. of Balt. v. Iz*,
716 A.2d 1107 (Md. App. 1998).................................................................................................22

*UOP v. Andersen Consulting*,
No. CV 950145753, 1997 WL 219820 (Conn. Super. Ct. Apr. 24, 1997) ..............................14

*Vulcan Golf, LLC v. Google Inc.*,
552 F. Supp. 2d 752 (N.D. Ill. 2008) .......................................................................................12

**Statutes**

815 ILCS § 505/2.............................................................................................................................10

20 U.S.C. § 1681 ...............................................................................................................................5

29 U.S.C. § 794.................................................................................................................................9

29 U.S.C. § 794(a) ...........................................................................................................................3

42 U.S.C. 12181(7)(J)......................................................................................................................9

42 U.S.C. § 12181(a) .......................................................................................................................3

iv

42 U.S.C. § 12182(a) ...................................................................................................................3, 9

**Other Authorities**

FED. R. CIV. P. 8(a)(2) ....................................................................................................................3

FED. R. CIV. P. 9 ..........................................................................................................................18

FED. R. CIV. P. 12(b)(6) ................................................................................................................2

FED. R. CIV. P. 15 ........................................................................................................................19

FED. R. CIV. P. 15(a)(2) ...............................................................................................................19

6611537

Plaintiff Peter M. Galligan ("Plaintiff") files this Response to the Motion to Dismiss Second Amended Complaint [Dkts. 33-35] filed by Defendants Adtalem Global Education Inc. f/k/a DeVry Education Group ("DeVry Group"), Adtalem Global Health, Inc. f/k/a DeVry Medical International, Inc. ("DeVry Medical"), and Ross University School of Medicine School of Veterinary Medicine (St. Kitts) Limited ("Ross") (collectively, "Defendants").

## INTRODUCTION

Plaintiff's claims in this lawsuit stem from his inducement to attend Ross and Defendants' subsequent failure to accommodate his documented learning disabilities in accordance with federal law and Defendants' policies, as well as their unjustified and wrongful dismissal of him from campus and refusal to grant him any right to appeal. Contrary to Defendants' assertions, Plaintiff's claims are adequately pled and are firmly supported by applicable law and facts. Accordingly, Defendants' Motion to Dismiss should be denied.

## RELEVANT BACKGROUND

Plaintiff's lifelong ambition has been to become a veterinarian. To that end, he extensively researched veterinary programs and ultimately decided on Ross. Ross, which is located in Nevis, St. Kitts in the Caribbean, is a subsidiary of DeVry Medical, which in turn falls under the umbrella of DeVry Group. Dkt. 32, Second Amended Complaint (hereinafter "SAC") at ¶¶6-8, 17. Defendants receive hundreds of millions of dollars in federal funding each year for student loans and grants pursuant to the Higher Education Act of 1965 ("HEA"). *Id.* at ¶18.

Although Plaintiff has suffered from a learning challenge since junior high school which caused him to suffer anxiety attacks during examinations, he was reassured by Defendants' publicly-available materials citing their commitment to accommodating students with disabilities and to ensuring the mental and emotional stability of students. *Id.* at ¶¶22-26, 29, 46. Upon arriving at Ross in May 2013, he immediately notified Ross psychologist Dr. Janet Camp of his

1

disability and presented her with documentation supporting his diagnosis and treator recommendations (*i.e.*, testing accommodations). *Id.* at ¶31.

The basis for Plaintiff's claims is that Defendants failed to reasonably accommodate his documented learning disability throughout his time at Ross, despite applicable laws and their own policies and procedures which required them to do so. *Id.* at ¶¶22-39, 44-48. Despite offering Defendants ample documentation supporting his learning disability, and Ross's acceptance of the same, Plaintiff was repeatedly denied the reasonable accommodations prescribed by his treating physicians. *Id.* at ¶¶29-39. Consequently, Plaintiff was unable to perform to his full ability on examinations.

He was initially put on academic probation, but that status was removed when he received passing grades and earned a cumulative GPA greater than 2.0 the semester after he returned from a brief sabbatical. *Id.* at ¶¶37-39.[1] But even after successfully passing 15 classes and achieving a cumulative GPA of 2.3 over the next three semesters, Plaintiff was dismissed from Ross in May 2015 for failing a class. *Id.* at ¶¶35-41. To make matters worse, he was denied any right to investigate or appeal his dismissal, and instead was threatened if he continued his efforts to do so. *Id.* at ¶¶42-43, 48, 51. Plaintiff filed suit against Defendants seeking to recover for their wrongdoing.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint "must state a claim to relief that is plausible on its face." *Pickett v. Hous. Auth. of Cook Cty.*, 114 F. Supp. 3d 663, 665 (N.D. Ill. 2015) (internal quotations and citation omitted). The plausibility standard "is not akin to a 'probability requirement[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Defendants' Motion suggests that Plaintiff remained on academic probation at all times following his return to Ross after his sabbatical (*see* Motion at 3), but that contention is incorrect. *See* SAC ¶¶37-39.

(2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556 (2007)).  Indeed, a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests; specific facts are not necessary.  *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099–2000 (7th Cir. 2015) (internal quotations and citation omitted); *see also* FED. R. CIV. P. 8(a)(2).  "A claim satisfies this standard when its factual allegations raise a right to relief above the speculative level."  *Pickett*, 114 F. Supp. 3d at 665 (internal quotations and citations omitted).

On a motion to dismiss, "the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations [. . .] are not entitled to this presumption of truth."  *Id.* (citation omitted).

### ARGUMENT AND AUTHORITIES

I.  **BECAUSE THE REHABILITATION ACT OF 1973 AND TITLE III OF THE AMERICANS WITH DISABILITIES ACT CAN APPLY EXTRATERRITORIALLY, PLAINTIFF'S CLAIMS 1 AND 2 SHOULD NOT BE DISMISSED.**

Plaintiff's Claims 1 and 2 center on Defendants' failure to accommodate his documented learning disability and, moreover, their discrimination against him and denial of rights and benefits owed to him.  SAC at ¶¶52-63.  Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") prohibits discrimination against disabled individuals by entities that receive federal funding.[2]  29 U.S.C. § 794(a).  Similarly, Title III of the Americans with Disabilities Act ("Title III") prohibits discrimination against disabled individuals in any place of public accommodation.[3]  42 U.S.C. § 12182(a).

Defendants' argument that the general presumption against the extraterritorial application

---

[2] "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

[3] "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12181(a).

6611537

of the Rehab Act and Title III necessitates the dismissal of these claims is flawed for three reasons. First, this issue remains undecided by the Seventh Circuit, and highly persuasive authority exists from other jurisdictions as well as from the U.S. Department of Education Office for Civil Rights (the "OCR") supporting the extraterritorial application of these laws to Defendants in this case. Second, the plain language of the Rehab Act and Title III support their extraterritorial application in this case. Third, extraterritoriality should apply here in the interests of public policy.

### A. Decisions by Other Courts and the OCR Regarding the Extraterritorial Application of the Rehab Act and Title III are Highly Persuasive.

Although some jurisdictions and OCR have upheld the presumption against extraterritoriality on certain occasions, there also exists authority to the contrary on this issue. Moreover, the Seventh Circuit has never considered this precise issue. As such, it is hardly "beyond serious dispute" (Motion at 4) that the Rehab Act and Title III cannot apply in this case.

As a preliminary matter, there is substantial authority extending the Rehab Act and Title III to conduct occurring outside U.S. borders. For instance, in a case addressing disability-based discrimination against St. Louis University concerning its study-abroad program, OCR glossed over the issue of extraterritoriality, remarking simply that "the University is a recipient of Federal financial assistance and, therefore, must comply with the regulation implementing Section 504." *St. Louis Univ. (MO)*, Complaint No. 07-90-2032, 1 NDLR P 259 (Dep't. of Educ. Dec. 12, 1990) (**Ex. 1**).[4] OCR reaffirmed its stance even after the Supreme Court's *Aramco* decision[5] in a case involving the College of St. Scholastica. *Coll. of St. Scholastica (MN)*,

---

[4] The fact that OCR found for the University is not dispositive to the issue at hand. What is important is that OCR readily applied the requirements of the Rehab Act to the University notwithstanding the fact that the conduct transpired abroad, rather than domestically. *See St. Louis Univ. (MO)*, 1 NDLR P at 259.

[5] In *EEOC v. Arabian American Oil Company*, 499 U.S. 244, 246–47 (1991), the Supreme Court held that Title VII, as worded then, did not apply to a suit by a U.S. employee working abroad for a U.S. employer.

Complaint No. 05-92-2095, 3 NDLR P 196 (Dep't. of Educ. Sept. 15, 1992) (**Ex. 2**). There, OCR readily applied the Rehab Act to the school without even considering the question of extraterritoriality in connection with a deaf student's complaint surrounding the school's failure to provide an American Sign Language interpreter during a study abroad program in Ireland. *Id.*

More recently, some courts have applied the Rehab Act and Title III to study abroad programs notwithstanding the presumption against extraterritoriality. In *Bird v. Lewis & Clark College*, 104 F. Supp. 2d 1271 (D. Ore. 2000), a paraplegic student pursued her claims against a university for its alleged failure to accommodate her disability during a study abroad program in Australia.[6] Extraterritoriality also finds support in *King v. Eastern Michigan University*, 221 F. Supp. 2d 783 (D. Mich. 2002), in which the court, faced with a matter of first impression, found sufficient evidence for the extraterritorial application of Title IX to incidents of sexual harassment that occurred during the university's study abroad program in South Africa.[7]

The fact that the foregoing opinions concerned American-based universities operating foreign study-abroad programs—rather than foreign-based universities operating domestically— is of no consequence. Indeed, one court permitted a student to pursue her ADA claim (among others) against Defendant Ross and its parent entities[8] notwithstanding Ross's extraterritoriality arguments in that case. *Dean-Hines v. Ross Univ. Sch. of Veterinary Med.*, No. 05-3486, 2006

---

[6] *Bird* came on summary judgment, not a motion to dismiss. 104 F. Supp. 2d at 1273. At neither the district court level nor on appeal did the courts consider the question of extraterritoriality, perhaps because Lewis & Clark satisfied the applicable disabilities laws. *Id.* at 1276, *aff'd*, 303 F.3d 1015, 1021 (9th Cir. 2002). Nevertheless, *Bird* is instructive because the courts mechanically applied those federal laws, and moreover the defendant did not object on the basis of extraterritoriality until the appeal. *Id.*

[7] *King* is instructive because the language of Title IX is very similar to that of the Rehab Act and Title III. *See* 20 U.S.C. § 1681 ("*No person in the United States* shall, on the basis of sex, be excluded from participation in, be denied the befits of, or be subjected to discrimination under *any education program or activity receiving Federal financial assistance* . . . ." (emphases added)).

[8] The plaintiff filed suit against Ross, DeVry Inc., and Dominica Management, Inc. alleging that Ross was owned and/or operated by DeVry, an Illinois corporation, through Dominica, a foreign corporation registered to do business in New Jersey which "exercise[d] legal and/or de facto control over Ross's decision-making[.]" *Dean Hines*, 2006 U.S. Dist. LEXIS 101375, at *2. Similarly, Plaintiff has filed suit against Ross and the entities above it on the corporate hierarchy (DeVry Medical and DeVry Group).

6611537

U.S. Dist. LEXIS 101375, at *7–9 (D.N.J. Aug. 10, 2006) (**Ex. 3**).  In *Dean-Hines*, the plaintiff asserted claims against Ross for, *inter alia*, violations of the Rehab Act and the ADA stemming from Ross's representations that she would be re-admitted after a sabbatical as long as she took courses to help her overcome her learning disabilities.  *Id.* at *3–5.  Defendants moved to dismiss.  *Id.* at *6.  The court denied defendants' motion with respect to plaintiff's ADA claim and was not persuaded by their extraterritoriality argument.  *Id.* at *9.  Because New Jersey had significant contact with the dispute, where Ross's headquarters and administrative offices are located, the United States therefore had significant contact with the dispute, and thus "[q]uestions of extraterritorial application and congressional intent under the ADA and the [Rehab Act]" were irrelevant.  *Id.*  The Court should extend that same logic to this case.

Plaintiff's position is further supported by the rationale applied by courts in cases involving foreign-flag cruise ships sailing in U.S. waters.  *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005); *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1242 (11th Cir. 2000) (per curiam).  In *Spector*, the Supreme Court held that foreign-flag cruise ships operating in U.S. waters are "places of accommodation" and "specified public transportation" and thus are subject to Title III.  545 U.S. at 129.  Importantly, although the cruise ships at issue were registered in the Bahamas, they were operated by a company based in the United States, served predominantly United States residents, and were "in most other respects United States-centered ventures." *Id.* at 126.  Similarly, in *Stevens*, the Eleventh Circuit reversed the district court and held that a Canadian company operating a Bahamas-registered cruise ship in U.S. waters was required to comply with Title III.  215 F.3d at 1242–43.

Here, much like in *Spector* and *Stevens*, Ross is a foreign-based entity with substantial ties to the United States.  Although Ross is technically based in St. Kitts, it has myriad

6

connections with and exposure to the United States so as to justify the Court's application of federal laws to it. Notably, in an unrelated proceeding in this same jurisdiction, officials from Ross and its parent entity affirmed under oath that Ross's students "come primarily from the United States" and that, as of 2007, Ross has recruited veterinary students in the United States "continually since at least 1983." Declaration of Thomas C. Shepherd DHA in *DeVry Inc. v. Int'l Univ. of Nursing*, No. 06 CV 3364, 2007 WL 2825967 ¶8 (N.D. Ill. Aug. 27, 2007).[9] In a different proceeding in this jurisdiction, Ross (through its parent entity) also confirmed that it actively advertises and promotes its program throughout the United States, including in the State of Illinois. *See DeVry Inc. v. Univ. of Med. & Health Scis.—St. Kitts*, No. 08 CV 3280, 2009 WL 260950 (N.D. Ill. Feb. 3, 2009). These statements are bolstered by the fact that, as of 2013, 97 percent of Ross's student body was comprised of American citizens.[10]

In addition, Ross is owned and operated by a domestic entity. SAC at ¶8. For fiscal year 2016, Ross derived 84 percent of its revenue on a cash basis from federal assistance grants and loans issued pursuant to the HEA. *Id.* at ¶18.[11] Ross also publicizes the fact that it has numerous resources and offices in the United States, including its Office of Student Accounts, Office of Student Finance, Student Service Center, Office of the Registrar, Office of Admissions, and its Title IX Coordinator and Associate Consultant.[12] There are abundant other examples of Ross

---

[9] As of the date of his Declaration, Mr. Shepherd was the President of Ross University and Executive Vice President of DeVry, Inc. 2007 WL 2825967, at ¶1.

[10] **Ex. 4**, "Statistics Shed Light on International Education," Malinda Larkin, May 3, 2013, available at https://www.avma.org/News/JAVMANews/Pages/130615c.aspx.

[11] Plaintiff estimates that Ross receives $100,395,368.64 in federal student loans annually (assuming that all revenues are derived from loans rather than cash tuition). To arrive at this figure, Plaintiff considers that: (1) 98 percent of Ross students borrow federal funds to pay tuition, (2) the typical graduate leaves Ross with $298,915 in debt, (3) Ross's vet program comprises seven semesters (three per calendar year), and (4) 84 percent of Ross's annual revenues are derived from federal student loans. *See* **Ex. 5**, Adtalem Global Education Inc. Form 10-K for Fiscal Year Ended June 30, 2017, available at https://www.last10k.com/sec-filings/atge#fullReport.

[12] **Ex. 6**, https://veterinary.rossu.edu/current-students.html (listing addresses of both the Office of Student Accounts and Office of Student Finance as 630 US Highway 1, Suite 2001, North Brunswick, NJ, 08902

6611537

availing itself of the privileges offered by the United States—namely, maintaining relationships with 23 U.S.-based clinical affiliates (of 32 total)[13]; widely advertising its program in the United States and encouraging prospective students to attend "Ross Vet Expo" events[14]; maintaining accreditations from the American Veterinary Medical Association ("AVMA") Council on Education and the American Animal Hospital Association[15]; and availing itself of the United States court system (specifically, this particular court on at least one occasion) in an effort to protect its business interests and its receipt of federal funding.[16]

Likewise, Adtalem has availed itself of the benefits of the United States, including by deriving 59 percent of its 2016 revenue from federal grants and loans (SAC at ¶18) and by recently temporarily relocating the students, faculty, and staff of its medical school from St. Kitts to Knoxville, Tennessee following the disastrous 2017 hurricane season.[17]

## B. Extraterritoriality is Further Supported by the Language of the Rehab Act and Title III.

The plain language of the Rehab Act and Title III provides evidence of congressional intent for those laws to be comprehensive so as to overcome the presumption against

---

US); **Ex. 7**, Ross University School of Veterinary Medicine Student Handbook (eff. May 4, 2015) at §§ 1, 10.2, 2.11.3.2, 2.12.6, 2.12.11, 2.13.3, 2.13.4, 2.13.6, 2.13.8, 2.13.9, 3.4.10.20 (Student Service Center, Office of Registrar, and Title IX Coordinator and Consultant bear New Jersey telephone numbers and/or addresses); **Ex. 8**, https://veterinary.rossu.edu/admissions/dvm-admissions/how-to-apply.html (Office of Admissions is located at 630 US Highway 1, Suite 2031, North Brunswick, NJ 08902, 855-ROSSVET).

[13] *See* **Ex. 9**, https://veterinary.rossu.edu/dvm-program/curriculum/clinical-year/clinical-affiliates/.

[14] **Ex. 10**, https://veterinary.rossu.edu/dvm-program/attend-event.html (inviting prospective students to attend "Ross Vet Expos" early in 2018 held in Costa Mesa, CA, Dallas, TX, Ft. Lauderdale, FL, New York City, NY, and elsewhere).

[15] *See* **Ex. 11**, http://veterinary.rossu.edu/about/accreditation/.

[16] *See, e.g., DeVry Inc.*, 2009 WL 260950 (suit by DeVry Inc. and its Barbados-based subsidiary concerning Ross and alleging trademark infringement, a violation of the Illinois Uniform Deceptive Trade Practices Act, and other claims); *Ross Univ. Sch. of Med., Sch. of Veterinary Med. (St. Kitts) Ltd. v. Cavazos*, 716 F. Supp. 638 (D.D.C. 1989) (action for injunctive relief by Ross against DOE regarding DOE's decision to terminate Ross's eligibility to participate in Title IV of the HEA).

[17] **Ex. 12**, "Ross University School of Medicine to Relocate Temporarily to Knoxville, Tenn. for Continuation of Medical School Classes" (Business Wire, Nov. 8, 2017), available at https://www.businesswire.com/news/home/20171108006673/en/Ross-University-School-Medicine-Relocate-Temporarily-Knoxville.

extraterritoriality. Section 504 of the Rehab Act forbids disability-based discrimination under "*any program or activity* receiving Federal financial assistance." 29 U.S.C. § 794 (emphasis added). Similarly, Title III guarantees the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of *any* place of public accommodation. . . ." 42 U.S.C. § 12182(a) (emphasis added).[18] Regardless of Defendants' actual places of incorporation, these laws should be read to apply equally to them, particularly because of their extensive contacts with the United States discussed previously.[19]

### C. Public Policy Further Warrants the Extraterritorial Application of the Rehab Act and Title III.

As a final point, the Rehab Act and Title III should be applied extraterritorially in this case for two policy reasons.

First, public policy should prevent the dismissal of Claims 1 and 2 because Ross's extensive contacts with the United States defy the extraterritoriality presumption. Much like the foreign entities operating foreign-flag cruise ships in U.S. waters, Ross has opened itself up to regulation under federal laws by being overseen and operated by American entities, targeting American students (who make up the vast majority of its student body), availing itself of the U.S. court system in an effort to protect its interests, maintaining American accreditations, and receiving approximately $100 million each year in funding from the American government.[20] In short, to allow an institution that enjoys substantial benefits and privileges offered by the United States to evade the reach of federal laws would be manifestly unjust.

Second, Plaintiff's Rehab Act and Title III claims should not be dismissed at this juncture because discovery may yield additional documentation evidencing Ross's ties to the United

---

[18] Places of "public accommodation" include postgraduate private schools and other places of education. 42 U.S.C. 12181(7)(J).
[19] *See* Section I(A), *supra* pp. 4-8.
[20] *See id.*

States, which would further justify the application of federal laws to it. For instance, Plaintiff does not yet have a copy of Ross's Program Participation Agreement ("PPA") with the U.S. Department of Education, which governs its participation in Title IV of the HEA. The information contained in Ross's PPA could further support the application of federal laws to it, as the PPA may include a provision requiring Ross to adhere to federal laws in exchange for its receipt of federal funding.

For the foregoing reasons, Defendants' Motion should be denied with respect to Claims 1 and 2.

## II.   BECAUSE PLAINTIFF PLEADS A VIABLE CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, CLAIM 4 SHOULD NOT BE DISMISSED.

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact[.]'" 815 ILCS § 505/2. Courts liberally construe the ICFA and utilize it "to the greatest extent possible to eliminate all forms of deceptive or unfair business practices." *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 964 (N.D. Ill. 2006) (internal quotations and citations omitted), *superseded on other grounds*, *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6229, 2018 WL 1234963 (N.D. Ill. Mar. 9, 2018). To state a claim under the ICFA, Plaintiff must allege: (1) a deceptive act or practice by the Defendants; (2) Defendants' intent that Plaintiff rely on that deception; (3) the deception occurred in connection with a commercial transaction; and (4) the deception proximately caused his damages. *Id.* (citations omitted); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801, 850 (2005).

Here, Plaintiff has alleged a valid claim under the ICFA that should not be dismissed for two reasons: (1) Plaintiff has sufficiently alleged that Defendants' conduct occurred "primarily and substantially in Illinois"; and (2) Defendants' statements and representations at issue amount to more than mere puffing.

### A. Defendants' Conduct Occurred Primarily and Substantially in Illinois.

In the case of an ICFA claim asserted by a non-resident, the threshold issue is whether the conduct at issue occurred "primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853–54. The Illinois Supreme Court has recognized that "there is no single formula or bright-line test for determining whether a transaction occurs within th[e] state." *Id.* at 854; *see also Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 723 (N.D. Ill. 2010) (noting "there is no specific requirement that a plaintiff expressly state the connection of the action to Illinois"). Instead, "each case must be decided on its own facts." *Avery*, 835 N.E.2d at 854; *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *10 (N.D. Ill. Aug. 29, 2013). Courts must consider the totality of the circumstances in deciding whether a disputed transaction occurred "primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 854.

Several factors are relevant to this determination, including: (1) the plaintiff's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the plaintiff's contacts with the defendant; (5) where the contracts were executed; (6) the contracts' choice of law provision, if any; (7) where the deceptive statements were made; (8) where payments for services were sent; and (9) where complaints were to be directed. *Clearing Corp. v. Fin. & Energy Exch. Ltd.*, No. 09 C 5383, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010), *cited in Int'l Equip. Trading*, 2013 WL 4599903, at *10; *see also Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009).

Importantly, where the determination of this question requires an in-depth factual

11

analysis, it is premature to do so at the pleadings stage. *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (noting that, on a motion to dismiss, "any in-depth factual inquiry is inappropriate," and instead the court "must look to whether the allegations of the [pleadings] are factually sufficient such that one could plausibly conclude that the circumstances that relate to the disputed transaction . . . occurred primarily and substantially in Illinois").

Even at this early stage of the case, the totality of the circumstances, as pled, supports Plaintiff's ICFA claim. Plaintiff does more than simply allege that Defendants' headquarters is located in Illinois or that the representations at issue emanated from Illinois. Rather, it is clear that Plaintiff's claims arise from many instances of Illinois-centered conduct by Defendants:

- Ross is wholly-owned and operated by DeVry Medical (a Florida corporation with its principal place of business in Illinois), which in turn is a wholly-owned reporting segment of DeVry Group (a Delaware corporation with its principal place of business in Illinois). SAC at ¶14.

- DeVry Group (now Adtalem) publicly advertises that Ross is one of its members. *Id.* at ¶17.[21]

- Daniel Hamburger, the former President and CEO of Illinois-based DeVry Group (*id.* at ¶6), publicly extolled the "culture of care," strong values, and outcome-focused approach of DeVry Group, Ross's parent entity, during DeVry Group's Q1 2016 Earnings Call—an advertising term Plaintiff encountered multiple times prior to his application and admission to Ross emanating from DeVry's Illinois headquarters. *Id.* at ¶26.

- Following Plaintiff's dismissal from Ross, Audrey B. Kaplan—Senior Counsel for then-DeVry Group who was based in Illinois—communicated with Plaintiff via e-mail to rebuke him for pursuing his appeal. *Id.* at ¶¶50-51.

Thus, unlike in Defendants' cited cases,[22] there is substantial evidence of Illinois-based conduct in this case. Defendants have done more than simply maintain headquarters or a "home

---

[21] *See also* **Ex. 13**, http://www.adtalem.com/our-institutions/ross-vet.html. Until just recently, Adtalem also advertised specifically that Ross joined it in 2003. *See* **Ex. 14**, http://www.adtalem.com/our-institutions/ross-vet.html.

[22] In *Avery, Crichton,* and *Phillips* (cited in Motion at 7-8) the only connection to Illinois was the respective defendants' headquarters or "home office[s]." *See Avery*, 835 N.E.2d at 188 (declining to permit consumers to avail themselves of the ICFA where they did not reside in Illinois, received car repair

6611537

office" in Illinois. They published the problematic statements on Ross's Illinois-based parent entity's website. They also have previously admitted, in an unrelated proceeding in this jurisdiction, that they actively advertise and promote their program to potential students in Illinois and throughout the United States. *See DeVry Inc.*, 2009 WL 260950. These facts render Defendants' arguments untenable. *See IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*, 191 F. Supp. 3d 790, 808 (N.D. Ill. 2016) (denying motion to dismiss ICFA and other claims where plaintiff allegedly communicated with defendant "in Illinois by email and telephone," even though plaintiff did not physically travel to Illinois to have those discussions); *cf. Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *14–15 (N.D. Ill. Aug. 24, 2012) (denying defendant's summary judgment motion because the undisputed facts showed that defendant used the marks at issue in Illinois).[23]

---

estimates and repairs in other states, and only communicated with local agents in their home states and not any agents in Illinois); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (plaintiff lacked standing to sue under the ICFA where he lived in Florida, received the promotional materials at issue there, entered into and renewed his insurance there, and submitted claims there); *Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53, 865 N.E.2d 310, 312 (Ill. App. Ct. 1st Dist. 2007) (finding important the fact that plaintiffs resided, bought memberships, signed contracts, used fitness facilities, and were subject to the disputed practices in states other than Illinois; received and sent correspondence to and from states other than Illinois; and never traveled to Illinois or spoke to Bally representatives in Illinois). *Illumina* and *Super Pawn Jewelry* are even less persuasive, as the only connection to Illinois in those cases was conduct by the respective plaintiffs (not defendants). *See Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, No. 17 C 5010, 2018 WL 1087641, at *4 (N.D. Ill. Feb. 28, 2018) (granting motion to dismiss plaintiff's ICFA claim where the "only tangible connection to Illinois" was the plaintiff's state of [in]corporation and principal place of business, the defendant was a dual citizen of Delaware and California with its principal place of business in California, and the conduct at issue "only impacted a customer in Florida"); *Super Pawn Jewelry & Loan, LLC v. Am. Envt'l Energy, Inc.*, No. 11 C 8894, 2013 WL 1337303, *7 (N.D. Ill. Mar. 29, 2013) (in addition to finding that ICFA claim was time-barred, also holding that plaintiff lacked standing to bring ICFA claim because the alleged fraud by defendant, a Nevada business, was perpetuated in California, and the sole connection to Illinois was plaintiff's place of incorporation and the residency of its president). As demonstrated, *supra*, this case involves more concrete connections to Illinois.

[23] As an additional point, Plaintiff reiterates that discovery of Defendants' PPA with the DOE is important with respect to this claim. The PPA may evidence further connections with Illinois, such as the fact that DeVry may be the recipient of federal funding on behalf of its subsidiaries—including Ross—and may be responsible for distributing such funding to Ross from its Illinois headquarters.

6611537

**B.    Defendants' Statements Amount to More than Mere Puffing.**

Plaintiff has stated a plausible claim under the IFCA arising from Defendants' actionable misrepresentations, which amount to more than mere "puffing."   Illinois courts have defined puffing as a "bare and naked statement as to value of a product" and "a nonactionable assertion of opinion." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 762 N.E.2d 1, 7 (Ill. App. Ct. 1st Dist. 2001) (internal quotations and citations omitted). "Statements of existing facts or comments that ascribe specific virtues to a product are not generally considered puffing and may be the subject of a fraud claim." *Id.*  The circumstances of each particular case impact the determination of whether a representation is one of opinion or fact. *Id.*

Mere statements of value or other exaggerations made by sellers as to the degree of quality of his or her products cannot support a fraud claim.  *See id.*; *see also Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 879 N.E.2d 910, 926 (2007).  For instance, the Illinois Supreme Court has enumerated certain phrases that constitute puffery: "high-quality," "expert workmanship," "custom quality," "perfect," "magnificent," "comfortable," and "picture perfect." *Avery*, 835 N.E.2d at 846–47.  Similarly, a general characterization of one's product as "the best" is inadequate. *Barbara's Sales*, 879 N.E.2d at 926.

However, statements about existing factual situations that are "intended to conjure a specific, factual idea" about a product or service are sufficient to support an IFCA claim.  *Miller*, 762 N.E.2d at 7 (phrase "executive driven" was "sufficiently susceptible of interpretation as a factual description of a car's history to defy [court's] characteriz[ation of] it as 'puffing' as a matter of law"); *see also Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013) (phrase "Proven #1 in Odor Control" was not mere puffery because it leaves "no doubt as to the criterion . . . upon which to judge the [product]"); *UOP v. Andersen Consulting*, No. CV 950145753, 1997 WL 219820, at *4 n.3 (Conn. Super. Ct. Apr. 24, 1997), *cited in Muir*, 983 F.

14

Supp. 2d at 990 (statement that defendant "has consistently proven its ability to manage the installation of large, complex systems like CASA" was not puffery).

Here, Defendants' statements amount to more than mere puffing; they disclose specific facts about the quality of education and overall experience students can expect to receive at Ross. It can be expected that students with disabilities would be enticed to attend a school where they would receive an "abundant amount of support and encouragement" from "supportive, friendly, available, wonderful" faculty, where the faculty and administration deliver service to students with "integrity" and "accountability," and, importantly, where the environment is "free of unlawful harassment or discrimination based on [. . .] disability" and is focused on "ensuring that qualified students with disabilities are afforded reasonable accommodations." SAC at ¶¶22, 25, 26, 46. Because these statements are affirmative rather than implicit, and because they amount to more than merely acclaiming Ross as "the best" or using other similarly-subjective characterizations, the authority on which Defendants rely is distinguishable. *Cf. Barbara's Sales*, 879 N.E.2d at 926–27 (reversing class certification because defendant's implicit representation that Pentium 4 was the best and fastest on the market was not actionable under IFCA); *also cf. Carlay Co. v. Fed. Trade Comm'n*, 153 F.2d 493 (7th Cir. 1946) (setting aside Commission order because, *inter alia*, petitioner's promotion of its diet program as "easy" did not constitute an actionable misrepresentation).[24]

---

[24] To clarify, *Carlay* did not involve petitioner's promotion of its program as "wonderful" or "excellent," but rather whether it was "easy" to follow. 153 F.2d at 496. Whether a program is "easy" is very different than whether it will be "free of unlawful harassment or discrimination" and whether it will comply with applicable laws—some of the representations on which Plaintiff's claim is based. It also bears mentioning that even though the *Carlay* Court found that petitioner's promotion of its diet plan as "easy" was not an actionable representation, it only did so after considering the statements of numerous witnesses—which unquestionably took place after the pleadings stage. *See id.* at 496.

III. **PLAINTIFF'S CLAIMS 3 AND 5 SHOULD NOT BE DISMISSED BECAUSE THEY ARE BASED ON ACTIONABLE STATEMENTS AND BECAUSE PLAINTIFF HAS ADEQUATELY PLED DAMAGES.**

Plaintiff asserts claims against Defendants for fraudulent inducement and negligent misrepresentation as a result of their representations that induced him to attend Ross, which, among other things, required him to "enter [Ross's] backbreaking veterinary medicine educational program, work day and night, six or seven days a week, for 27 months and assume almost $190,000 in Title IV federal loan and personal debt obligations."  SAC at ¶68; *see generally id.* at ¶¶64–68, 76–77.  Defendants' effort to dismiss those claims must be denied because Plaintiff has sufficiently pled the elements of those claims.[25]

A. **Defendants Made False Statements of Material Fact on Which Plaintiff Justifiably Relied.**

Plaintiff's Claims 3 and 5 are premised on Defendants' promotional statements advertising that their students would receive an "abundant amount of support and encouragement," be treated as a "family member" and "embraced" by faculty, receive "one-on-one care" by faculty who is "always there for" students, be communicated with candidly and respectfully, and receive "help" to "achieve [their] goals."  *Id.* at ¶65.  Plaintiff's claims are also based on provisions of Ross's Student Handbook stating that the school provides "an environment free of unlawful harassment or discrimination based on . . . disability," "complies with all applicable laws regarding discrimination, harassment, retaliation and equal opportunity,"

---

[25] The elements of a fraudulent inducement claim under Illinois law are (1) a false statement of material fact by the defendant; (2) made with knowledge of its falsity; (3) reasonably relied upon by the plaintiff; (4) made for the purpose of causing the plaintiff to act; and (5) damage resulting from the plaintiff's reliance on the statement.  *Logan Square MRI & Diagnostic Ctr., Inc. v. Philips Elecs. N. Am. Corp.*, 545 F. Supp. 2d 816, 819 (N.D. Ill. 2008) (citation omitted).  A negligent misrepresentation claim involves the same elements, except the defendant makes a representation negligently rather than intentionally and owes the plaintiff some duty.  *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 851 (N.D. Ill. 2008).

16

and is primarily concerned with "[t]he mental and emotional stability of students." *Id.* at ¶66.[26] As in the cases previously cited,[27] the foregoing representations constitute actionable statements of fact rather than mere opinions concerning the quality of the education and experience students could expect to receive at Ross. They are not subjective or unverifiable; to the contrary, they provide concrete expectations.

Defendants' cases do not support their arguments regarding Claims 3 and 5. Two of those cases involved claims by students regarding the job and salary statistics posted by their law schools, which they alleged induced them to apply for and attend those schools. *See Evans v. Ill. Inst. of Tech.*, 2014 IL App (1st) 123611-U, ¶¶52–55 (Ill. App. Ct. 1st Dist. Sept. 26, 2014), *appeal denied*, 23 N.E.3d 1200 (Ill. 2015) (defendant's statements in promotional materials regarding students' post-graduation job and salary statistics were not actionable because many were not deceptive at all and instead were clearly explained, and because plaintiffs were unable to point to any promises made to them by the school regarding their full-time employment or salary prospects); *Johnson v. John Marshall Law Sch,*, 2014 IL App (1st) 123610-U, ¶¶46–48 (Ill. App. Ct. 1st Dist. Sept. 26, 2014), *appeal denied*, 23 N.E.3d 1201 (Ill. 2015) (same). The other case Defendants cite is distinguishable on its facts, as it did not fall within the education field and involved promises of future compensation (not promised treatment or adherence to laws and policies). *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999).

Here, conversely, Plaintiff's claims arise from entirely different types of representations. He does not make any allegations concerning job statistics or the amount of salary he expected to earn upon graduating from Ross; rather, his claims center on Defendants' representations regarding the accommodations he would enjoy and the attentiveness of Ross's faculty despite his

---

[26] *See also* **Ex. 7**, Ross Handbook at §§ 1.9.2, 1.11.1.1, 1.11.3.
[27] *See* Section II.(B), *supra* pp. 14-15.

documented learning disability, which Ross acknowledged at the time of Plaintiff's matriculation. SAC at ¶¶65–66. As such, Defendants' authority does not justify dismissal.

### B. Plaintiff Adequately Pled Damages for Claims 3 and 5.

A plaintiff generally is not required to plead a legal theory for calculating damages in his complaint, but rather just allege "damage, i.e., a loss, hurt or harm which results from the injury." *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 920 N.E.2d 1161, 1169 (Ill. App. Ct. 1st Dist. 2009) (internal quotations and citation omitted). "Absolute certainty about the amount of damage is not necessary to justify a recovery if damage is shown . . . ." *Id.* (internal quotations, emphasis, and citations omitted); *see also Minuti v. Johnson*, No. 02 C 4551, 2003 WL 260705, at *2 (N.D. Ill. Feb. 5, 2003) ("Federal Rule of Civil Procedure 9, while requiring allegations of fraud to be stated with particularity, does not require particularity as to the element of damages.") (citation omitted); *Smith v. Short Term Loans*, No. 99 C 1288, 2001 WL 127303, at *6 (N.D. Ill. Feb. 14, 2001) ("Even though [Rule] 9(b) requires particularity, the federal pleading system is still a notice pleading system," and thus "more particularity is not required as to damages . . . where the facts alleged are sufficient to put the defendant on notice of the who, what, where, when, and how of the misleading practice.").

Defendants' reliance on *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 696 N.E.2d 804 (Ill. App. Ct. 1st Dist. 1998), is misplaced. There, the court's decision regarding the damages element of plaintiff's fraud claim came on summary judgment, rather than at the motion to dismiss stage. *Id.* at 807. This Court has previously differentiated between a plaintiff's obligations on pleading versus in later stages of a case. *Minuti*, 2003 WL 260705, at *2. In *Minuti*, the Court clarified that the Seventh Circuit only requires damages to be ***proven*** by clear and convincing evidence, and that "nothing . . . requires such evidence to be pled

in a complaint." *Id.* (emphasis added) (citing *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332 (7th Cir. 1992)).

This case is only at the motion to dismiss stage, and Plaintiff adequately pled the elements of his claims for fraudulent inducement and negligent misrepresentation, including damages. SAC at ¶¶64–68, 76–77. Namely, Plaintiff alleges that he assumed $190,000 in Title IV federal loan and personal debt obligations and otherwise expended countless hours and effort to attend Ross, only to be deprived of the right and opportunity to complete his studies, graduate with a veterinary degree, and secure employment as a veterinarian. *Id.* at ¶68. Plaintiff's pleading makes clear that the damages he seeks stem from those loan and debt obligations and the income to which he should be earning as a degreed veterinarian. *See id.*

> **C.      At the Very Least, Plaintiff Should Be Permitted to Amend His Complaint to More Clearly Plead Damages.**

Even if this Court is persuaded by Defendants' argument, Plaintiff should be permitted to re-plead Claims 3 and 5 to more clearly assert his alleged damages in lieu of dismissal.

Rule 15 of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to a party to amend its pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). Even if a complaint as amended would fail to state a claim upon which relief could be granted, "denial of [an] amendment is called for only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Dewick v. Maytag Corp.*, 296 F. Supp. 2d 905, 907, 911 (N.D. Ill. 2003) (permitting plaintiffs to amend their complaint to seek punitive damages, noting that it would be "wholly improvident to restrict them" from doing so); *see also Seifert v. Solem*, 387 F.2d 925, 929–30 (7th Cir. 1967) (affirming decision granting plaintiff leave to amend complaint to include claim for exemplary damages for fraud, where amendment did not prejudice defendant).

19

Here, even if the Court concludes that Plaintiff's claims for fraud and negligent misrepresentation are deficiently pled, Plaintiff should be entitled to re-plead those claims to clarify the damages sought.[28]  Such an amendment would not prejudice Defendants because they are on notice of the factual bases for those claims, and also because this case is still very much in its infancy.

## IV.  PLAINTIFF HAS ALLEGED A COGNIZABLE BREACH OF CONTRACT CLAIM.[29]

By failing to accommodate Plaintiff's documented learning disability, Defendants breached their express and implied contract with him, which arose via their advertising and promotional statements, federal and state laws, and provisions in Ross's Student Handbook and other publications relating to disability and class examination protocols, assurances, and promises.  SAC at ¶¶79-82.  Plaintiff further claims that Defendants acted in an "arbitrary and capricious" manner and breached their covenant of good faith and fair dealing.  *Id.* at ¶80.  Because Defendants rely on distinguishable case law and understate the import of their own provisions and policies, their Motion should be denied.

### A.  Plaintiff Has Alleged the Existence of an Express or Implied Contract.

The general rule is that "a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and

---

[28] While the Seventh Circuit has not expressly considered this issue, other jurisdictions have permitted this type of amendment to clarify damages sought.  *See, e.g., Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *6–7 (N.D. Tex. Aug. 20, 2012) (permitting plaintiffs to amend their pleadings to clarify and set forth their bases for damages); *Glenwood Farms, Inc. v. Ivey*, 228 F.R.D. 47, 51–52 (D. Me. 2005) (granting plaintiffs' motion to amend their pleading to, *inter alia*, clarify their claim for punitive damages); *Gittens-Altman, A.M.A. v. HCB Contractors*, No. 90-6908, 1992 WL 111357, at *3 (E.D. Pa. May 15, 1992) (granting defendants' motion to amend their counterclaim to add a fraud claim and clarify their claim for contract damages).

[29] Plaintiff's Second Amended Complaint combines his claim for breach of the covenant of good faith and fair dealing into his breach of contract claim, in accordance with controlling case law.  SAC at ¶¶78-82; *see, e.g., Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, 16 C 7371, 2017 WL 2880899, at *8 (N.D. Ill. July 5, 2017); *Am. Guardian Warr. Servs., Inc. v. JCR-Wesley Chapel, LLC*, 2017 WL 2224883, at *6 (N.D. Ill. May 22, 2017).

6611537

bulletins." *O'Driscoll v. Argosy Univ.*, No. 12 C 10164, 2014 WL 714023, at *2 (N.D. Ill. Feb. 25, 2014) (internal quotations and citation omitted).[30] An implied contract arises "where the intention of the parties is not expressed but an agreement in fact creating an obligation is implied or presumed from their acts[.]" *Id.*; *see also Liu v. Nw. Univ.*, 78 F. Supp. 3d 839, 846 (N.D. Ill. 2015) (undisputed that an implied contract can arise out of a university's student handbook). Generally, courts "may not override the academic decision of a university unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *O'Driscoll*, 2014 WL 714023, at *2 (internal quotations and citations omitted). However, a student is entitled to a remedy for breach of contract "when it is alleged that an adverse decision against a student supposedly for academic deficiencies, was made arbitrarily, capriciously, and in bad faith." *Id.*

Defendants correctly note that courts have sometimes declined to find the existence of binding contracts between institutions and their students where the provisions or policies at issue were not sufficiently definite. However, the cases on which they rely for that proposition are readily distinguishable, as many of them involve nothing more than a school's expressions of mere intention, hope, or desire. *See Abrams*, 395 N.E.2d at 1065 (provision at issue stated: "It is desirable that the instructor should periodically inform the student of his progress[.]"); *Eisele*, 381 N.E.2d at 25 (provision at issue governed defendants' right to increase tuition "without notice" or "on short notice"); *Mostaghim v. Fashion Inst. of Tech.*, No. 01 Civ. 8090 (HB), 2002 WL 1339098, at *6–7 (S.D.N.Y. June 19, 2002), *aff'd*, 58 F. App'x 497 (2d Cir. 2003) (statement in school manual regarding notification of disciplinary action within 24 hours was not an enforceable promise, and school's generic equal employment opportunity and affirmative

---

[30] Defendants' cases cite this same rule. *See Abrams v. Ill. Coll. of Podiatric Med.*, 77 Ill. App. 3d 471, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1st Dist. 1979); *Eisele v. Ayers*, 63 Ill. App. 3d 1039, 381 N.E.2d 21, 25 (Ill. App. Ct. 1st Dist. 1978).

action policies did not create contractual commitments against engaging in bigotry or hypocrisy).

Defendants' arguments are also untenable because the other cases they cite do not support their request for the dismissal of Claims 3 and 5. Indeed, the standard applied by courts to high schools is different than that applied to colleges and postgraduate institutions because the element of consideration is necessarily missing between a student and a high school, because "[p]erforming an act which one is legally obligated to do is not consideration which could support a contract." *Mulvey v. Carl Sandburg High Sch.*, 2016 IL App (1st) 151615, 66 N.E.3d 507, 515 (Ill. App. Ct. 1st Dist. 2016). Additionally, the question of whether courts have the authority to judicially review academic decisions is very different from the issue at hand. *See Harris v. Adler Sch. of Prof'l Psychology*, 309 Ill. App. 3d 856, 723 N.E.2d 717, 720 (Ill. App. Ct. 1st Dist. 1999). Further, a school's generalized tenure policy—which simply describes the tenure process rather than promising faculty certain treatment or rights—is very different from representations that students who attend a school will be free from unequal treatment, harassment, and retaliation. *See Univ. of Balt. v. Iz*, 716 A.2d 1107 (Md. App. 1998), *cert. denied sub nom.*, 351 Md. 663 (Md. 1998).[31]

Here, unlike in Defendants' cited cases, the provisions and policies on which Plaintiff relies are sufficiently definite so as to give rise to contractual obligations on behalf of Defendants. For instance, Ross's Student Handbook expressly requires Ross to treat its students equally and fairly, adhere to all applicable laws, and accommodate students with disabilities and mental health issues:

### 1.11.3 Commitment to Non-Discrimination and Equal Opportunity
It is [Ross]'s policy to provide an environment free of unlawful harassment or discrimination based on . . . disability . . . or any other category protected by

---

[31] *Iz* also is distinguishable because tenure is a special issue about which institutions have wide discretion, as courts are generally reluctant to "become ensnared in an academic institution's decision with regard to tenure." 716 A.2d at 1117.

applicable law. [Ross] complies with all applicable laws regarding discrimination, harassment, retaliation and equal opportunity.

### 1.11.4 Accommodation of Students with Disabilities
As part of its dedication to making educational opportunities available to a diverse range of students, [Ross] is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations[.]

### 1.11.5 Mental Health
The mental and emotional stability of students is a primary concern of [Ross]. . . . The [Ross] Counseling Center is available to provide support and assistance to [Ross] students in maximizing their success while at [Ross].

SAC at ¶46. The Handbook also provides that "[Ross] prohibits retaliation against anyone who reports an incident of alleged . . . unlawful conduct, or any person who assists or participates in a proceeding, investigation or hearing relating to such allegations." *Id.* at ¶47. These statements affirmatively and definitively obligate Ross to take (or not take) certain actions.

Illinois courts have declined to dismiss plaintiffs' breach of contract claims in circumstances similar to those present here. For instance, in *O'Driscoll*, the plaintiff—a former student in the defendant's master's program—claimed that the university had, among other things, breached the provision of its academic catalog prohibiting the display of sexually suggestive materials and improperly retaliated against her for reporting a professor's inappropriate behavior by dismissing her from enrollment. 2014 WL 714023, at *1–2. Because that provision of the catalog was sufficiently definite, and because the plaintiff alleged that the defendants had "substantially departed from the accepted academic norms by retaliating against her for reporting inappropriate conduct and basing the decision to terminate her on false statements," the defendants' motion to dismiss was denied. *Id.* at *3. Similarly, in *Liu*, the plaintiff—a former law student who was denied the right to re-enroll after taking a medical leave of absence—alleged that the university breached its contract by failing to follow the procedures outlined in the student handbook for suspected honor code violations and by failing to promptly

23

investigate the grievance she filed.  78 F. Supp. 3d at 846.  The handbook provision at issue granted students rights "in all cases involving allegations of a violation of the standards of academic integrity."  *Id.* at 847.  The court held that the plaintiff sufficiently alleged that the university departed from acceptable academic norms when it imposed unreasonable conditions on her return from her leave of absence, which effectively amounted to charges of academic dishonesty, and denied her the right to pursue the remedial procedures outlined in the handbook. *Id.* at 847–48.

Here, like the plaintiffs in *O'Driscoll* and *Liu*, Plaintiff has alleged that Defendants breached express provisions of their handbook and other policies and also departed from acceptable academic norms by retaliating against him for complaining about those breaches. SAC at ¶¶46-47, 79-82.  Ross's Handbook prohibits unequal treatment, harassment, and retaliation.  SAC at ¶¶46-47.  Defendants' materials also promise students "support," "encouragement," "supportive, . . . friendly, .. . available, . . . wonderful" faculty, a commitment to "embrac[ing] diversity," "an increased completion rate," and an education delivered with "integrity" and "accountability."  *Id.* at ¶¶22-26.  These representations are very different than those at issue in Defendants' cited cases.  Therefore, dismissal of these claims is unwarranted.

## B.  Plaintiff Has a Cognizable Breach of Contract Claim for Defendants' Arbitrary and Capricious Conduct.

While courts may be reluctant to interfere with the academic affairs of private colleges and universities, they will intervene when a student alleges that an adverse academic decision was made arbitrarily, capriciously, or in bad faith.  *O'Driscoll*, 2014 WL 714023, at *2–3; *Liu*, 78 F. Supp. 3d at 848.  Plaintiff has lodged specific allegations regarding Defendants' failure to accommodate his documented learning disability and thus has met his pleading burden by alleging, with particularity, that their actions were "arbitrary and capricious."  SAC at ¶¶79-82.

24

Indeed, Plaintiff alleges that Ross's psychologist—Dr. Camp—refused to accommodate his documented learning disability, even after she was made aware of other students who enjoyed accommodations for their learning disabilities. *Id.* at ¶¶31-32. Plaintiff also alleges that Dr. Camp continued to refuse to accommodate his learning disability even after he returned to school following his leave of absence with documents from his treating physicians. *Id.* at ¶36. Additionally, Plaintiff makes specific allegations regarding his attempted appeal of his dismissal from Ross and Ross's retaliation against him. *Id.* at ¶¶42-48. Namely, Plaintiff delineates the various attempts he made to appeal his dismissal by, *inter alia*, presenting evidence of other students who were treated more leniently under similar circumstances. *Id.* at ¶42. He also alleges that he was informed by Ross administration that he would be arrested if he appeared on campus again, without any justification whatsoever. *Id.* at ¶43. Further, he alleges the specific bases for Defendants' violations of AVMA policies and Ross's Student Handbook. *Id.* at ¶¶44-48. Clearly, these specific allegations are not merely conclusory, but instead adequately allege arbitrary and capricious conduct by Defendants toward Plaintiff so as to support his breach of contract claim.

For all of the foregoing reasons, Plaintiff's breach of contract claim—including his claim that Defendants engaged in arbitrary and capricious conduct—should not be dismissed.

## V. DEFENDANTS' LACONIC ARGUMENT REGARDING BREACH OF FIDUCIARY DUTY DOES NOT SUPPORT THE DISMISSAL OF CLAIM 7.

Defendants seek dismissal of Claim 7 with a one-sentence argument contending that "there is no fiduciary duty between an institution of higher education and its students." Motion at 13. However, this is not necessarily the case. Whether a fiduciary duty exists between a university and its students has not been decided by the Seventh Circuit.

Moreover, Defendants' cited authority does not necessitate the extension of those

holdings to this case. The *Phillips* case—which, notably, is the only Illinois precedent cited—expressly considered that the plaintiffs could have alleged certain facts showing the existence of a special relationship between themselves and DePaul University, such as "facts showing that DePaul exercised overwhelming[] influence over them." *Phillips v. DePaul Univ.*, No. 12 CH 3523, 2012 Ill. Cir. LEXIS 3299, at *11 (Cir. Ct. Cook Cty. Sept. 11, 2012) (**Ex. 15**). Similarly, the *Moy* Court noted that the plaintiffs could have alleged facts to suggest a fiduciary relationship, but simply failed to do so. *Moy v. Adelphi Inst., Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994). The other two cases Defendants cite are factually distinguishable, as *Smith* faced the issue of whether there is a fiduciary relationship between an institution and a prospective student, and *Maas* considered whether a university has a fiduciary obligation—rather than simply a contractual one—to warn students about "the obvious" (*i.e.*, that they would likely fail given their LSAT scores and undergraduate grade-point averages). *Ohio Univ. Bd. of Trs. v. Smith*, 724 N.E.2d 1155, 1160 (Ohio App. Ct. 1999); *Maas v. Corp. of Gonzaga Univ.*, 618 P.2d 106, 108 (Wash. Ct. App. 1980).

Unlike in the aforementioned cases, Plaintiff has pled facts to suggest more than a mere business relationship between himself and Defendants. Defendants did more than simply take Plaintiff's tuition in exchange for veterinary education; they held themselves out as providing "abundant . . . support and encouragement" and "exceptional service . . . delivered with integrity and accountability," faculty that would provide "one-on-one care," adhering to policies that prohibited discriminatory practices and accommodations for disabilities, and ensuring an environment free from unequal treatment, harassment, and retaliation. SAC at ¶¶22-26, 46-47. Thus, Defendants exercised the kind of "overwhelming influence" over Plaintiff that the *Phillips* Court noted could give rise to a fiduciary relationship. The fact that Ross is located on a remote

26

island in the West Indies totaling only 68 square miles with a population of less than 50,000 and limited food, daily living needs, and basic communications (*Id.* ¶84) further supports a finding of fiduciary duty in this case.[32]

Accordingly, Defendants' motion to dismiss Claim 7 should be denied.

## VI. CLAIM 8 SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF HAS PLED A VIABLE CLAIM OF CIVIL CONSPIRACY.

Contrary to Defendants' assertion, Plaintiff has alleged a cognizable claim of civil conspiracy because he has sufficiently pled independent causes of action underlying such claim.[33] Like in one of Defendants' cited cases, Plaintiff has sufficiently pled unlawful acts capable of underlying his conspiracy claim. *See Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, No. 12 C 1920, 2014 WL 2459674, at *9 (N.D. Ill. June 2, 2014).

Further, Plaintiff has pled facts to support the elements of a conspiracy claim. Under Illinois law, the elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means in a concerted action, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Id.* at *8. To survive dismissal, a plaintiff's allegations of parallel conduct by alleged conspirators must "raise[] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action," and must "cross the line between factually neutral and factually suggestive." *Std. Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 880 (N.D. Ill. 2009) (citations omitted). Even so, at the motion to dismiss stage, a plaintiff need not demonstrate probability; he simply must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 894 (quoting

---

[32] This fact renders Defendants' cited authority even more distinguishable, as all of the institutions named as defendants in those lawsuits were located on the mainland United States.
[33] *See* Sections II & III, *supra* pp. 10-20 (regarding claims for violation of the ICFA, fraudulent inducement, and negligent misrepresentation).

*Twombly*, 550 U.S. at 556).

Illinois courts have historically denied motions to dismiss conspiracy claims in various circumstances similar to those present here. One court has refused to dismiss an antitrust conspiracy claim against three related entities (a parent and its subsidiaries). *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 524 F. Supp. 2d 1031, 1037–39 (N.D. Ill. 2007). Others have permitted plaintiffs to pursue conspiracy claims against competitors in a particular industry or market where the facts pled suggested the existence of an agreement (*i.e.*, more than mere "conscious parallelism"). *E.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1002 (N.D. Ill. 2011); *Kleen Prods., LLC v. Packaging Corp. of Am.*, 775 F. Supp. 2d 1071, 1078–82 (N.D. Ill. 2011); *Std. Iron Works*, 639 F. Supp. 2d at 900, 902.

In this case, Plaintiff has made clear that each Defendant constitutes a separate—albeit related—entity. SAC at ¶¶6-9. As such, the first element of his claim for conspiracy—combination of two or more persons—is easily satisfied.[34] Plaintiff also has pled facts sufficient to support the remaining elements of a conspiracy claim. In particular, after delineating the policies and promotional statements of Ross and DeVry Group touting their commitments to attend to and care for their students (*id.* at ¶¶22-26) as well as their adherence to anti-discrimination (*id.* at ¶46) and anti-retaliation (*id.* at ¶47) policies and the student disability

---

[34] Any argument by Defendants that they do not constitute separate entities for purposes of a conspiracy claim is refuted by the fact that the U.S. Supreme Court expressly limited its prior holding in *Copperweld* to the antitrust context to bar conspiracy claims against parents and wholly-owned subsidiaries under the Sherman Act. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771–72 (1984) ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise **for purposes of § 1 of the Sherman Act**." (emphasis added)); *see also ASARCO, LLC v. Americas Mining Corp.*, 382 B.R. 49, 76–79 (S.D. Tex. 2007) (collecting cases, and noting that "the prevailing view allows claims for common-law conspiracy among a parent corporation and its wholly-owned subsidiary, at least in certain circumstances"). Illinois courts have affirmed the limited nature of the *Copperweld* holding. *See In re Conticommodity Servs., Inc.*, 733 F. Supp. 1555, 1568 (N.D. Ill. 1990) (limiting *Copperweld* "to the context of antitrust actions" and refusing to hold that a wholly-owned subsidiary can never engage in civil conspiracy with its parent), *rev'd in part on other grounds*, *Brown v. U.S.*, 976 F.2d 1104 (7th Cir. 1992).

policy of the AVMA (Defendants' accrediting body), Plaintiff pleads facts demonstrating the concerted efforts by administrators at Ross and its parent—DeVry—to deprive him of his right to a just appeal. *Id.* at ¶¶42-43, 48, 50-51. In particular, Plaintiff was:

> not permitted to proffer witnesses to testify to the facts [. . .] and submit supporting documentary evidence in his dismissal appeal, was treated differently than other students who failed multiple classes and were not dismissed, was deemed to be on probationary status contrary to [Ross] policy and the terms of Associate Dean St. Jean's May 21, 2014 letter, and was effectively thrown off the island of St. Kitts—not for 'flunking' Dr. Kelly's class, but rather, as a form of reprisal for having the courage to raise the issue, among others, of [Ross]'s failures to accommodate a documented medical disability in his appeal.

*Id.* at ¶48. Further, DeVry "improperly obstructed [Plaintiff]'s access to evidence" and threatened him if he continued to pursue his appeal by asking questions of his colleagues and faculty at Ross. *Id.* at ¶49. Clearly, Ross and DeVry did more than simply engage in parallel conduct—they colluded to ensure that their policies were not applied equally to Plaintiff so that he would be deprived of his right to continue his education at Ross. This certainly rises to the level of an actionable conspiracy, and thus Claim 8 should not be dismissed.

## VII. PLAINTIFF HAS ACCURATELY PLED ALTER EGO.[35]

Although Defendants correctly note that alter ego is not an independent cause of action, they fail to appreciate "one who seeks to have the courts apply an exception to the rule of separate corporate existence . . . must seek that relief in his pleading." *Stargel v. NutraSweet Co.*, No. 13-cv-7575, 2014 WL 1662989, at *3 (N.D. Ill. Apr. 24, 2014) (internal quotations and citation omitted). Because Claim 9 of Plaintiff's complaint incorporates the other paragraphs of his pleading (SAC at ¶91), and because Plaintiff pleads other cognizable claims, his alter ego

---

[35] Plaintiff recognizes that an alter ego claim requires allegations and evidence of a unity of interest between multiple entities. Because such allegation and evidence is contrary to the allegations and evidence necessary for a civil conspiracy claim—namely, for the first element requiring two or more persons—Plaintiff seeks leave of Court to amend his pleading and assert Claim 12 in the alternative. *See* Plaintiff's Motion for Leave to File Second Amended Complaint (filed subsequent hereto).

claim truly does not stand alone and thus should not be dismissed. *See Stargel*, 2014 WL 1662989, at *3 (refusing to dismiss alter ego claim where plaintiff also pled that company breached its contractual obligation); *Tango Music, L.L.C. v. Deadquick Music, Inc.*, No. 99 C 7331, 2001 WL 897606, at *7 (N.D. Ill. Aug. 9, 2001) (because plaintiff's claim for breach of license agreement survived, alter ego claim was not dismissed).

Moreover, Plaintiff has pled sufficient facts to support his alter ego claim. Under Illinois law, to establish that a corporation is merely an alter ego, a plaintiff must show: (1) there is such unity of interest and ownership that the separate personalities of the entities at issue no longer exist; and (2) the circumstances are such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Stargel*, 2014 WL 1662989, at *3. Plaintiff has made these specific allegations. SAC at ¶92. Furthermore, Plaintiff has alleged particular facts demonstrating the hierarchical relationship between Defendants. *Id.* at ¶¶7 (DeVry Medical is one of DeVry's "reporting segments" and operates Ross), 8 (Ross is operated by DeVry Medical), 93 ("DeVry itself recognizes that it controls and manipulates DeVry Medical and [Ross]" based on the language in its SEC Form 10-K). As such, the dismissal of Plaintiff's alter ego claim would be improper.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and permit all of the claims in his Second Amended Complaint to proceed. Plaintiff further requests such other and further relief, at law or in equity, to which he may be justly entitled.

6611537

Dated this 4th day of May, 2018.

Respectfully submitted,

*/s/ Michael W. Ford*
Michael W. Ford, Esq.
Law Offices of Michael W. Ford
*(local counsel)*
4 Timberwood Lane
Riverwoods, IL 60015
Telephone: (847) 948-7884
Email: mfordski@aol.com
IL Bar # 0846139
Member, Trial Bar U.S. District Court N.D. IL

- and -

*/s/ Emil T. Bayko*
Emil T. Bayko
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6608
Facsimile: (713) 226-6208
Email: tbayko@porterhedges.com
IL Bar # 0141356

**ATTORNEYS FOR PLAINTIFF
PETER M. GALLIGAN**

OF COUNSEL:
Kyle Reeb
Texas State Bar No. 24091604
Federal ID No. 2571829
Jim Aycock
Texas State Bar No. 24034309
Federal ID No. 20675
Alison P. Henderson
Texas State Bar No. 24087707
Federal ID No. 2228628
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6211
kreeb@porterhedges.com
jaycock@porterhedges.com
ahenderson@porterhedges.com

31

6611537

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2018, a true and correct copy of the foregoing pleading was electronically filed in accordance with the Federal Rules of Civil Procedure and was served via e-mail upon the following counsel of record:

Brian Stolzenbach
Megan Troy
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
(312) 460-5551
bstolzenbach@seyfarth.com
mtroy@seyfarth.com

/s/ Emil T. Bayko
Emil T. Bayko

32

6611537