Cited
As of: January 25, 2018 4:22 PM Z

## Dean-Hines v. Ross Univ. Sch. of Veterinary Med.

United States District Court for the District of New Jersey

August 9, 2006, Decided; August 10, 2006, Filed

CIVIL ACTION NO. 05-3486

**Reporter**
2006 U.S. Dist. LEXIS 101375 *

BRIGETTE DEAN-HINES, Plaintiff, v. ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE, DeVRY, INC., DOMINCIA MANAGEMENT, INC., DAVID DeYOUNG, individually and in his capacity as Dean of Ross University School of Veterinary Medicine, Defendants.

## Core Terms

personal jurisdiction, contacts, subject matter jurisdiction, motion to dismiss, breach of contract claim, general jurisdiction, alternative forum, Declaration, allegations, discovery, public interest factors, headquarters, forum non conveniens, readmitted, adequate alternative, significant contact, jurisdictional, resident

**Counsel:** [*1] For BRIGETTE DEAN - HINES, Plaintiff: DAVID B. RUBIN, LEAD ATTORNEY, METUCHEN, NJ.

For ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE, DEVRY, INC., Defendants: JAY LAVROFF, JOHN H. SCHMIDT, JR., LEAD ATTORNEY, LINDABURY, MCCORMICK & ESTABROOK, PC, WESTFIELD, NJ.

For DAVID DEYOUNG, Individually and in his capacity as Dean of Ross University School of Veterinary Medicine, Dominica Management, Inc., Defendants: JOHN H. SCHMIDT, JR., LEAD ATTORNEY, LINDABURY, MCCORMICK & ESTABROOK, PC, WESTFIELD, NJ.

**Judges:** John C. Lifland, United States District Judge.

**Opinion by:** John C. Lifland

## Opinion

**MEMORANDUM & ORDER**

**LIFLAND, District Judge**

Before the Court is the motion of Defendants Ross University School of Veterinary Medicine ("Ross"), DeVry Inc. ("DeVry"), and Dominica Management, Inc. ("Dominica") (collectively "Movants") to dismiss the complaint of Plaintiff Brigette Dean-Hines ("Plaintiff" or "Dean-Hines") for lack of subject matter jurisdiction under *Fed. R. Civ. P. 12(b)(1)* or on the ground of *forum non conveniens*, and the motion of Defendant David DeYoung ("DeYoung") to dismiss the complaint for lack of personal jurisdiction. Movants also move to strike the declarations of Dean-Hines and her husband, Jason Hines, which [*2] were submitted in support of Plaintiff's opposition to Movants' motion to dismiss. For the reasons stated herein, Movants' motion to dismiss and motion to strike will be denied, as will DeYoung's motion to dismiss.

**BACKGROUND**

Exhibit 3

Plaintiff is a citizen of Kentucky and a former student of Ross. (Amended Complaint ("Compl.") ¶ 1) According to the complaint, Ross's headquarters and administrative offices are located in Edison, New Jersey, but the Ross campus which Plaintiff attended is located in St. Kitts in the West Indies. (Id. ¶ 2) The relationship between Ross, DeVry, and Dominica is alleged as follows: "On information and belief, Ross is owned and/or operated by [DeVry], One Tower Lane, Oakbrook Terrace, Illinois, through [Dominica], a foreign corporation registered to do business in New Jersey, a wholly-owned subsidiary which exercises legal and/or de facto control over Ross's decision-making insofar as relevant to the events herein." (Id. ¶ 3)

On or about March 9, 2004, Plaintiff withdrew from Ross, following some academic problems. (Id. ¶ 4). She alleges that she willingly withdrew because her Academic Dean, Dr. Joseph Gymah, assured her that she would be readmitted the following semester. [*3] (Id. ¶ 4) On or about April 6, 2004, Plaintiff submitted an application for reinstatement to the Academic Review Committee of Ross. (Id. ¶ 9) Along with this reapplication and in accordance with Ross's practice, Plaintiff submitted to a Ross guidance counselor a copy of the results of her recent Wechsler Adult-Intelligence Scale-Third Edition ("WAIS-III") test which diagnosed Plaintiff with Attention-Deficit/Hyperactivity Disorder Not Otherwise Specified and Learning Disorder Not Otherwise Specified. (Id. ¶¶ 7, 8, 9) On or about April 14, 2004, DeYoung, the Dean of Ross, wrote to Plaintiff that the Committee had denied her request for readmission. (Id. ¶ 10)

On or about April 16, 2004, Plaintiff and her husband met with DeYoung who allegedly told Plaintiff that "he would have no problem readmitting" Plaintiff if she took a course at Sylvan Learning Center ("Sylvan") to help her overcome her disabilities. (Id. ¶ 11) Gymah told Plaintiff that DeYoung had also advised him that he would readmit Plaintiff if she took the Sylvan course. (Id. ¶ 12) DeYoung also allegedly told Plaintiff that he would write her a recommendation letter if she wanted to transfer to another school. (Id. ¶ 11)

On [*4] or about April 19, 2004, Plaintiff called DeYoung's office to ask when she could pick up the recommendation letter but no one ever returned her call. (Id. ¶ 13) In the summer of 2004, Plaintiff returned home to Kentucky and attended weekly Sylvan classes in June and July of 2004. (Id. ¶¶ 15, 16) On or about July 6, 2004, Plaintiff wrote to Ross, advising Ross of her intention to re-enroll for the Fall semester and also sent paperwork to Gymah for review by the Academic Review Committee. (Id. ¶ 17) Sylvan's Director also wrote a recommendation for Plaintiff. (Id.)

On or about August 3, 2004, Gymah told Plaintiff that she would not be readmitted and that he was "disgusted, dumbfounded and greatly apologetic." (Id. ¶ 18) Plaintiff and her husband then met with DeYoung who denied ever telling Plaintiff that she would be admitted if she took the Sylvan course and told her never to apply to Ross again. (Id. ¶ 19)

On or about June 1, 2005, Plaintiff filed the complaint in the Superior Court of New Jersey. On or about July 12, 2005, Defendants timely removed. The complaint contains six counts, alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), the Federal Rehabilitation [*5] Act of 1973 ("FRA"), the Americans with Disabilities Act ("ADA"), and two common law causes of action for promissory estoppel and breach of an actual or implied contract.

By letter dated July 27, 2006, Plaintiff informed this Court that she had been accepted to St. Matthew's University in Tampa, Florida, and would likely be matriculating in August of 2006. The letter states that this development will "likely affect the nature of the relief" sought, but does not affect the issues in the pending motions. As it stands now, the complaint requests the following relief: (1) reinstatement to Ross; (2) an order compelling Ross to provide reasonable accommodations to Plaintiff; (3) an injunction preventing all Defendants from discriminating against Plaintiff on the basis of her handicap; (3) compensatory damages; (4) punitive damages; (5) attorneys' fees and costs.

**ANALYSIS**

**1. Motion to Strike the Affidavits of Brigette and Jason Dean-Hines**

In opposition to Movants' motion to dismiss, Plaintiff and her husband each submitted one affidavit which, Movants argue, should be stricken for failure to comply with *Fed. R. Civ. P. 56(e)*, *Local Rule 7.2*, and the rules of evidence. Because the Court finds [*6] it unnecessary to consider these affidavits in deciding the instant motion, Movants' motion to strike is denied as moot.

**2. Motion of Ross, DeVry, and Dominica to Dismiss for Lack of Subject Matter Jurisdiction or on the grounds of** *Forum Non Conveniens*

A. Subject Matter Jurisdiction

The Movants' basic argument is that this Court lacks subject matter jurisdiction to hear the dispute because application of federal and New Jersey law would be unconstitutional given that the alleged discrimination and the decision not to readmit Plaintiff to Ross occurred in St. Kitts. Movants frame this issue as one concerning subject matter jurisdiction, separate and apart from the question of personal jurisdiction. It is clear that by failing to assert a defense of lack of personal jurisdiction in the instant motion, Movants have waived it under *Fed. R. Civ. P. 12(h)(1)*.

It is also clear that the issue is not one of federal subject matter jurisdiction. The Court has subject matter jurisdiction over the dispute because the case presents a federal question under *28 U.S.C. § 1331*, namely whether Defendants violated the ADA and the FRA. The Court has subject matter jurisdiction over Plaintiff's state law claims **[*7]** based on its supplemental jurisdiction under *28 U.S.C. § 1367(a)*. Defendants themselves recognized and relied on this Court's subject matter jurisdiction when they *removed* the case to federal court.

The Movants' motion is properly one to dismiss for failure to state a claim for which relief can be granted under *Fed. R. Civ. P. 12(b)(6)* and will be treated as such. In deciding a motion to dismiss under *Rule 12(b)(6)*, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)*. A motion to dismiss considers only the pleadings, and certain narrowly defined materials, such as a "document integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)*; see also *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*; *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. **[*8]** If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could be proved consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)*; *Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982)*.

Movants argue that Plaintiff's state law claims must be dismissed under *Allstate Insurance Company v. Hague, 449 U.S. 302, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981)*, because New Jersey lacks significant contacts with the events giving rise to the dispute. In Allstate, the Supreme Court held that "for a State's substantive law to be selected, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *449 U.S. at 312*. Here, the complaint alleges a most significant contact with New Jersey, namely, that Ross's headquarters and administrative offices are located in Edison, New Jersey. (Compl. ¶ 1) The Court therefore finds that dismissal is unwarranted. In addition, the Court notes that in the event that, **[*9]** at a future date, it determines that New Jersey lacks the requisite contacts with the dispute, the remedy would be to allow amendment of the complaint to assert a substantive law different from that of New Jersey, not to dismiss the case altogether.

Movants also argue that Plaintiff's ADA and FRA claims should be dismissed because Congress has not evinced its intent to have these statutes apply extraterritorially. Because the Court has already found that New Jersey has a significant contact with the dispute, it has therefore found that the United States has a significant contact with the dispute. Questions of extraterritorial application and congressional intent under the ADA and the FRA are, therefore, irrelevant.

B. *Forum Non Conveniens*

A district court may, in the exercise of its sound discretion, dismiss a case "when an alternative forum has jurisdiction to hear the case, and when the trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the

court's own administrative and legal problems.'" *Piper v. Reyno, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)* [*10] (citing *Koster v. Lumbermen's Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947))*. In deciding whether to dismiss a case for *forum non conveniens* "the ultimate inquiry is where trial will best serve the conveniences of the parties and the ends of justice." *Koster, 330 U.S. at 527*. There is a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum."[1] *Piper, 454 U.S. at 256*. The defendant bears the burden of persuasion to show that an adequate alternative forum exists as to all defendants and, if so, that the private and public interest factors weigh in favor of dismissal. *Lacey v. CESSNA Aircraft Company, 862 F.2d 38, 43-44 (3d Cir. 1988)* (citing In re Air Crash Disaster v. Pan American World, 821 F.2d 1147, 1164 (5th Cir. 1987)).

A district court entertaining a *forum non conveniens* motion must first decide whether an adequate alternative forum exists to hear the case. A alternative forum is available only if the entire case and all parties can come within the jurisdiction of that forum. In re Air Crash Disaster, 821 F.2d at 1165 (internal citations omitted). Where the remedy offered in the alternative forum is "clearly unsatisfactory," the alternative forum will not be considered adequate. *Piper, 454 U.S. at 255*. If, for example, the alterative forum does not permit litigation of the subject matter of the dispute, the alternative forum is not considered adequate. Id. (comparing *Phoenix Canada Oil Co. Ltd. v. Texaco Inc., 78 F.R.D. 445 (Del. 1978))*. However, where the alternative remedy is different or less favorable from that available in the original forum, the alternative forum will not be considered [*12] inadequate. *Id. at 254*.

If there is an adequate alternative forum, the district court must balance several private and public interest factors, though ultimately "each case turns on its facts." *Piper, 454 U.S. at 249* (quoting *Williams v. Green Bay & Western R. Co., 326 U.S. 549, 557 (1946))*. Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses...and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper, 454 U.S. at 242, n.6* (quoting *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947))*. Public interest factors include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;'...the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Id. (quoting *Gilbert, 330 U.S. at 508*). The plaintiff's choice of forum should rarely be disturbed, unless the balance of factors strongly favors the defendant. *Lacey, 862 F.2d at 42-43*.

Movants [*13] contend that St. Kitts is an adequate forum because they would be amenable to process in St. Kitts, Plaintiff could bring her contract, tort, and personal and property interest claims in St. Kitts, and the St. Kitts and Nevis Constitution "evidences a clear public policy against discrimination." (Declaration of J. Emile Ferdinand [2] ("Ferdinand Decl.") ¶¶ 2, 4; Movants' Brief at 9-10). However, Movants have not shown that the St. Kitts Constitution applies to private entities like Defendants, affords litigants rights equivalent to those Plaintiff seeks to vindicate, or authorizes private rights of action. Their reference to a Constitution that "evidences a clear public policy against discrimination" is simply to vague to make St. Kitts an adequate alternative forum. Nor have Movants shown that St. Kitts has statutes similar to the ADA, FRA, or NJLAD. Movants have therefore failed to meet their burden of showing that St. Kitts would be an adequate alternative forum for Plaintiff's anti-discrimination claims.

Nor do the private and public interest factors weigh [*14] "strongly in favor" of dismissal, as required by *Piper* and *Lacey*. Of utmost importance is the allegation that Ross's headquarters are located in Edison, New Jersey, an allegation which Movants have assumed is "true for this purposes of this Motion." (Movants' Brief at 1). If Ross's headquarters are located in New Jersey, it will not be inconvenient for it to defend this suit in New Jersey.

---

[1] Movants misquoted Piper in stating that the "deference usually given to plaintiff's chosen forum does not apply when the plaintiff is also a stranger to the forum." (Movants' Brief at 11) Piper actually stated that the presumption in favor of plaintiff's chosen forum "applies with less force when the plaintiff or parties in interest are [*11] foreign." *Piper, 454 U.S. at 255*. "Foreign" in this context means from a country other than the United States, not from a state other than the forum state. Here, Plaintiff is from Kentucky and not "foreign" in the Piper sense. She is therefore entitled to the deference usually afforded to plaintiffs in this situation.

[2] J. Emile Ferdinand is an attorney licensed to practice in St. Kitts and a partner of a St. Kitts law firm. (Ferdinand Dec. ¶ 2)

The location of the sources of proof also does not favor dismissal. Though Movants argue that Plaintiff's academic records, Ross's handbook and policy manual, correspondence between Ross and Plaintiff, the results of Plaintiff's psychological tests, and the reports are all located in St. Kitts, this argument is unavailing given that Plaintiff has attached copies of the handbook, policy manual, and correspondence between Plaintiff and Ross as exhibits to her lawyer's declaration. (Declaration of David B. Rubin ("Rubin Dec."), Ex. B, C, E, F, G, I) In addition, two letters regarding Plaintiff's dismissal were sent from Ross's Edison office, demonstrating that some relevant documents are, in fact, located in New Jersey. (Id., Ex. G, I) Though there is no indication of whether the Edison office also has [*15] copies of the psychological test results, the Sylvan reports, and Plaintiff's entire academic record, in this day and age the parties could easily provide these records to the Court.

Though several members of the Academic Review Committee and potential witnesses, including DeYoung and Gymah, reside in St. Kitts, *Rule 26* disclosures have not yet been made. It is therefore unknown at this point whether Plaintiff will call more witnesses who live in the United States than in St. Kitts, thus making the residences of DeYoung and Gymah less significant. Furthermore, Patrick Prince, the psychologist who administered the WAIS-III test to Plaintiff, submitted a declaration [3] stating that he resides in Turks and Caicos and that it "is far more convenient" for him to travel to the United States than to St. Kitts. (Declaration of Patrick Prince, ¶¶ 2, 4) The Court does not find that the witnesses factor weighs in favor of Movants in this case.

In addition, Movants' contention that this case should be dismissed because of the [*16] difficulty of enforcing an injunction against a foreign corporation is most likely moot. Plaintiff originally sought an order compelling Ross to provide reasonable accommodations to her and an injunction preventing all Defendants from discriminating against Plaintiff on the basis of her handicap. However, since filing this suit, Plaintiff has been accepted to St. Matthews University in Tampa, Florida. By letter dated July 27, 2006, Plaintiff informed this Court that her admission "likely will affect the nature of the relief we will be seeking in this case." Therefore, dismissal of this matter based on the difficulty of enforcing an injunction in St. Kitts will be moot, assuming Plaintiff does matriculate at St. Matthews this month, as expected.

Furthermore, Movants' arguments that this case should be dismissed because neither the State of New Jersey nor the United States has a sufficient interest in this litigation is unavailing. As discussed, Ross's headquarters are located in New Jersey, undermining any concerns that New Jersey and the United States, *a fortiori*, have no interest in this suit. As previously discussed there is a "strong presumption in favor of the plaintiff's choice [*17] of forum, which may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum." *Piper, 454 U.S. at 256*. Here, Movants have failed to prove that St. Kitts is an adequate forum and that the private and public interest factors overcome the strong presumption in favor of Plaintiff's chosen forum. Accordingly, Movants' motion to dismiss on the grounds of *forum non conveniens* is denied.

**C. Preemption of Plaintiff's Breach of Contract Claim under the NJLAD**

Movants also argue, in the alternative, that Plaintiff's breach of contract claim should be dismissed because it is preempted under the NJLAD. Plaintiff's breach of contract claim is that all or some of the Movants maintained explicit and implicit antidiscrimination policies, creating a contract or quasi-contract with Plaintiff. (Compl. ¶¶ 47, 48) Movants allegedly breached this contract by discriminating against Plaintiff.

Movants point to cases from this district where courts have held that breach of contract claims are preempted when the plaintiff brings a NJLAD claim that is duplicative of the common law claim. See, e.g., *Santiago v. City of Vineland, 107 F. Supp. 2d 512 (D.N.J.,2000)*. [*18] In Santiago, for example, the Court granted summary judgment for defendant on plaintiff's claim for breach of an implied contract (based on his employer's anti-discrimination policy) because it was based on the same discriminatory conduct, sought the same remedies, and sought to "vindicate the same rights" as his NJLAD claim. *Id. at 567-68*. Movants argue that the same analysis should apply to Plaintiff's breach of contract claim.

---

[3] Plaintiff did not originally include this declaration as part of her opposition papers, and made an unopposed motion to supplement the record. The Court grants this motion.

Plaintiff responds that it would be premature for this Court to preempt her breach of contract claim because it is unclear at this stage whether Plaintiff will, in fact, have a viable NJLAD claim. Plaintiff relies on *Ballinger v. Delaware River Port Authority*, where the New Jersey Supreme Court held that under New Jersey's Conscientious Employee Protection Act ("CEPA"), which provides that common law claims based on the same conduct are waived when a plaintiff institutes a CEPA claim, the statutory waiver does not apply if it turns out that "'the CEPA claim is withdrawn or otherwise concluded prior to a judgment on the merits.'" *172 N.J. 586, 602, 800 A.2d 97 (2002)* (citing *Young v. Schering Corp., 141 N.J. 16, 29, 660 A.2d 1153 (1995))*. Plaintiff argues that the same analysis should **[*19]** apply to NJLAD claims.

The Court agrees with Plaintiff. While CEPA contains a statutory waiver provision and the NJLAD does not, the New Jersey Supreme Court's belief that a statutory waiver provision is not triggered if the statutory claim is eventually dismissed, suggests that the Court would hold that a *judge-made* waiver provision would not be triggered if the statutory claim is eventually dismissed. Accordingly, the Court finds that the NJLAD claim and the breach of contract claim can proceed until Plaintiff must make an election of remedies, at an appropriate time before trial.

**3. Motion of DeYoung to Dismiss for Lack of Personal Jurisdiction**

The complaint makes the following allegations with respect to DeYoung: he was Dean of Ross University School of Veterinary Medicine in St. Kitts; (Compl. ¶ 5); he wrote a letter to Plaintiff on April 14, 2004, advising her that her readmission application was denied (Id. ¶ 10); he met with Plaintiff on campus on April 16, 2004 and advised her to take the Sylvan course (Id. ¶ 11); he met with Plaintiff on campus in August of 2004 and denied ever stating that he told her that she would be readmitted (Id. ¶ 19). Plaintiff concedes, and the Court **[*20]** agrees, that she has not established sufficient contacts between DeYoung and New Jersey to warrant this Court's exercise of personal jurisdiction over him. Instead, Plaintiff requests that this Court allow her to conduct jurisdictional discovery before dismissing DeYoung as a Defendant.

In *Toys "R" Us, Inc. v. Step Two, S.A.*, the Third Circuit held that "although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction...courts are free to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *318 F.3d 446, 456 (3d Cir. 2003)* (citing *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997))*. A district court should grant a plaintiff the right to conduct jurisdictional discovery upon a threshold showing of "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state.'" Id. (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992))*. The Court must determine, whether Plaintiff has made this threshold showing.

The "requisite contacts" **[*21]** in this case are those that will establish either specific or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*; *Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001)*. "Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.'" *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000)* (quoting *Burger King v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))*. It is clear from the allegations in the complaint that specific personal jurisdiction is not a basis for personal jurisdiction in this case, with or without discovery. Plaintiff is a resident of Kentucky and suffered her injuries in St. Kitts and, perhaps, in Kentucky. There is no reasonable basis for this Court to believe that DeYoung purposefully directed any of his alleged activities at any resident of New Jersey or that Plaintiff suffered any injuries in New Jersey. Therefore, the Court finds that specific personal jurisdiction is not warranted in this case.

General jurisdiction exists when a defendant **[*22]** engages in "continuous and systematic" contacts with the forum state, whether or not the contacts are related to the injury giving rise to the cause of action. *Remick, 238 F.3d at 255*. The greater reach of general jurisdiction requires "significantly more than mere minimum contacts," and the plaintiff seeking to exert general jurisdiction must show that the defendant's contacts with the forum are "continuous and substantial." *Provident Nat'l Bank, 819 F.2d at 437* (citations omitted). Plaintiff argues that there is a reasonable basis to believe that general jurisdiction over DeYoung exists because Ross's administrative office and headquarters are located in Edison, New Jersey. Given this location, Plaintiff argues that DeYoung "by necessity, would report directly to the administrative team in New Jersey" and would necessarily have "continuous and pervasive contact with the administrative arm" of Ross. (Plaintiff's Brief at 2). The Court agrees.

The Court recognizes DeYoung's arguments that he has never lived in New Jersey, has never worked in New Jersey, has never owned property in New Jersey, has been the Dean of Ross since April of 2003 and lived in St. Kitts since then, (Declaration [*23] of David DeYoung ¶¶ 2, 3, 4, 5, 6) and, in addition, that the question of personal jurisdiction over Ross University separate and apart from the question of personal jurisdiction over DeYoung. Nevertheless, by alleging that Ross has its administrative headquarters in New Jersey and that DeYoung is the Dean of Ross, Plaintiff has shown that her claim of general jurisdiction is not "clearly frivolous." *Toys "R" Us, 318 F.3d at 456*. All Plaintiff must show is the "possible existence" of general jurisdiction. Should discovery reveal that DeYoung has frequent communications with the New Jersey office, regularly comes to New Jersey, or avails himself of resources in the New Jersey office, general jurisdiction may be established. Plaintiff is therefore entitled to limited discovery on the issue of DeYoung's contacts with New Jersey, including their scope and frequency.

The personal jurisdiction analysis does not end with a determination that the defendant has sufficient contacts with the forum state. The Court must next determine whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Burger King, 471 U.S. at 476-77*. [*24] The Court makes no determination now with respect to the "fair play and substantial justice" analysis as jurisdictional discovery may reveal facts relevant to that question. For these reasons, and the ones stated above,

**IT IS** on this 9th day of August, 2006,

**ORDERED** that the motion of Defendants Ross University School of Veterinary Medicine, DeVry, Inc., and Dominica Management, Inc., to strike the affidavits of Brigette Dean-Hines and Jason Dean-Hines is denied as moot; and it is further

**ORDERED** that the motion to dismiss of Defendants Ross University School of Veterinary Medicine, DeVry, Inc., and Dominica Management, Inc. is denied, except Plaintiff must elect to proceed either with her NJLAD claim or her breach of contract claim at an appropriate time before trial; and it is further

**ORDERED** that the motion to dismiss of Defendant David DeYoung for lack of personal jurisdiction is denied. Plaintiff may conduct limited jurisdictional discovery, at the direction of Magistrate Judge Falk, to determine whether DeYoung has sufficient contacts with the New Jersey to warrant this Court's exercise of personal jurisdiction over him.

/s/ John C. Lifland, U.S.D.J.

**End of Document**