As of: January 25, 2018 8:44 PM Z

## *Phillips v. Depaul Univ.*

Circuit Court of Cook County, Illinois, County Department, Chancery Division

September 11, 2012, Decided; September 11, 2012, Entered

12 CH 3523

**Reporter**
2012 Ill. Cir. LEXIS 3299 *

JONATHAN PHILLIPS, et al., Plaintiffs, v. DePAUL UNIVERSITY, Defendant.

## Core Terms

graduates, damages, Plaintiffs', consumer fraud, alleged facts, full-time, law school, enrolled, common law fraud, misrepresentations, proximate, parties, educational institution, deceptive, accrediting, materially, misleading, salary, negligent misrepresentation, fiduciary relationship, fraudulent concealment, reasonable reliance, motion to dismiss, positions, supplying, factors, tuition, duty to disclose, cause of action, ascertainable

**Judges:** **[*1]** Neil H. Cohen.

**Opinion by:** Neil H. Cohen

## Opinion

**MEMORANDUM AND ORDER**

Defendant DePaul University has filed a Combined Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to *735 ILCS 5/2-615* and *5/2-619*.

**I. Background**

Plaintiffs Jonathan Phillips, Brian Loker, Adam Smestad, Xavier Hailey, Brent Davidson, Shellye Taylor, Allison Leary, Jaime Walsh and Madison Mullady enrolled at DePaul from 2003 to 2008 to obtain Juris Doctorate ("JD") degrees. (1st Am. Compl. P8). Each Plaintiff graduated from DePaul with a JD degree. (Id. at ¶¶10-18). Walsh was admitted to the Illinois bar in 2007. (Id. at P16). Davidson was admitted to the Illinois bar in 2009. (Id. at P10). Phillips, Hailey, Taylor, and Smestad were admitted to the Illinois bar in 2010. (Id. at ¶¶10, 12, 13 and 15). Leary and Mullady were admitted to the Illinois bar in 2011. (Id. at ¶¶16-17). Loker was admitted to the California bar in 2007. (Id. at P18). Plaintiffs all allege that they owe significant amounts in student loans and that they have been unable to obtain employment in the legal field which would allow them to repay these loans. (Id. at ¶¶10-18).

Plaintiffs allege that DePaul provides prepared information purporting to set forth the employment **[*2]** history of its graduates within the first nine months after graduation ("Employment Information"). (Id. at P35). Based upon surveys completed by recent DePaul graduates, DePaul provided information on the percentage of graduates employed, the median salary of those employed, the categories of employment -- private practice, business, government, public interest, judicial clerkships or academia -- and the mean salary for each category of employment (Id. at P36). DePaul published the Employment Information in its own marketing materials and provided the information to third parties such as the American Bar Association ("ABA"), the National Association for Law Placement ("NALP"), and *U.S. News and World Report* ("*US News*"). (Id. at P41).

Exhibit 15

Plaintiffs contend that the context of the Employment Information made it reasonably appear to prospective law students that the jobs reported were full-time permanent positions for which a J.D. degree was required or preferred. (Id. at P37). Plaintiffs assert that DePaul intended for the Employment Information to be interpreted in this way. (Id. at P38).

Plaintiffs assert that the Employment Information was incomplete in materially misleading ways: (1) **[*3]** the jobs reported included any type of employment regardless of whether a J.D. degree was required or preferred; (2) the jobs reported included part-time positions and temporary full-time positions; and (3) the jobs reported included "research assistant," "intern" and other "make-work" positions, including jobs provided by DePaul to its own graduates until they found jobs requiring a JD degree. (Id. at P39). Plaintiffs contend that the Employment Information omitted and/or concealed material information including: (1) that the category "business" included jobs that any college graduate, or even non-graduate, could obtain including jobs as a waiter delivery person, barista or store clerk; (2) that the data were obtained only through survey: which were voluntarily returned; (3) that only a small percentage of surveys were returned; (4) the numbers or percentages of graduates who were employed in a position requiring or preferring a J.D. degree; (5) the respective numbers or percentages of graduates who were employed in either a full-time, part-time or temporary positions; and (5) that the data had not been audited or otherwise verified. (Id.).

Plaintiffs contend that DePaul knew that **[*4]** Plaintiffs would make their decisions regarding which law school to enroll in, and remain enrolled in, "based in significant part on the perceived advantage a degree from that particular school would give them in finding full-time permanent employment as a lawyer." (Id. at P43). Plaintiffs assert that the cumulative effect of DePaul's publication of the Employment Information was to imply to prospective students that DePaul's statistics accurately reflected their likelihood of obtaining full-time legal employment within nine months of graduation. (Id. at P45). Plaintiffs allege that DePaul published the Employment Data knowing that Plaintiff would rely on the information even though the information was incomplete and materially misleading. (Id. at P46). Plaintiffs allege the legal conclusion that they investigate d the Employment Information to the extent necessary. (Id. at P53).

Plaintiffs contend that by voluntarily disclosing the Employment Information, DePaul assumed a special duty to make sure the Employment Information was complete and not materially misleading. (Id. at ¶¶49-50). Plaintiffs further assert that they became part of the "DePaul Family" upon their enrollment specially **[*5]** obligating DePaul to not continue to provide them with materially misleading Employment Information. (Id. at P53).

Plaintiffs allege that they reasonably relied on the Employment Information because a prospective student would not contemplate that a law school would publish materially misleading information and would not believe there was a need to verify the information provided. (Id. at P52).

The First Amended Complaint also contains allegations regarding unidentified Lawyer Defendants who Plaintiffs have attempted to sue as "Does 1-20." Plaintiffs contend that these purported Lawyer Defendants were responsible for compiling the Employment Information. (Id. at P56). Plaintiffs claim that these purported Lawyer Defendants violated various Illinois Rules of Professional Conduct in allegedly compiling the Employment Information. (Id. at P56).

Plaintiffs contend that as a consequence of their reliance on the Employment Information they paid tens of thousands of dollars for tuition and in some cases took out loans that will burden them for years. (Id. at P64). Plaintiffs assert that as a consequence of such reliance, Plaintiffs graduated with a J.D. degree from DePaul with near-term and **[*6]** lifetime job prospects that are statistically less than they would have been "had they obtained a degree from a DePaul with the employment numbers DePaul claimed to have." (Id. at P65). Plaintiffs seek to recover as damages: (1) the portion of their tuition payments attributable to DePaul's allegedly inflated Employment Information; and (2) the additional lifetime income they would have expected to earn had the Employment Information been true. (Id. at P69).

Count I of the Complaint asserts a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), *815 ILCS 505/1 et seq.* Count II asserts a claim for common law fraud. Count III asserts a claim for negligent misrepresentation.

**II. Motion to Dismiss**

DePaul is moving to dismiss the Complaint pursuant to 735 ILCS 5/2-615 and 5/2-619. A § 2-615 motion to dismiss "challenges the legal sufficiency of the complaint." Chicago City Day School v. Wade, 297 Ill. App. 3d 465, 469 (1st Dist. 1998). The relevant inquiry is whether sufficient facts are contained in the pleadings which, if proved, would entitle a plaintiff to relief. Id. "Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint." Id. "A section 2-615 motion admits as true all well-pleaded facts and reasonable inferences [*7] that can be drawn from those facts, but not conclusions of law or conclusions of fact unsupported by allegations of specific facts." Talbert v. Home Savings of America, 265 Ill. App. 3d 376, 379-80 (1st Dist. 1994). A section 2-615 motion will not be granted "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." Baird & Warner Res. Sales, Inc. v. Mazzone, 384 Ill. App. 3d 586, 590 (1st Dist. 2008).

A § 2-619 motion to dismiss "admits the legal sufficiency of the complaint and affirms all well-pled facts and their reasonable inferences, but raises defects or other matters either internal or external from the complaint that would defeat the cause of action." Cohen v. Compact Powers Sys., LLC, 382 Ill. App. 3d 104, 107 (1st Dist. 2008). A dismissal under § 2-619 permits "the disposal of issues of law or easily proved facts early in the litigation process." Id. Section 2-619(a)(9) authorizes dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9).[1]

A. *Common Law Fraud (§ 2-615)*

**1. Fraudulent Misrepresentation**

To allege a cause of action for fraudulent misrepresentation, a plaintiff must allege: (I) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induced the plaintiff to act; (4) the plaintiff's reliance on the truth of the statement; and (5) damages [*8] as a result of that reliance. Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482, 496 (1996). Fraud must be alleged with specificity and particularity including what misrepresentations were made, who made the misrepresentations, when they were made and to whom they were made. Id.

DePaul provided employment information by category, an average salary for those graduates in private practice, and a range of salaries, which included salaries as low as $20,000. (Reply, Exs. J and K). The Complaint does not allege that any of the Employment Information was false. Rather, the Complaint alleges that the Employment Information was incomplete and these omissions made the Employment Information materially misleading. While Plaintiffs argue that DePaul misrepresented their odds of obtaining employment as a lawyer with a DePaul law degree, Plaintiffs have failed to identify any statement made by DePaul which predicted Plaintiffs' odds of obtaining employment as a full-time lawyer, which suggested that the employment obtained by all recent graduates was full-time or well paid, or which suggested that Plaintiffs would obtain full-time employment as a lawyer or at a certain salary within nine months of graduation. Plaintiffs have failed to allege the existence [*9] of any fraudulent misrepresentation.

**2. Fraudulent Concealment**

In order to state a cause of action for fraudulent concealment, the plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff. Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482 (1996). There are two situations in which a duty to disclose arises: (1) the plaintiff and defendant are in a fiduciary or confidential relationship; or (2) the plaintiff placed trust and confidence in the defendant placing defendant in a position of influence and superiority over the plaintiff. Id.

---

[1] The court notes that the parties have relied in part on opinions issued by trial courts in other states in cases similar to this action. This action, however, is governed by Illinois law. As such, whether Plaintiffs' claims are dismissed or upheld will be based on Illinois law and the out-of-state opinion cited by the parties provide minimal guidance.

"A fiduciary duty may arise as a matter of law from the existence of a particular relationship, such as attorney-client or principal-agent relationship. A fiduciary relationship and the attendant duties may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." Gonzales v. American Express Credit Corp., 315 Ill. App. 3d 199, 210 (1st Dist. 2000). "When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of establishing such by clear and convincing evidence." Id. [*10] "The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the "servient" party entrusted the handling of its business affairs to the "dominant party" and placed trust and confidence in it." Id.

There is no Illinois authority finding that a fiduciary relationship exists between a student and an educational institution. Rather, Illinois case law suggests that the relationship is contractual in nature. E.g., Steinberg v. Chicago Medical School, 69 Ill. 2d 320 (1977); Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch., 298 Ill. App. 3d 146 (2d Dist. 1998). Other courts which have expressly considered the issue have found that no fiduciary relationship exists between a student and an educational institution. E.g., Valente v. Univ. of Dayton, 438 F. App'x 381, 386-87 (6th Cir. 2011); Moy v. Adelphi Inst. Inc., 866 F. Supp. 696, 708 (E.D.N.Y. 1994); Ohio Univ. Bd. of Trustees v. Smith, 724 N.E.2d 1155, 1160 (Ohio App. Ct. 1999); Maas v. Corp. of Gonzaga Univ., 618 P.2d 106, 108 (Wash. Ct. App. 1980). Plaintiffs do not cite to any case holding that a fiduciary duty exists between an educational institution or any employee of an educational institution.

Plaintiffs argue that a fiduciary duty should be imposed here because educational institutions should be held to a higher standard. Plaintiffs, however, fail to cite to any Illinois authority in support. Plaintiffs rely solely on a New York case, Paladino v. Adelphi Univ., 89 A.D.2d 85, 89 (N.Y. App. Div. 1982), which stands only [*11] for the proposition that educational institutions should not be exempt from suit for intentional torts.

Plaintiffs have also failed to allege the existence of any special or confidential relationship with DePaul. As prospective students, Plaintiffs had no relationship with DePaul, much less a special relationship which would give rise to any duty. Nor have Plaintiffs alleged any facts, as op posed to legal conclusions, showing that a special relationship existed after they became DePaul students. To establish such a special relationship, Plaintiffs would have to allege facts showing that DePaul exercised overwhelmingly influence over them. Benson v. Stafford, 407 Ill. App. 3d 902, 918 (1st Dist. 2010). Plaintiffs allege facts showing nothing more than a contractual relationship between themselves and DePaul. Plaintiffs paid DePaul tuition and DePaul provided a legal education in return. This does not give rise to a special relationship. E.g., Carey Electrical Contracting, Inc. v. First Nat'l Bank of Elgin, 74 Ill. App. 3d 233, 238 (2d Dist 1978)(Normal trust between parties and a slightly dominant business position does not transform a contractual relationship into a confidential or fiduciary relationship).

Plaintiffs suggest that DePaul owed a duty to Plaintiffs arising out of the Illinois Rules of Professional Conduct applicable to lawyers. Plaintiffs [*12] fail, however, to identify any rule that imposes duties on a law school toward its students or prospective students. Nor do Plaintiffs cite to any authority holding that law schools have heightened duties based on the Illinois Rules of Professional Conduct. Indeed, to the contrary, Illinois law is clear that the Rules of Professional Conduct do not establish any separate duties or causes of action. Nagy v. Beckley, 218 Ill. App. 3d 875, 879 (1st Dist. 1991).

Finally Plaintiffs contend that silence accompanied by deceptive conduct can give rise to a duty to disclose. While this is true, the three fraudulent concealment cases relied upon by Plaintiffs do not support any such duty in this case.

In Heider v. Leewards Creative Crafts, Inc., 245 Ill. App. 3d 258, 262 (2d Dist. 1993), the plaintiff buyer was in negotiations with the defendant to purchase a warehouse. On a tour of the warehouse, the plaintiff asked about the nature of the material on columns in the building he was seeking to purchase Id.. He was subsequently told that the material "was not a problem." Id. Before the closing on the warehouse, the defendant was acquired by Mumford, Inc. which took over the negotiations. Id. Mumford, Inc. learned that the columns contained asbestos, but did not tell the plaintiff. Id. Before the closing, the plaintiff asked if there [*13] was anything he should know about the condition of the building and was told no. Id. at 262-63. The defendant's silence regarding the asbestos was accompanied by active concealment and, therefore, actionable.

In Russow v. Bobola, 2 Ill. App. 3d 837, 842 (2d Dist. 1972), the plaintiffs purchased the defendants' house. The defendants did not tell the plaintiffs that the house had been flooded twice while defendants owned it despite being asked whether the drain outside the garage was adequate. Id. The defendants also painted over the watermarks showing the flood damage. Id. Given the

evidence of the defendants' active concealment of the flooding, the plaintiffs' claim for fraudulent concealment could not be dismissed.

In *W.W. Vincent & Co. v. First Colony Life Insurance Co., 351 Ill. App. 3d 752 (1st Dist. 2004)*, in the context of a stock purchase transaction, the defendant told the plaintiff that a certain contract was an asset of the corporation whose stock was being purchased. The defendant did not disclose the fact that the contract had been assigned. *Id. at 969*. The court found that under this situation, the defendant imposed upon itself a duty to disclose the assignment. Id.

Heider, Russow and W.W. Vincent are factually inapposite to the instant matter. In each of these cases, the defendant imposed a duty to disclose upon itself by affirmatively misleading **[*14]** the plaintiff in response to a specific inquiry. Here, Plaintiffs do not claim that they asked DePaul for any further information or asked for clarification of the Employment Information. Plaintiffs have not alleged any facts showing any deceptive conduct by DePaul which would give rise to a duty to disclose. Plaintiffs cannot maintain a claim for fraudulent concealment based on the facts alleged.

### 3. Reasonable Reliance

DePaul contends that Plaintiffs' claim for common law fraud fails because Plaintiffs have not alleged facts showing reasonable reliance. "Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action." *Napleton v. Village of Hinsdale, 229 Ill. 2d 296, 305 (2008)*. Contrary to Plaintiffs' assertions, a complaint *can* be dismissed for failure to allege facts showing reasonable reliance. E.g., *Weis v. State Farm Mut. Auto. Ins. Co., 333 Ill. App. 3d 401, 410 (2d Dist 2002)* (affirming dismissal of claim for common law fraud for failure to allege any facts supporting reasonable reliance).

Plaintiffs allege that it was reasonable to rely on the Employment Information without making any independent investigation of their own because DePaul is a law school and prospective students should be able to rely on information presented **[*15]** by a law school. (1st Am. Compl. P52, P58). Plaintiffs, however, offer no authority standing for the proposition that prospective students or enrolled students may close their eyes to publicly available information on employment opportunities for lawyers and rely solely on the data provided by the educational institution in deciding to enroll at, or stay enrolled at, the institution. Nor have Plaintiffs alleged any facts, or offered any authority, to support the proposition that they can reasonably assume that alt the employment obtained by DePaul's graduates was full-time and in the legal profession when no such representation was made. Common sense alone should have allowed Plaintiffs to determine that a graduate making $20,000 a year is not employed as a full-time lawyer. Plaintiffs have not alleged sufficient facts to support reasonable reliance.

### 4. Proximate Causation

To state a claim for common law fraud, Plaintiffs must allege facts showing that their reliance on the Employment Information was the proximate cause of their alleged damages. *Lewis v. Lead Industries, Ass'n, 342 Ill. App. 3d 95, 104 (1st Dist 2003)*. Plaintiffs allege, in part, that as a consequence of DePaul's alleged fraud, they enrolled in DePaul's J.D. program and paid tens of thousands **[*16]** of dollars for tuition and, in some cases, took out student loans which will burden them for years. (1st Am. Compl. P64). Plaintiffs further allege the consequence of their reliance on the Employment Information is that their J.D. degrees from DePaul are worth some unidentified amount less than they would have been had the Employment Information been a reasonable projection of Plaintiffs' post-graduation employment prospects. (Id. at P67). Plaintiffs also allege that their reliance on the Employment Information proximately caused them to graduate from DePaul with "near term and lifetime job prospects that are, statistically, less than they would have been had they obtained a degree from a DePaul with the employment numbers DePaul claimed to have." (1st Am. Compl. P65).

Plaintiffs have not alleged any facts demonstrating that "but for" DePaul's alleged misrepresentations, they would not have sustained damages. While Plaintiffs are correct that the DePaul's alleged misrepresentations are not required to the sole cause of their damages, Capiccioni v. Brennan Naperville, Inc., 339 Ill. app. 3d 927, 937 (2d Dist. 2003), in an action for fraud, "'damages * * * must be a proximate, and not **[*17]** remote, consequence of the fraud.'" *City of Chicago v. Michigan Beach Hous. Coop., 297 Ill. App. 3d 317, 326 (1st Dist. 1998)*. Plaintiffs do not allege facts, as opposed to legal conclusions,

connecting DePaul's alleged fraud to their inability to obtain full-time legal employment sufficient to repay their loans. Plaintiffs have not alleged proximate causation.

### 5. Damages

Damages are an essential element of a claim for common law fraud. *City of Chicago v. Michigan Beach Hous. Coop., 297 Ill. App. 3d 317, 323 (1st Dist. 1998)*. "Absolute certainty about the amount of damage is not necessary to justify a recovery if damage is shown, but damages may not be predicated on 'mere speculation, hypothesis, conjecture or whim.'" Id. (citation omitted). DePaul contends that Plaintiffs claim damages that are speculative and incapable of calculation.

Plaintiffs argue that they are entitled to a "benefit-of-the-bargain" measure of damages. Benefit-of-the-bargain damages are developed by 'assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true.'" *Michigan Beach, 297 Ill. App. 3d at 326* (citation omitted). "To show injury, plaintiffs must allege facts which show the value of what they received was not equal to the value of what they were promised." Id. Plaintiffs, however, have not identified how benefit-of-the-bargain damages [*18] would ever be reasonably calculated in this case.

Plaintiffs allege that their DePaul J.D. degrees are worth some unidentified percentage less than they would have been had DePaul's representations about their recent graduates' employment been true. Plaintiffs, however, identify no mechanism by which such damages could ever be calculated. Even assuming that the worth of a J.D. degree is based solely upon what the holder of the degree is able to earn as a lawyer, a highly dubious proposition, what a lawyer earns, upon graduation and over a lifetime, is based on a myriad of factors. These factors include, but are not limited to, the state of the economy, the overall availability of jobs in the legal profession, the overall academic record of the graduate, any practical experience of the graduate such as summer associate positions, internships and clinics, the efforts put into obtaining legal employment, whether the graduate interviews well, and the geographic area in which employment is sought Additional factors impacting the amount a lawyer may or may not earn over a lifetime include, but are not limited to, whether the lawyer chooses to practice in the private or public sector, whether [*19] the lawyer takes time off for childrearing or other reasons, whether the lawyer, if in private practice, makes partner, economic conditions over the course of the lawyer's lift time, etc. None of these factors can be determined with any kind of certainty and, therefore, the amount of damages, if any, sustained by Plaintiffs is wholly speculative. Speculative damages cannot be recovered.

Plaintiffs assert that nominal damages can be recovered under a theory of common law fraud. *In re Application of Busse, 124 Ill. App. 3d 433, 439 (1st Dist. 1998)*. While Plaintiffs are correct, the presumption of nominal damages is based on proving an actual harm. As discussed above, Plaintiffs have not alleged any actual harm caused by DePaul. Therefore, they would not be entitled to even nominal damages.

Plaintiffs' theory of damages assumes that the value of their DePaul degree is somehow related to the outcomes experienced by prior graduates. But the employment and salary obtained by these prior graduates is relevant only to the value of a DePaul degree to those graduates. They bear no correlation to the value of Plaintiffs' degrees, which are based on a incalculable numbers of variables, most of which are beyond DePaul's control.

Plaintiff's also seek injunctive relief [*20] against DePaul in the form of requiring DePaul to further differentiate between different types of employment in future publications. This request is likely moot given recent approved changes to American Bar Association Standard 509 which would require law schools to make the disclosures sought by Plaintiffs. More importantly, in any event, Plaintiffs can never establish a right to such relief since, to be entitled to a permanent injunction, Plaintiffs would have to prove that they have a clear and ascertainable legal right in need of protection, the existence of irreparable harm; and a lack of an adequate legal remedy. *Kopchar v. City of Chicago, 395 Ill. App. 3d 762, 772 (1st Dist. 2009)*. Plaintiffs have no ascertainable legal right in need of protection because they are not prospective or current students of DePaul and have no current or future right to the disclosure of any employment information from DePaul.

Plaintiff's did not pay tuition to DePaul in return for future employment. Plaintiffs paid tuition to DePaul in return for a legal education which would prepare them to practice law. DePaul provided the service paid for by Plaintiffs. Plaintiffs all earned a J.D. degree from DePaul and were all admitted to practice law. DePaul cannot be blamed [*21] for the fact that eight of the

nine Plaintiffs graduated at a time which was witness to a metamorphosis in the practice of law due to a number of factors not the least of which was the height of a tumultuous and deep recession that seriously affected employment in the legal profession.

Plaintiffs' claim for common law fraud must be dismissed for failure to allege any fraudulent misrepresentation, failure to allege fraudulent concealment, failure to allege reasonable reliance, failure to allege proximate causation and failure to allege any ascertainable damages.

### B. *Consumer Fraud (§ 2-615)*

"To plead a private cause of action for a violation [of the Consumer Fraud Act], a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 149 (2002)*. A claim for consumer fraud must be pled with the same specificity as a claim for common law fraud. *Smith v. Prime Cable of Chicago, 276 Ill. App. 3d 843, 857 (1st Dist. 1995)*. "A defendant need not have intended to deceive the plaintiff; innocent misrepresentations or omissions intended to **[*22]** induce the plaintiff's reliance are actionable under the statute." *Capiccioni v. Brennan Naperville, Inc., 339 Ill. App. 3d 927, 933 (2d Dist. 2003)*.

Plaintiffs' consumer fraud claim, like the common law fraud claim, fails to allege facts supporting the existence of proximate cause or recoverable damages. Even assuming that the Employment Information was deceptive, Plaintiffs have not alleged facts showing that DePaul's publication of the Employment Information proximately caused any ascertainable damages. The consumer fraud claim must be dismissed pursuant to *§ 2-615*.

### C. *Consumer Fraud (§ 2-619)*

DePaul also seeks dismissal of the consumer fraud claim based on § 505/10b(l) of the Illinois Consumer Fraud Act which exempts conduct "specifically authorized by any regulatory body or office acting under statutory authority of this State or the United States." *815 ILCS 505/10b(1)*.

DePaul contends that it complied with ABA Standard 509 and, therefore, are exempt under § 505/10b(1). Plaintiffs acknowledge that DePaul is required to report its employment statistics pursuant to ABA Standard 509 and did so, (1st Am. Compl. P47), but argue that the ABA is not a regulatory body or office. Plaintiffs are mistaken.

The Department of Education ("DOE") does not accredit schools of higher learning itself, but approves **[*23]** accrediting agencies for different types of education programs. *20 U.S.C. § 1099b*; *Thomas M. Cooley Law Sch. v. American Bar Ass'n, 459 F.3d 705, 706 (6th Cir. 2006)*. The DOE has approved the ABA as a nationally recognized accrediting agency for law schools. *73 Fed. Reg. 11404 (Mar. 3, 2008)*. The ABA and other accrediting agencies serve as proxies for the DOE. *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance, 44 F.3d 477, 449 (7th Cir. 1994)*.

ABA Standard 509 is promulgated under the requirements of the Higher Education Act ("HEA"), *20 U.S.C. § 1001 et seq.*, and meets DOE requirements. *34 C.F.R. § 668.41 et seq.* The HEA applies to accredited law schools and requires all accredited law schools to provide prospective and enrolled students with information concerning employment and graduation statistics. *20 U.S.C. § 1092(a)(1)(R)*; *20 U.S.C. § 1094(a)(8)*.

Because the ABA acts a proxy for the DOE, the ABA is a regulatory body under § 505/10b(1) of the Illinois Consumer Fraud Act. Therefore, compliance with ABA Standard 509 precludes any claim for consumer fraud based on the provision of employment information to prospective and enrolled students. E.g., *Jackson v. South Holland Dodge, 197 Ill. 2d 39, 50 (2001)* (dismissing consumer fraud claim because the defendant had complied with the requirements of the Truth in Lending Act). While Plaintiffs allege that DePaul was required to meet higher stan dards than ABA Standard 509, (1st Am. Compl. ¶¶47-48), Plaintiffs have failed to identify any authority supporting this position. The consumer fraud claim must **[*24]** be dismissed pursuant to *§ 2-619*.

**D.** *Negligent Misrepresentation*

DePaul contends that Plaintiffs have not, and cannot, state a claim for negligent misrepresentation. "To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank v. Stewart Title Guaranty Co., 218 Ill. 2d 326, 334-335 (2006)*. Where purely economic damages are sought, a party has a duty "to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions." *Id. at 335*.

Plaintiffs are seeking purely economic damages. Therefore, they must allege facts showing that DePaul is in the business of providing information for the guidance of others in their business transactions. Plaintiffs have not, and cannot, allege such facts. DePaul is not in the business of providing information for the guidance **[*25]** of others in their business transactions. DePaul is in the business of educating students. The provision of the Employment Information was incidental to the educating of students and one who supplies such incidental information is not in the business of supplying information for the guidance of others. *Fox Associates, Inc. v. Robert Half Int'l. Inc., 334 Ill App. 3d 90, 94-95 (1st Dist. 2002)*; see also, *Lozosky v. State of Illinois, 54 Ill. Ct. Cl. 470, 474-75 (2001)*(university who provided student with insurance information was not in the business of supplying such information for the guidance of others).

Plaintiffs cite to *Congregation of the Passion v. Touche Ross & Co., 159 Ill. 2d 137 (1994)*, for the proposition that claims for negligent misrepresentation are not barred when a duty arises outside of a contract. While this is true, Plaintiffs have alleged no such extracontractual duty on the part of DePaul. No fiduciary duty or other special duty existed between Plaintiffs and DePaul.

Plaintiffs also claim that the Moorman doctrine, which bars the recovery of purely economic damages in negligence, *First Midwest Bank, 218 Ill. 2d at 337*, should not be applied where the relationship results in something intangible. But Plaintiffs received something tangible from their relationship with DePaul -- their J.D. degrees.

Plaintiffs also cite to *Olson v. Hunter's Point Homes, LLC, 2012 IL App (5th) 100506*, but that case stands for nothing more than the proposition that real estate agents are in the business **[*26]** of supplying information for the guidance of others. It does not stand for the proposition that educational institutions are in the business of supplying information for the guidance of others and no such authority exists.

Plaintiffs' c laim for negligent misrepresentation must be dismissed.

**E.** *Doe Defendants* (*§ 2-619*)

Plaintiffs have named "Does 1-20" as Defendants in this case. Plaintiffs allege that these unidentified persons are lawyers despite the apparent lack of any knowledge which would support this allegation.

Illinois does not allow a plaintiff to sue a fictitious defendant. Such suits are a legal nullity and a court lacks any subject matter jurisdiction to consider a claim against a fictitious defendant. *Bogseth v. Emanuel, 166 Ill. 2d 507, 516-17 (1995)*; *Ohio Millers Mut. Ins. Co. v. Inter-Insurance Exchange of Illinois, 367 Ill. 44, 54 (1937)*. Contrary to Plaintiffs' objections, DePaul has standing to raise the argument of lack of subject matter jurisdiction under *§ 2-619(a)(1)*. *Sherman West Court v. Arnold, 407 Ill. App. 3d 748, 750 (1st Dist. 2011)*(the issue of subject matter jurisdiction cannot be waived and can be raised by any party at any time).

Plaintiffs assert that they plan to seek leave to amend to name additional non-fictitious defendants. Plaintiffs' future intentions, however, do not render void claims non-void. Furthermore, any claims against additional defendants would fail for the same **[*27]** reasons as Plaintiffs' claims against DePaul fail. This court would not allow Plaintiffs leave to amend to state the same deficient claims against other parties. Plaintiffs inclusion of fictitious defendants does not prevent the dismissal of the entire First Amended Complaint.

### III. Conclusion

DePaul's Combined Motion to Dismiss Plaintiffs' First Amended Class Action Complaint is granted with prejudice.

States of 9-28-12 strikes.

Enter: 9-11-12

/s/ Neil H. Cohen

Judge Neil H. Cohen

**End of Document**