IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER M. GALLIGAN, | |
| Plaintiff, | Case No. 1:17-cv-06310 |
| v. | Hon. Joan H. Lefkow |
| ADTALEM GLOBAL EDUCATION INC., *et al.*, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

### Introduction

As explained in Defendants' opening brief, Plaintiff was dismissed from Ross University School of Veterinary Medicine because he failed to meet the school's academic requirements. Unhappy with this decision, Plaintiff's Second Amended Complaint raises every possible legal claim he can conjure in hopes that a few may stick beyond the pleadings stage. None of the claims "sticks." Plaintiff's response to Defendants' motion to dismiss fails to present the Court with any controlling or persuasive authority that would support his ability to pursue any of his claims. As a result, the Court should dismiss this lawsuit in its entirety, with prejudice.

First, Counts I and II -- Plaintiff's Rehabilitation Act and ADA Title III claims -- both fail as a matter of law because those American statutes do not apply outside the United States (*i.e.*, in St. Kitts, where the alleged wrongdoing occurred). Second, Counts III through VI -- Plaintiff's claims for fraudulent inducement, violation of the ICFA, negligent misrepresentation, and breach of contract -- all are

premised on non-actionable, generalized, and subjective statements about Defendants' products and services found in various promotional materials and Ross's student handbook. Third, Count VII -- Plaintiff's claim for breach of fiduciary duty -- has no basis whatsoever in any case law or other legal authority because a veterinary school owes no general fiduciary duty to its students. Fourth and finally, Counts VIII and IX -- Plaintiff's claims for civil conspiracy and alter ego -- fail because there is no underlying, actionable misconduct. All these claims should be dismissed in their entirety.

## Argument

**I. Counts I and II: Plaintiff's Rehabilitation Act and ADA Title III Arguments Ignore Supreme Court Precedent and Focus on Outdated and Unpersuasive Authority**

As discussed in Defendants' opening brief, the Supreme Court has explained that, absent clearly expressed congressional intent to the contrary, federal statutes have only domestic application. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). Because nothing suggests that Congress intended the Rehabilitation Act or ADA Title III to apply abroad, these statutes do not extend to conduct that occurred outside the United States. *See Archut v. Ross Univ. Sch. of Veterinary Medicine*, No. 10-1681, 2012 WL 5867148, *10, 12 (D.N.J. Nov. 18, 2012), aff'd, 580 F. App'x 90 (3d Cir. 2014).

Astonishingly, Plaintiff does not even attempt to distinguish the cases cited by Defendants in support of the fact that the Rehabilitation Act and ADA Title III do not apply outside the United States. He completely ignores the Supreme Court's instructions with respect to performing the extraterritoriality analysis. *See*

*Morrison*, 561 U.S. 247; *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013). He also turns a blind eye to a district court decision, affirmed by the Third Circuit, finding that the Rehabilitation Act and ADA Title III do not apply to Ross in St. Kitts. *See Archut*, 2012 WL 5867148 at *10, 12.

Instead, Plaintiff distracts the Court with immaterial allegations about Ross's "ties with the United States" and "public policy" arguments. (Response at 3-9.) In *Morrison*, the Supreme Court extensively admonished district courts for relying on these very same arguments to analyze the extraterritorial application of American statutes. *See* 561 U.S. at 255-261. They do not matter. All that matters is whether Congress has clearly expressed an affirmative intention to apply the statute abroad. Accordingly, the Court must ignore Plaintiff's anecdotes and his argument that "discovery may yield additional documentation evidencing Ross's ties to the United States." (Response at 9-10.) "Ties to the United States" is not relevant to the extraterritoriality analysis.

Plaintiff also relies on outdated and unpersuasive authority, notably failing to cite to a single decision from the post-*Morrison* era. First, Plaintiff cites to two OCR opinions involving American-based universities and their study abroad programs that contain no discussion at all about the extraterritorial reach of the statutes in question. (Response at 4-5 (citing *St. Louis Univ.* and *College of St. Scholastica*).) Those agency opinions involved American colleges with American-based administrators making decisions about accommodations *within the United*

3

*States*. Here, all the challenged activity occurred in St. Kitts.[1] Regardless, those non-binding agency opinions did not address the underlying question of extraterritoriality. Because these decisions are factually distinguishable and contain no extraterritorial analysis in any event, they are of little value to this Court's analysis. Indeed, the only time the OCR has expressly opined on the extraterritorial reach of a statute, it rejected its application. (*See* Defs.' Brief at 6 and Dkt. 19-1 (citing and attaching *Arizona State Univ.*, Case No. 08012047 (Dep't of Educ., Dec. 3, 2001).)

Second, Plaintiff cites *Bird v. Lewis & Clark College*, 104 F. Supp. 2d 1271 (D. Ore. 2000), *aff'd*, 303 F.3d 1015 (9th Cir. 2002), and *King v. Eastern Michigan University*, 221 F. Supp. 2d 783 (D. Mich. 2002). (Response at 5.) *Bird* did not address any extraterritorial dispute and contained no discussion of it at all. 104 F. Supp. 2d at 1274. On appeal, the Ninth Circuit specifically declined to reach the issue. 303 F.3d at 1021, n.1. This decision brings no persuasive authority to the extraterritoriality issue at all. In *King*, meanwhile, the court extensively relied on *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, (1949), in coming to its conclusion on extraterritoriality. *See King*, 221 F. Supp. 2d at 787. In *Foley*, the Court suggested that the extraterritoriality inquiry involved "a broader search for indications of Congressional intent, a search which has as a rule encompassed a wide range of

---

[1] Defendants are not asking the Court to find that the Rehabilitation Act or ADA Title III do not apply to Ross students when they are, for example, performing their clinical instruction in the United States. What matters in this case is that the alleged failure to accommodate Plaintiff's disabilities occurred in a foreign country, where the statutes do not apply.

4

materials beyond the plain language of the statute. This is so because, as *Foley* makes clear, the court's task is to ascertain 'unexpressed congressional intent.'" *King*, 221 F. Supp. 2d at 787 (quoting *Foley*, 336 U.S. at 285). As explained above, *Morrison* explicitly disavowed this type of analysis and criticized courts for engaging in it; neither *Foley* nor *King* survived *Morrison*. *See* 561 U.S. at 255-261.

Third, Plaintiff cites *Dean-Hines v. Ross Univ. Sch. of Veterinary Med.*, No. 05-3486, 2006 U.S. Dist. LEXIS 101375, at *7–9 (D.N.J. Aug. 10, 2006), which involved an ADA Title III claim brought by a former Ross student. (Response at 6-7.) This decision was issued four years before *Morrison* and addressed issues of selecting which state's substantive law governs a dispute, *forum non conveniens*, and contract claim preemption by the New Jersey Law Against Discrimination. *See id.* The court's full analysis of extraterritoriality was summed up in one sentence: "Because the Court has already found that New Jersey has a significant contact with the dispute, it has therefore found that the United States has a significant contact with the dispute." *Id.* at *9. Again, analyzing extraterritoriality using a "contacts" approach was thoroughly rejected by the Supreme Court in *Morrison*, 561 U.S. at 257-58 (rejecting an "effects test" and "conduct test"); thus, any reliance on the *Dean-Hines* case is misplaced. As a matter of fact, post-*Morrison*, the same court that decided *Dean-Hines* reversed course and specifically held that the

5

Rehabilitation Act and ADA Title III do not apply abroad. See *Archut*, 2012 WL 5867148 at *10, 12.[2]

Fourth, Plaintiff cites *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005), and *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1242 (11th Cir. 2000), stating that the "rationale applied by courts in cases involving foreign-flag cruise ships sailing in U.S. waters" supports his position. (Response at 7.) These pre-*Morrison* cases do not analyze extraterritoriality and do not support his position. In *Spector*, the Court analyzed the internal affairs clear statement rule, *not* extraterritoriality. 545 U.S. at 139. In *Stevens*, the Eleventh Circuit acknowledged that a foreign-flag ship sailing in United States waters is not extraterritorial in the first instance. 215 F.3d at 1242. These cases have no bearing on Plaintiff's case.

In short, Plaintiff's argument bears no relation to the analysis required by the Supreme Court in *Morrison* or to the statutory text in question or to the plainly revealing legislative history of the ADA Title III. As explained in Defendants' opening brief and this reply, (1) because nothing suggests that Congress intended the Rehabilitation Act or ADA Title III to apply outside the United States, *Morrison* precludes application of these statutes abroad; (2) the statutory language of the Rehabilitation Act goes one step further and specifically states that it applies only

---

[2] As noted in Defendant's opening brief, while reaching the correct result on extraterritoriality with respect to both the Rehabilitation Act and ADA Title III, the district court in *Archut* at times veered into irrelevant issues in its analysis by looking at factors other than the presumption against extraterritorial application and whether Congress expressed a clear intention to the contrary. As explained in Defendants' opening brief and in this reply, the extraterritoriality analysis is very straightforward, especially given the text of the Rehabilitation Act and the legislative history of ADA Title III.

6

to "individual[s] with a disability in the United States," see 29 U.S.C. § 794; and (3) legislative history reveals that while ADA Title I was amended to apply abroad after the *Aramco* decision, ADA Title III conspicuously was not. For all these reasons, the Rehabilitation Act and ADA Title III do not apply in St. Kitts, and the Court should dismiss Counts I and II with prejudice.

## II. Counts III through V: Plaintiff Fails To Rebut Defendants' Arguments That Certain Statements Were Nothing More Than Mere Puffery

Plaintiff admits that relying on a statement of "puffery" is not actionable under theories of fraudulent inducement, the IFCA, or negligent misrepresentation. (Response at 14-16.) That said, he claims the following statements are more than mere puffing because they purportedly disclose specific facts about the experience students can expect to receive at Ross (*id.* at 15.): "abundant amount of support and encouragement"; "supportive, friendly, available, wonderful" faculty; "exceptional service to students . . . delivered with integrity and accountability"; treated as a "family member"; "one-on-one care"; faculty there to "help to achieve [their goals]"; "It is RUSVM's policy to provide an environment free of unlawful harassment or discrimination"; and "RUSVM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations." (*See* Response at 15, 16; SAC ¶¶ 46, 65-66.)

Plaintiff's position on this issue is not only inconsistent with relevant case law but also lacks common sense. These types of statements are exactly the types of non-actionable puffery described in *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73 (2007), and similar case law. All the above statements "involve[] expressing

7

opinions, not asserting something as fact." *See id.* They are "vague and ambiguous promises" *not* "factual and specific" promises. *See United States v. Burns*, 843 F.3d 679, 684 (7th Cir. 2016); *see also XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.*, 214 F.Supp.3d 179, 184 (E.D.N.Y. Oct. 6, 2016) (statements couched in aspirational terms—"committed to," "aim to," "believe deeply"—cannot be proven true or false and therefore fall within the accepted definitions of puffery); *Evanston Hosp. v. Crane*, 254 Ill.App.3d 435, 627 N.E.2d 29 (1993) (statements that hospital would provide "high quality" care to patients were expressions of opinion or "puffing").

Plaintiff's citation to *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 762 N.E.2d 1, 7 (Ill. App. Ct. 1st Dist. 2001), and *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013), are inapposite. In *Miller*, the Court concluded that describing a used car as "executive driven" could be interpreted as a "factual description of a car's history." 326 Ill. App. 3d at 649. The Court compared the description of "executive driven," which it concluded was *not* puffery, to descriptions like "expert workmanship" and "magnificent," which *is* puffery. *Id.* Defendants' alleged statements of "exceptional service" and "wonderful" staff are more akin to what *Miller* found to be puffery because they do not contain any factually verifiable description of services. Similarly, the Court in *Muir* found that the statement "Proven #1 in Odor Control" was not puffery because it was quantifiable. 983 F. Supp. 2d at 989-90.

8

None of the alleged statements attributed to Ross in the Second Amended Complaint is objective or quantifiable in any way. They are all vague and undefined assertions that constitute nothing more than "empty superlatives" upon which no reasonable person would rely. *See Burns*, 843 F.3d at 684 (citing Black's Law Dictionary 1269 (8th ed. 2004)) ("'Puffing' is '[t]he expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service.'"). Similarly, statements such as "RUSVM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations" is also puffery because the school's level of "commitment" cannot be proven true or false. *See XYZ Two Way Radio Service, Inc.*, 214 F. Supp. 3d at 184. Finally, statements that an entity will follow its anti-discrimination or anti-retaliation policies are also considered puffery. *See Bernstein v. Extendicare Health Service, Inc.*, 607 F.Supp.2d 1027, 1032 (D. Minn. 2009) (restatements of existing legal obligations imposed by federal and state statutes and regulations are puffery because they do not make any specific promise). Plaintiff does nothing to distinguish or otherwise rebut these well-established lines of authority.

Consequently, the Court should find that all the alleged statements in connection with Plaintiff's claims for fraudulent inducement, violation of the ICFA, and negligent misrepresentation are mere puffery and should dismiss Counts III through V with prejudice.

### III. Count IV: Despite Plaintiff's Attempt To Slant Allegations in His Favor, the Only Connection To Illinois Is ATGE's Principal Place of Business

Even if the Court finds that Defendants' statements were more than mere puffery (which it should not), Plaintiff's ICFA claim still should be dismissed because the alleged conduct does not have a substantial connection to Illinois. Plaintiff acknowledges that, to bring a claim under the ICFA, he must allege more than just the fact that Defendants' headquarters are located in Illinois. (*See* Response at 12.) Rather, he must sufficiently allege that Defendants' alleged conduct occurred "primarily and substantially in Illinois." (*Id.*) Other than alleging that Ross's corporate parents have principal places of businesses in Illinois, Plaintiff's rely *only* on written statements from Daniel Hamburger, located on DeVry's website, and from Audrey Kaplan, none of which he purports to have originated in Illinois, to support his argument that the alleged IFCA conduct "primarily and substantially" occurred in Illinois. (*Id.; see also* SAC ¶¶ 26, 50-51.) *C.f. IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*, 191 F. Supp. 3d 790, 808 (N.D. Ill. 2016). Besides which, any emails sent by Kaplan have no relation to Plaintiff's IFCA claim because they do not involve any alleged misrepresentations; rather, they are about Plaintiff's ability to appeal Ross's decision to dismiss him from the school. *See* SAC ¶¶ 50-51. For these additional reasons, Plaintiff's IFCA claim should be dismissed.

10

IV.   Count VI: Plaintiff's Cited Legal Authority Actually Supports Defendants' Position That General Student Handbook Statements on Anti-Discrimination and Accommodation Policies Are Not Actionable Under a Breach of Contract Theory

Although Plaintiff attempts to distinguish a number of cases Defendants cite in their brief, notably absent is any rebuttal to Defendant's main argument that student handbooks stating general anti-discrimination and anti-retaliation policies are merely general references of adherence to existing law and are not independent contractual obligations. *See, e.g., Harris v. Adler School of Professional Psychology*, 209 Ill. App. 3d 856, 862, 723 N.E.2d 717 (1st Dist. 1999) ("The promise to do something one already is already legally obligated to do is not consideration, and no new obligation is thereby created."); *DeliverMed Holdings, LLC v. Schaltenbrand*, No. 10-cv-684, 2012 WL 13028117, at *14 (S.D. Ill. Oct. 15, 2012) (internal citation omitted) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment.").

Instead, Plaintiff cites *O'Driscoll v. Argosy University*, No. 12 C 10164, 2014 WL 714023, at *3 (N.D. Ill. Feb. 25, 2014), which involved a claim for breach of contract based on defined provision in a university's academic catalogue that specifically prohibited displaying sexually suggestive materials. This sort of "agreement," which is objective and quantifiable and not already prohibited by law (in these broad terms), and is distinguishable from the generalized handbook statements regarding Ross's "commitment to non-discrimination and equal opportunity," its "commit[ment] to ensuring that qualified students with disabilities are afforded reasonable accommodations," and that its counseling center "is

11

available to provide support and assistance to Ross students in maximizing their success while at Ross." (*See* Response at 23.) It thus fails to provide persuasive authority in this case.

Plaintiff also cites *Liu v. Northwestern University*, 78 F. Supp. 3d 839, 846 (N.D. Ill. 2015), which, in reality, supports Defendants' position that the Ross student handbook does not provide Plaintiff with any enforceable right on which to sue. *Liu* involved two separate claims for breach of contract based on two separate provisions in a student handbook, one of which was definite and quantifiable and the other of which was not. *See id.* (alleging breach of contract by failing to afford her with due process procedures set forth in the student handbook and by failing to promptly investigate a discrimination grievance). The Court concluded that the plaintiff's claim for breach of the due process procedures could proceed. *Id.* at 847. More analogous to this case, the Court simultaneously dismissed the plaintiff's claim for breach of the "prompt-investigation" provision because that provision did not provide the plaintiff "with an enforceable right on which to sue, for it does not set forth a definite standard by which [the university] agreed to abide but rather only sets forth [the university's] intention to complete its investigations in an expeditious manner." *Id.* at 848.

Again, the alleged provisions on which Plaintiff relies do not set forth any definite standards by which Ross agreed to abide, but rather state the school's intention to comply with general anti-discrimination and accommodation standards, a non-quantifiable and non-actionable statement. As explained in *Liu*, these

12

provisions do not create an enforceable right, so Count VI, Plaintiff's claim for breach of contract, should be dismissed with prejudice.

### V. Count VII: Plaintiff' Fails To Cite a Single Case Supporting His Breach of Fiduciary Duty Claim.

Plaintiff argues that "whether a fiduciary duty exists between a university and its students has not been decided by the Seventh Circuit." (Response at 25.) Plaintiff, however, fails to cite any authority whatsoever that would support a conclusion that a fiduciary relationship exists between a university and its students. (*See id.* at 25-27.) Instead, Plaintiff again focuses on the non-actionable statements described above that amount to pure puffery and argues that somehow Defendants exercised some kind of "overwhelming influence" on Plaintiff such that it gave rise to a fiduciary relationship. (*Id.* at 26.) These arguments are baseless and unsupported by any legal authority. On the contrary, case law cited by Defendants supports the conclusion that no fiduciary relationship exists between Defendants and Plaintiff. *See Phillips v. DePaul Univ.*, No. 12 CH 3523, 2012 Ill. Cir. LEXIS 3299, *10 (Cir. Ct. Cook Cty. Sept. 11, 2012); *Moy v. Adelphi Inst. Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994); *Ohio Univ. Bd. of Trustees v. Smith*, 724 N.E.2d 1155, 1160 (Ohio App. Ct. 1999); *Maas v. Corp. of Gonzaga Univ.*, 618 P.2d 106, 108 (Wash. Ct. App. 1980). The Court should not fundamentally alter the law by creating a new fiduciary relationship between universities and students out of whole cloth. Count VII should be dismissed.

**VI. Counts VIII and IX: Because Plaintiff's Other Claims Fail, So Do His Claims for Civil Conspiracy and Alter Ego.**

As stated in Defendants' opening brief and left unrebutted by Plaintiff, claims for civil conspiracy and alter ego fail if the underlying causes of action fail. *See Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. Ct. 1st Dist. 2013). For the reasons fully discussed in Defendants' opening brief and above, all the underlying claims brought by Plaintiff fail as a matter of law; therefore, his claims for civil conspiracy and alter ego also fail.

### Conclusion

For all the reasons set forth in Defendant's opening brief and in this reply, Defendants respectfully submit that Plaintiff's lawsuit should be dismissed in its entirety.

| | |
|---|---|
| **DATED: May 25, 2018** | Respectfully submitted, |
| | ADTALEM GLOBAL EDUCATION INC.; ADTALEM GLOBAL HEALTH, INC.; ROSS UNIVERSITY SCHOOL OF MEDICINE SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LIMITED |
| | By: *s/Brian Stolzenbach* |

Brian Stolzenbach
bstolzenbach@seyfarth.com
Megan E. Troy
mtroy@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## CERTIFICATE OF SERVICE

    I do hereby certify that I have caused a true and correct copy of the foregoing by filing a copy with the Court's CM/ECF system, which will send notification to the following, on this 25th day of May, 2018:

>Michael W. Ford, Esq.
>Law Offices of Michael W. Ford
>4 Timberwood Lane
>Riverwoods, IL 60015
>mfordski@aol.com
>
>Emil T. Bayko
>Ali Henderson
>Porter Hedges LLP
>1000 Main Street, 36th Floor
>Houston, Texas 77002
>tbayko@porterhedges.com

                                                 *s/Brian Stolzenbach*

46290428v.2