IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETER M. GALLIGAN,

Plaintiff,

v.

ADTALEM GLOBAL EDUCATION INC., et al.,

Defendants

Case No. 1:17-cv-06310
Hon. Joan H. Lefkow

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Brian Stolzenbach
bstolzenbach@seyfarth.com
Megan E. Troy
mtroy@seyfarth.com
Thomas M. Horan
thoran@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

April 8, 2019

## Introduction

Defendants Adtalem Global Education Inc. (ATGE), Adtalem Global Health, Inc. (AGH), and Ross University School of Medicine School of Veterinary Medicine (St. Kitts) Limited (Ross or RUSVM) respectfully submit this memorandum of law in support of their motion to dismiss all the claims in Plaintiff Peter Galligan's Third Amended Complaint, except for Plaintiff's breach of contract claim alleging that Ross "breached the disability accommodation and anti-retaliation provisions of the student handbook." (ECF No. 48 at 14.)

As the Court knows, this case involves a student who was dismissed from Ross University School of Veterinary Medicine for poor academic performance—specifically, he failed four different classes. (ECF No. 38 ¶¶ 35, 51.) He claims [1] that he was duped into applying to Ross in the first place by alleged misrepresentations found on Ross's website and in its Student Handbook and [2] that his dismissal from school was both a breach of fiduciary duty and a breach of contract. In a previous opinion and order, the Court dismissed most of Plaintiff's legal claims while holding that he stated a cognizable claim for breach of contract by alleging that Ross "breached the disability accommodation and anti-retaliation provisions of the student handbook." (ECF No. 48 at 14.) He has now filed a Third Amended Complaint, seeking to revitalize some of his previously-dismissed claims and seeking to expand his breach of contract claim. The Court should reject this attempt and should dismiss every legal claim asserted against Ross in the Third Amended Complaint, except for the narrow breach of contract claim mentioned above, while also dismissing Defendants ATGE and AGH from the case altogether.

He has not alleged any other cognizable claims against Ross or any cognizable claims against ATGE or AGH at all.

## Factual Background

### I. The Defendant Entities

Defendant Ross is a graduate school of veterinary medicine with its academic campus located in the island nation of Saint Christopher and Nevis (commonly known as "St. Kitts"). (ECF No. 57 ¶¶ 9, 20.) Defendant ATGE is Ross's ultimate parent company, a publicly-traded Delaware corporation with its headquarters in Illinois. (*Id.* ¶ 7; *see also* ATGE's Form 10-K at Section 5: EX-21, linked by Plaintiff to ECF No. 57 at 6 n.2.) Defendant AGH is an intermediate subsidiary between ATGE and Ross, organized under the laws of New York. (ECF No. 57 ¶ 8, *see also* ATGE's Form 10-K at Section 5: EX-21, linked by Plaintiff to ECF No. 57 at 6 n.2.)

### II. Plaintiff's Dismissal from Ross

Plaintiff matriculated to Ross in May 2013. (ECF No. 57 ¶ 1.) He was dismissed from school after failing three classes during his second semester. (*Id.* ¶ 35; *see also* Ex. A, readmission letter.[1]) Plaintiff appealed his dismissal and was reinstated by the Academic Review Committee by letter dated January 8, 2014, on the condition

---

[1] Portions of the readmission letter are quoted by Plaintiff in Paragraph 36 of the Third Amended Complaint. (*Compare* Ex. A *with* ECF No. 57 ¶ 36.) Accordingly, the full letter may be considered by the Court in conjunction with Defendants' motion under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a Rule 12(b)(6) motion to dismiss, court may consider the complaint, documents incorporated into the complaint by reference, matters of which a court may take judicial notice, and exhibits attached to the complaint); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

that "any future grade of 'F' will result in dismissal without the right to appeal." (ECF No. 57 ¶ 36; *see also* Ex. A.)

During the May 2015 semester (his fifth semester at Ross), Plaintiff failed another class and was dismissed from school once again. (ECF No. 57 ¶¶ 51, 54.) Specifically, the University Registrar sent him a letter on August 18, 2015, informing him that he was dismissed from school in accordance with Section 2.9 of the May 2015 Student Handbook, which states that a student may be dismissed from school for "failure to maintain satisfactory academic progress," including by "[r]eceiving three F or WF grades during the pre-clinical program (semester 1-7)." (Ex. B, dismissal letter; Ex. C, May 2015 Student Handbook.[2])

## Governing Legal Standard

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations that merely create a suspicion of a cognizable right of action are insufficient. *Twombly*, 550 U.S. at 555.

---

[2] The dismissal letter and May 2015 Student Handbook may be considered under Rule 12(b)(6) because Plaintiff references the letter in the Third Amended Complaint, (*see* ECF No. 57 ¶ 54), and both the handbook and the dismissal letter are central to Plaintiff's breach of contract claim. *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (documents referred to in complaint can be considered); *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 n.4 (7th Cir. 2003) (contracts central to breach of contract claim can be considered).

3

Argument

I.     Plaintiff Fails To State a Plausible Claim of Fraudulent Inducement or Negligent Misrepresentation.

In the Third Amended Complaint, Plaintiff alleges that Ross engaged in fraudulent inducement or, in the alternative, negligent misrepresentation. The alleged misrepresentations in both instances consist of (1) an excerpt from the "Strategic Vision" articulated on Ross's website and (2) certain provisions contained Ross's Student Handbook. (ECF No. 57 ¶¶ 69-70, 72, 74.) Because Plaintiff has failed to sufficiently plead a claim for fraudulent inducement or negligent misrepresentation, both claims (Counts I and II in the Third Amended Complaint) should be dismissed in their entirety.

A.     As a Matter of Law, Plaintiff Cannot Pursue a Misrepresentation Claim Based on Ross's Strategic Vision Statement.

Plaintiff claims that he read Ross's online "Strategic Vision" statement before he enrolled at the school. (*Id.* ¶¶ 25-26.) Specifically, he alleges that he enrolled in reliance on the following excerpts from a single sentence within the Strategic Vision statement: "[i]ncrease total student numbers via reduced attrition . . . by increasing the quantity of quality student applicants, resulting in an increased completion rate." (*Id.*) Plaintiff characterizes the Strategic Vision statement as having "underscored [Ross's] effort" to increase its total student numbers in this manner.[3]

---

[3] Plaintiff claims to possess a copy of the full Strategic Vision statement in his records, (ECF No. 57 at p.9, n.4), but he does not quote the full statement (or even the entirety of the allegedly relevant sentence in the statement). Nor does he attach it so the Court can review the full statement, rather than attempting to assess the plausibility of Plaintiff's legal claim based on sentence fragments and his own characterization of their context. Defendants suspect that the copy of the Strategic Vision statement maintained in Plaintiff's records was obtained from a website called the "Wayback Machine" and is therefore dated no earlier than 2014 (well after he matriculated to Ross). *See*

4

(*Id.*) The sentence fragments Plaintiff quotes from the Strategic Vision statement cannot, as a matter of law, form the basis of a cognizable misrepresentation claim.

As an initial matter, Plaintiff cannot state a valid claim for misrepresentation based on a statement of intent concerning future conduct. *See Illinois Non-Profit Risk Mgmt. Ass'n v. Human Service Center of S. Metro-East*, 378 Ill. App. 3d 713, 723, 318 Ill. Dec. 732, 884 N.E.2d 700 (2008) ("Statements concerning future intent or conduct are not actionable as fraud.") (citing *Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269, 271, 173 Ill.Dec. 746, 597 N.E.2d 720, 722 (1992)); *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 25, 396 Ill. Dec. 611, 620, 40 N.E.3d 264, 274 (dismissing claim for negligent misrepresentation, finding that "projections of future performance are generally not actionable as false statements"). The Strategic Vision is exactly that, a statement concerning Ross's future intent. The Strategic Vision statement asserts that Ross will try to reduce its student attrition rate by increasing the number of quality applicants in its applicant pool. Both of Plaintiff's misrepresentation claims premised on the Strategic Vision statement should be dismissed on this basis alone.

In any event, Plaintiff does not allege that the Strategic Vision statement was false, and his misrepresentation claims should be dismissed for that additional reason. *See Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17, 210 Ill. Dec. 773, 653 N.E.2d 968 (1995) (fraudulent inducement claim requires proof of a false statement,

---

https://web.archive.org/web/20140105152700/ www.rossu.edu/veterinary-school/StrategicPlan.cfm, last accessed April 1, 2019. Nevertheless, Defendants assume for the sake of this motion that Plaintiff actually read the quoted sentence fragments before he enrolled, as he alleges in the Third Amended Complaint.

5

known or believed to be false by the person making it, as well as damage resulting from reliance on that false statement); *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 137 Ill. Dec. 635, 546 N.E.2d 580 (1989) (negligent misrepresentation consists of the same elements, except the defendant need not know the statement is false; rather, the defendant's own carelessness or negligence in ascertaining the truth of the statement will suffice). Again, the alleged misrepresentation in the Strategic Vision statement asserts that Ross will attempt to increase the number of quality applicants in its applicant pool. Plaintiff does not allege in his complaint that Ross never actually made such an attempt. Instead, he simply alleges that he eventually was dismissed from school. His individual experience at Ross in this regard has no plausible bearing on the truth or falsity of Ross's Strategic Vision statement, which articulated an overall plan to improve the quality of its applicant pool.

Simply put, the Court should not permit Plaintiff to proceed with his misrepresentation claims based on the Strategic Vision statement. Those claims fail as a matter of law.

### B. Plaintiff Cannot Pursue a Misrepresentation Claim Based on Ross's Student Handbook.

In addition to the Strategic Vision statement, Plaintiff also claims that he was misled into enrolling at Ross by the following five statements allegedly found in the Student Handbook:

- "It is RUSVM's policy to provide an environment free of unlawful harassment or discrimination based on ... disability[.]";

6

- "RUSVM complies with all applicable laws regarding discrimination, harassment, retaliation and equal opportunity . . . .";

- "RUSVM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodation . . . .";

- "The mental and emotional stability of students is a primary concern of RUSVM . . . ."; and

- "It is an offense for any candidate to make use of unfair means in any RUSVM assessment, to assist a candidate to make use of such unfair means, [or] to do anything prejudicial to the good conduct of the assessment. . . . Receipt of transmission of unauthorized aid on assignments or examinations, . . . unauthorized and/or improper use of examination materials, or other forms of dishonesty in academic fairs are also considered as academic misconduct."

(ECF No. 57 ¶ 70.) This claim, too, should be dismissed.

As an initial matter, Plaintiff cites the <u>2017</u> Student Handbook as support for his misrepresentation allegations. (*Id.* at p.21, n.12.) Plaintiff, however, applied to Ross in July 2012, (*id.* ¶ 26), matriculated in May 2013, (*id.* ¶ 2), and was dismissed in August 2015, (Ex. B), two years before the date of 2017 Student Handbook. Based on timing alone, it is impossible that Plaintiff relied on any statements found in the 2017 Student Handbook. Consequently, he cannot pursue a misrepresentation claim based on such statements. *See Lagen*, 274 Ill. App. 3d at 17; *A, C & S, Inc.*, 131 Ill. 2d at 452. (*See also* ECF No. 48, dismissing various misrepresentation claims in Plaintiff's Second Amended Complaint because he did not plead that he read the alleged misrepresentations before enrolling at Ross.)

In fact, the Student Handbook in effect when Plaintiff matriculated does not contain the first, second, or fifth bulleted statements he identifies in his complaint as alleged misrepresentations. (*Compare* ECF No. 57 ¶ 70 *with* Ex. D, January 2013

7

Student Handbook.4) Accordingly, he cannot proceed with his misrepresentation claims based on those alleged misrepresentations.

This leaves just two alleged misrepresentations remaining (the third and fourth bulleted statements in Paragraph 70 of the Third Amended Complaint). Those two statements cannot form the basis of a valid misrepresentation claim as a matter of law. The third bullet point, which states, "RUSVM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations," (Ex. D § 1.7.), is not actionable as a misrepresentation because it is merely another statement of Ross's intended future conduct. *See Illinois Non-Profit Risk Mgmt. Ass'n*, 378 Ill. App. 3d at 723; *Abazari*, 40 N.E.3d 264, 274. The fourth bullet point, which states that "[t]he mental and emotional stability of students is a primary concern of RUSVM," is also not actionable. This is mere "puffing," which the courts have long rejected as a basis for misrepresentation claims. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). (*See also* ECF No. 48 at p.9, explaining that a statement may be puffing if it is open to multiple, subjective determinations.)

Furthermore, if the Court compares the latter statement (the fourth bullet point) in its full context to the facts alleged in Plaintiff's own complaint, it will find that even Plaintiff admits that Ross did exactly what the Student Handbook said it would do. The Student Handbook reads as follows:

> The mental and emotional stability of students is a primary concern of RUSVM. If RUSVM has reason to believe that a student is suffering

---

4 The January 2013 Student Handbook may be considered under Rule 12(b)(6) because it is central to Plaintiff's misrepresentations claims. *See Chemetall GMBH*, 320 F.3d at 718 n.4.

8

> from serious mental or emotional distress . . . the student will be encouraged to take a medical leave of absence . . . . The student will be allowed to return to campus after RUSVM has received medical/ psychological documentation that . . . states that the student is capable of engaging fully in the academic program, and supports without reservation the student's return to campus.

(Ex. D § 1.8.) This is exactly what Ross did for Plaintiff, as described in his own complaint and the readmission letter he quotes in that complaint. (ECF No. 57 ¶ 36; *see also* Ex. A.) After he failed three classes and was dismissed from school, it allowed him to return after granting him a medical leave of absence. (*Id.*) **In other words, there was no false statement in the Student Handbook.** The handbook said something would happen, and it did. In this regard, Plaintiff has failed to plead a necessary element of his misrepresentation claim—a false statement of material fact. *See Lagen*, 274 Ill. App. 3d at 17; *Board of Education*, 131 Ill. 2d at 452.

For all the foregoing reasons, Plaintiff's misrepresentation claims should be dismissed in their entirety and with prejudice because he fails to state a cognizable claim on the face of his complaint.

## II. The Court Should Not Allow the Plaintiff To Expand His Contract Claim.

Plaintiff claims that Ross breached a contract (namely, the Student Handbook) in four ways: (1) by dismissing him for failing a fourth class, contrary to his personal view of the academic probation provisions in the Student Handbook, (ECF No. 57 ¶ 77); (2) by failing to accommodate his alleged disability and retaliating against him for requesting accommodations, (*id.* ¶¶ 78-79); (3) by violating certain AVMA policies, (*id.* ¶ 81); and (4) by allegedly failing to punish other students for cheating on an examination in the final class that Plaintiff failed, (*id.* ¶ 80). The

9

Court has already held that Plaintiff may pursue a breach of contract claim based on the alleged failure to accommodate his purported disability and the alleged retaliation for requesting accommodation. The Court, however, also has already held that he may <u>not</u> pursue a contractual claim based on AVMA policies or seek the Court's review of the school's decision to dismiss him on academic grounds, based on a dispute over the proper interpretation of academic probation. (ECF No. 48 at 13-14.[5]) This leaves for resolution only Plaintiff's newly raised claim that Ross failed to police cheating by other students. That theory, too, should be rejected as a matter of law.

Plaintiff alleges that Ross violated its own academic misconduct policies by "failing to safeguard exams, prohibiting professors from repeating test questions, and refusing to shut down student test banks or to discipline students from using them." (ECF No. 57 ¶ 80.) Plaintiff alleges that he failed Dr. Kelly's exam only because he did not cheat while others did. (*See id.* ¶ 54: "Unlike the vast majority of his classmates, Galligan . . . did not cheat on Dr. Kelly's exam. However, as an unfortunate by-product of his strong moral compass, Galligan did not pass Small Animal Medicine 1, missing a passing grade of 70% by only two points, or two questions. Ross Administration dismissed Galligan from its [ ] program ostensibly because of his "failure" to pass the class.")

---

[5] Indeed, on the latter issue the 2015 Student Handbook specifically states that a student may be dismissed for failing just three classes during the first seven semesters. (Ex. D. § 2.9.) Plaintiff admits that he failed not just three, but four classes. The 2015 Student Handbook further states that a student may be dismissed for failing to satisfy the conditions of an Academic Warning letter. (*Id.*) Plaintiff's January 2014 letter allowing him to return to school explicitly conditioned his reinstatement on not failing a fourth class. (Ex. A.) Again, Plaintiff admits that he did fail a fourth class.

As with his dispute over the proper meaning of academic probation, Plaintiff cannot proceed on this theory because it is not reviewable under the Court's arbitrary and capricious review standard for academic dismissals. For example, in *Cosio v. Medical College of Wisconsin, Inc.*, 139 Wis. 2d 241, 246, 407 N.W.2d 302, 305 (Wis. App. 1987), the Medical College of Wisconsin ("MCW") dismissed the plaintiff for unsatisfactory academic performance. The plaintiff alleged that his dismissal was arbitrary because MCW tolerated widespread cheating on examinations and, while it dismissed him, it permitted others, who engaged in cheating, to graduate. *Id.* The court rejected this argument: "The test for arbitrary or capricious dismissal is whether the dismissal is based on sufficient reasons; if a school has sufficient reasons for dismissal, . . . the court will not interfere." *Id.* at 247. Here, Plaintiff acknowledges that he failed four classes and was dismissed for academic reasons. (ECF No. 57 ¶¶ 51-54; *see also* Ex. B.) Plaintiff is once again asking the Court to oversee an academic decision, but there is no plausible argument that a decision to dismiss a student for failing four classes (when its own Student Handbook provides for dismissal after three, and the student was warned not to fail another) is somehow arbitrary or capricious, regardless of what other students were doing.

The Court should bar Plaintiff's breach of contract claim to the extent he bases it on anything other than the allegation that he was denied disability accommodations or experienced retaliation for requesting accommodations, in violation of specific provisions in the Student Handbook to the contrary.

11

### III. Plaintiff Does Not Plausibly Allege a Fiduciary Relationship Between the Parties; Therefore, He Has No Claim for Breach of Fiduciary Duty.

As the Court has already held, the "professional school/student" relationship does not create a fiduciary relationship as a matter of law, and "special circumstances" must exist to give rise to a fiduciary duty. (ECF No. 48 at 14.) "To determine if special circumstances exist, courts consider the degree of kinship between the parties; the disparity in age, health, mental condition, education, and business experience between the parties; and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006). Plaintiff attempts to evade the rule that there is no fiduciary relationship between a professional school and its students by essentially parroting the foregoing list of items set forth in *Autotech*, noting that he was 25 years of age at the time he applied to Ross, had virtually no business experience at the time, and had an alleged learning disability (severe test anxiety) whereas Ross had many years' experience running a for-profit school and was in a "dominant" position as the provider of his education. (ECF No. 57 ¶¶ 2, 86.) These circumstances are by no means "special." This describes the relationship between every college, graduate school, or professional school and virtually all their students who experience a learning disability. Save for the learning disability, it describes the relationship between every college, graduate school, or professional school and virtually *all* their students. Allowing Plaintiff to proceed with his breach of fiduciary duty claim would effectively mean that every college, graduate school, and professional school in

12

America has a fiduciary relationship with its learning disabled students and would reverse the Court's prior holding that no such relationship exists as a matter of law. Plaintiff's fiduciary duty claim should be dismissed in its entirety and with prejudice.

## IV. Plaintiff's Alter Ego Claim Fails as a Matter of Law.

"Piercing the corporate veil is not favored and in general, courts are reluctant to do so . . . Accordingly, the party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a 'dummy or sham' for another person or entity." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 378-79 (7th Cir. 2008); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (disregard of the corporate entity is appropriate only in exceptional circumstances); *Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.*, No. 10-4754, 2011 WL 4056306, *5 (S.D.N.Y. Sep. 13, 2011) (veil piercing is appropriate only in "extraordinary circumstances").[6] In other words, a corporation's veil may be pierced only when there is "such a unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist and when adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson*, 529 F.3d at 378-79; *see also Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (to pierce corporate veil under Delaware law, plaintiff must establish that separate corporations acted as a single economic

---

[6] When seeking to establish one corporate defendant's liability for another corporate defendant's actions, Illinois's choice of law rule for veil-piercing is that "the law of the state of incorporation governs such claims." *Judson*, 529 F.3d at 378-79.

13

entity and that "an overall element of injustice or unfairness is present."); *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) ("[U]nder New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.") (citations omitted). "The requisite element of fraud . . . must come from an inequitable use of the corporate form itself as a sham, and not from [Plaintiff's] underlying claim." *Marvani*, 900 F. Supp. 2d at 392; *see also In re Digital Music Antitrust Litigation*, 812 F.Supp.2d 390, 418 (S.D.N.Y. 2011) (a showing that a fraud would be "perpetrated through misuse of the corporate form" generally is required in both Delaware and New York). Here, Plaintiff has not come close to alleging facts that plausibly suggest the three Defendants are alter egos of one another.

In this regard, courts look to the following factors to determine whether there is sufficient unity of interest to justify disregarding the corporate form: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) comingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant

14

shareholders. *See Judson*, 529 F.3d at 379; *Trevino*, 583 F. Supp. 2d at 528-29; *see also Mag Portfolio*, 268 F.3d at 63 (applying similar factors under New York law).

Plaintiff addresses none of this. Instead, he recites legal conclusions, (ECF 57 ¶ 90), and characterizes a few statements from ATGE's 2016 SEC Form 10-K (found here: https://investors.adtalem.com/file/4183694/Index?KeyFile=1001216405), (ECF 57 ¶ 91). The 10-K reflects nothing more or less than an ordinary parent-subsidiary relationship and provides no plausible evidence of any of the aforementioned 11 factors used by the courts to find alter ego status.

There is, in short, no basis for permitting Plaintiff to maintain this lawsuit against ATGE or AGH. His claim is against Ross for breach of its Student Handbook based on an alleged failure to accommodate a disability and retaliation for requesting the same.

## Conclusion

For the reasons set forth herein, Defendants respectfully submit that Plaintiff's lawsuit should be dismissed in its entirety and with prejudice, with the exception that Plaintiff be allowed to proceed only on the theory that Ross breached the disability accommodation and anti-retaliation provisions in its Student Handbook. Defendants ATGE and AGH should also be dismissed from the lawsuit because the remaining limited breach of contract claim is against Ross only.

Respectfully submitted,

ADTALEM GLOBAL EDUCATION INC., et al.

By: *s/Brian Stolzenbach*

15

## CERTIFICATE OF SERVICE

I do hereby certify that I have caused a true and correct copy of the foregoing by filing a copy with the Court's CM/ECF system, which will send notification to the following, on this 8th day of April, 2019:

>Michael W. Ford, Esq.
>Law Offices of Michael W. Ford
>4 Timberwood Lane
>Riverwoods, IL 60015
>
>Emil T. Bayko
>Alison P. Henderson
>Porter Hedges LLP
>1000 Main Street, 36th Floor
>Houston, Texas 77002

*s/Brian Stolzenbach*