IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER M. GALLIGAN, | |
| Plaintiff, | Case No. 1:17-cv-06310 |
| v. | Hon. Joan H. Lefkow |
| ADTALEM GLOBAL EDUCATION INC., *et al.*, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

Introduction .................................................................................................... 1

Argument ......................................................................................................... 2

I.    Counts I And II: Plaintiff's Fraudulent Inducement And Negligent
      Misrepresentation Claims Fail As A Matter Of Law And Cannot Proceed
      Beyond The Pleadings Stage. ................................................................. 2

      A.    Plaintiff's Fraudulent Inducement And Negligent Misrepresentation
            Claims Based On The Strategic Vision Statement Fail As A Matter Of
            Law.................................................................................................... 3

            i.    Plaintiff's Own Exhibit Confirms He Did Not Review The
                  Statement Until 2015. ................................................................ 3

            ii.   Regardless, Plaintiff's Arguments As To Why The Strategic
                  Vision Statement Involves "Present Time" Actions Are
                  Unpersuasive. ............................................................................. 4

      B.    Plaintiff's Fraudulent Inducement And Negligent Misrepresentation
            Claims Based On The 2017 Student Handbook Also Fail As A Matter
            Of Law.............................................................................................. 7

            i.    Plaintiff Concedes His TAC Relies On A Student Handbook That
                  Was Not In Effect In 2013. ........................................................ 7

            ii.   Regardless, The 2013 Handbook Does Not Contain Fraudulent
                  Statements. ................................................................................. 8

II.   Count III: Other Than The Narrow Breach of Contract Claim Allowed To
      Proceed, Plaintiff Has Failed To Establish Any Other Cognizable Breach of
      Contract Claim.......................................................................................... 10

      A.    The Court Has Only Allowed Plaintiff's Breach Of Contract Claim To
            Proceed Based The Student Handbook's Disability Accommodations
            And Anti-Retaliation Provisions........................................................ 10

      B.    Plaintiff's Attempt To Resurrect A Breach Of Contract Claim Based On
            AVMA Policies Should Be Rejected Because The Court Has Already
            Dismissed This Claim And Plaintiff Fails To Allege An Underlying
            Contract. ........................................................................................... 10

C. Plaintiff's Attempt To Resurrect A Breach Of Contract Claim Based On The Student Handbook's Academic Probation Provision Should Also Be Rejected Because The Court Has Already Dismissed This Claim And It Is Not Reviewable Under The Court's Arbitrary And Capricious Review Standard For Academic Dismissals............................................ 11

D. Plaintiff's Breach of Contract Claim Based On The Student Handbook's Academic Misconduct And Honor Code Provisions Is Also Not Reviewable Under The Court's Arbitrary And Capricious Review Standard For Academic Dismissals........................................................ 12

III. Count IV: Plaintiff's Cited Legal Authority Confirms He Has Failed To Plead "Special Circumstances" To Warrant A Finding Of A Fiduciary Relationship. ......................................................................................................... 14

IV. Count V: Plaintiff's Cited Legal Authority Confirms He Has Also Failed To Plead A Cognizable Alter Ego Claim............................................... 17

Conclusion.................................................................................................... 20

57431499v.4

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abazari v. Rosalind Franklin University of Medicine & Science*,
  2015 IL App (2d) 140952, 396 Ill. Dec. 611, 40 N.E.3d 264 ................................... 5

*Aniero Concrete Co., Inc. v. New York City Constr. Auth.*,
  No. 94 Civ. 3506, 2000 WL 863208 (S.D.N.Y. June 27, 2000) ............................... 7

*Ault v. C.C. Services, Inc.*,
  232 Ill.App.3d 269, 173 Ill.Dec. 746, 597 N.E.2d 720 (1992) ................................. 5

*Bird v. Lewis & Clark College*,
  104 F. Supp. 2d 1271 (D. Or. 2000) ................................................................. 14, 15

*Board of Education of City of Chicago v. A, C & S, Inc.*,
  131 Ill. 2d 428, 137 Ill. Dec. 635, 546 N.E.2d 580 (1989) ................................. 6, 10

*Chou v. Univ. of Chicago*,
  254 F.3d 1347 (Fed. Cir. 2001) ....................................................................... 14, 15

*Continental Bank, N.A. v. Meyer*,
  10 F.3d 1293 (7th Cir. 1993) ................................................................................. 9

*Cosio v. Medical College of Wisconsin, Inc.*,
  139 Wis.2d 241, 407 N.W.2d 302 (Wis. App. 1987) .............................................. 13

*Flentye v. Kathrein*,
  485 F.Supp.2d 903 (N.D. Ill. 2007) ........................................................... 17, 18, 19

*Hann v. The Paul Revere Ins. Co.*,
  No. 03-1062, 2004 WL 557380 (N.D. Ill. Feb. 17, 2004) ................................. 17, 18

*Illinois Non-Profit Risk Mgmt. Ass'n v. Human Service Center of S.*
  *Metro-East*,
  378 Ill. App. 3d 713, 318 Ill. Dec. 732, 884 N.E.2d 700 (2008) ......................... 4, 5

*Johnson v. Schmitz*,
  119 F. Supp. 2d 90 (D. Conn. 2000) ............................................................... 14, 16

*Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*,
  172 F.Supp.2d 992 (N.D. Ill. 2001) ............................................................... 17, 18

iii

*Lagen v. Balcor Co.*,
　　274 Ill. App. 3d 11, 210 Ill. Dec. 773, 653 N.E.2d 968 (1995) .......................... 6, 10

*Morrison v. Univ. of Miami*,
　　No. 15-23856, 2016 WL 3129490 (S.D. Fla. Jan. 20, 2016) ................................. 17

*Orzechowitz v. Nova Southeastern Univ.*,
　　No. 13-62217, 2014 WL 1329890 (S.D. Fla. March 31, 2014)................... 14, 16, 17

*Raethz v. Aurora Univ.*,
　　805 N.E.2d 696 (Ill. App. Ct. 2004)....................................................................... 12

*Regensburger v. China Adoption Consultants, Ltd.*,
　　138 F.3d 1201 (7th Cir. 1998) ................................................................................. 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007) ................................................................................................. 5

## Other Authorities

2 Moore's Federal Practice, § 12.34[2] ......................................................................... 7

## Introduction

The Court has dismissed most of Plaintiff's claims once already, and his attempt to resuscitate those claims should be rebuffed, as well. The Court should dismiss the Third Amended Complaint ("TAC") except for the narrow breach of contract claim preserved by the Court's Order on Defendants' motion to dismiss the Second Amended Complaint (ECF NO. 48 at 14).

With respect to Plaintiffs' misrepresentation claims, although he alleges in the TAC that he "was impressed and enticed" to enroll at Ross University School of Veterinary Medicine ("RUSVM" or "Ross") by certain statements supposedly contained in RUSVM's 2013 Student Handbook, *see* TAC ¶ 27, he now readily admits that those statements actually come from the 2017 Handbook, which was published well after he was dismissed from Ross. Similarly, he alleges he was "enticed" to enroll at Ross by certain statements supposedly contained in the school's Strategic Vision statement published on its website (and that he retained a copy of that webpage), *see* TAC ¶ 26 & n.4, but in fact, the Strategic Vision statement is dated October 3, 2015—once again, *after* he was dismissed from school and years after the statement supposedly duped him into enrolling at Ross.

As to Plaintiff's other claims (breach of contract, breach of fiduciary duty, and alter ego), he presents no compelling argument that would allow these claims to move past the pleadings stage. For example, he claims he can proceed on a breach of contract theory based on an AVMA policy because he is a third party beneficiary to the "AVMA-Ross relationship." However, the Court already rejected any breach of contract claim based on AVMA policies and there can be no third-party beneficiary

1

status without an underlying contract. In addition, Plaintiff's allegations in connection with his breach of fiduciary duty and alter ego claims simply are not plausible because (1) there are no "special circumstances" warranting a finding of a fiduciary relationship and (2) there are no allegations suggesting that Defendants acted as a single entity.

For the reasons stated in Defendants' motion to dismiss and this reply, the TAC should be dismissed except to the extent it alleges a breach of contract claim based on the Student Handbook's disability accommodations and anti-retaliation provisions.

## Argument

I.      Counts I And II: Plaintiff's Fraudulent Inducement And Negligent Misrepresentation Claims Fail As A Matter Of Law And Cannot Proceed Beyond The Pleadings Stage.

Plaintiff's Response on his fraudulent inducement and negligent misrepresentation claims makes plain exactly what happened here. He was dismissed from school in September 2015. *See* TAC ¶ 5. A month later, in October 2015, and then again in 2017, he went on the internet, found some statements by Ross, and decided to claim that he was fraudulently induced by those statements into applying to Ross. *See* Response at 5, n.2; 9; and Ex. A.

Both statements he found were published after he was dismissed from school and years after he enrolled (when the misrepresentations purportedly occurred). The Strategic Vision is dated October 3, 2015, *see* Response Ex. A, and the Student Handbook is dated March 16, 2017, TAC ¶ 56, n.12. As a matter of indisputable fact and a matter of law, a person cannot be fraudulently induced into action in 2013 by

2

words published two or four years later. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998) (reasonable reliance is an element of a claim for fraudulent inducement); *see also* ECF No. 48 at 10 (Order on Motion to Dismiss stating: "Although the heightened pleading standard is not 'rigid' or formulaic . . . , considering that Galligan's briefing raises concerns that some of the statements listed in the complaint were made after he matriculated, this is an appropriate case to apply Rule 9(b) strictly."). Having been exposed, Plaintiff is now scrambling before the Court to save this cause of action. This attempt should be rejected and his misrepresentation claims should be dismissed with prejudice.

A.   **Plaintiff's Fraudulent Inducement And Negligent Misrepresentation Claims Based On The Strategic Vision Statement Fail As A Matter Of Law.**

i.   **Plaintiff's Own Exhibit Confirms He Did Not Review The Statement Until 2015.**

In the previous version of his complaint, Plaintiff did not even bother to claim that he read the Strategic Vision statement before applying to Ross, *see* ECF No. 32, Second Amend. Compl. ("SAC") ¶ 23, and the Court dismissed his claim on those grounds, ECF No. 48 at 10. So he revised the complaint and asserted that he did read it before applying. *See* TAC ¶ 26.

After Defendants pointed out in their motion to dismiss that there is no evidence of a Strategic Vision statement even existing on Ross's website before 2014, *see* ECF No. 63 at 4, n.3, Plaintiff produced the document he claims to have read in 2013, only to reveal that it bears a date from October 2015, more than two years after he matriculated into Ross and a month after he was dismissed, *see*

3

Response at 5, n.2 & Ex. A (Strategic Vision statement time stamped 10/3/15, 4:37 PM).[1] For this reason alone, claims of fraudulent inducement and negligent misrepresentation based on the Strategic Vision statement should be dismissed with prejudice.

### ii. Regardless, Plaintiff's Arguments As To Why The Strategic Vision Statement Involves "Present Time" Actions Are Unpersuasive.

Plaintiff cannot state a valid claim for misrepresentation based on a statement of intent concerning future conduct. *Illinois Non-Profit Risk Mgmt. Ass'n v. Human Service Center of S. Metro-East*, 378 Ill. App. 3d 713, 723, 318 Ill. Dec. 732, 884 N.E.2d 700 (2008). Even setting aside the fact that the Strategic Vision statement is dated from 2015, the statement is one of intent to do something in the future. Even Plaintiff admits that the statement is an assertion that "Ross *intended to*" reduce attrition by increasing the quantity of quality of student applicants. Response at 4 (emphasis added).

Plaintiff nevertheless argues that it is a statement of "measures Ross professed to be actively taking at the then-present time," Response at 5, but this is proven false by the complete Strategic Vision statement he produced. That statement, again dated October 3, 2015, states that Ross's "Next Steps" include reducing attrition by increasing the quantity of quality student applicants. *See*

---

[1] In his Response, Plaintiff also argues that he alleged a "confirming" call with someone at Ross in 2013, *see* Response at 5 (citing TAC ¶ 26), but the TAC says no such thing. It merely says that he read the Strategic Vision statement "in preparation for a conference call" with Ross in 2013, which of course cannot be true since the website is dated from 2015. *See* TAC ¶ 26.

Response, Ex. A. Even if this statement had actually been made in 2013, it would plainly have been a statement about what Ross intended to do in the future, as it is listed as a specific item under "Next Steps." *Id.* As it is, the statement is dated October 3, 2015, and articulates Ross' "next steps" as of that point. It certainly is not a statement about "measures Ross professed to be actively taking at the then-present time (i.e., in 2013)." *See* Response at 5.[2]

Nor has Plaintiff rebutted the argument that statements of future intent cannot constitute actionable misrepresentations. *See Illinois Non-Profit Risk Mgmt. Ass'n v. Human Service Center of S. Metro-East*, 378 Ill. App. 3d 713, 723, 318 Ill. Dec. 732, 884 N.E.2d 700 (2008) ("Statements concerning future intent or conduct are not actionable as fraud.") (citing *Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269, 271, 173 Ill.Dec. 746, 597 N.E.2d 720, 722 (1992)); *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 25, 396 Ill. Dec. 611, 620, 40 N.E.3d 264, 274 (dismissing claim for negligent misrepresentation, finding that "projections of future performance are generally not actionable as false statements"). He simply argues (incomprehensibly) that a statement made in 2015 about what Ross "intends" to do as its "next steps" is somehow actually a statement

---

[2] Plaintiff also inexplicably suggests that the Court should focus only on the "extraction" of a single sentence from the Strategic Vision statement that was actually quoted in the TAC and not consider the entire statement. *See* Response at 4, n.2. Plaintiff is asking the Court to turn a blind eye to a document that not only reveals it is dated October 3, 2015, but also confirms that the "reduced attrition" reference refers to nonactionable future conduct. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a Rule 12(b)(6) motion to dismiss, court may consider the complaint, documents incorporated into the complaint by reference, matters of which a court may take judicial notice, and exhibits attached to the complaint). This argument should be disregarded.

5

about what Ross was actually already doing in 2013. The Court should reject this illogical argument.

In addition, Plaintiff still cannot point the Court to any place in his TAC where he asserts that this statement of future intent was false -- either when made or later on. He does not claim that Ross never actually intended to increase its quantity of quality applicants or even that Ross never did increase its quantity of quality applicants. Instead, he contends that he adequately pled falsity by claiming that Ross failed to accommodate his alleged disability and allowed other students to cheat. *See* Response at 7-8. Even if this were an accurate characterization of Ross's actions, neither would render the Strategic Vision statement false. *See Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17, 210 Ill. Dec. 773, 653 N.E.2d 968 (1995) (fraudulent inducement claim requires proof of a false statement, known or believed to be false by the person making it, as well as damage resulting from reliance on that false statement); *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 137 Ill. Dec. 635, 546 N.E.2d 580 (1989) (negligent misrepresentation consists of the same elements, except the defendant need not know the statement is false; rather, the defendant's own carelessness or negligence in ascertaining the truth of the statement will suffice).

In sum, Plaintiff's claims of fraudulent inducement and negligent misrepresentation based on the Strategic Vision statement should be dismissed with prejudice because: (1) Plaintiff could not have read a 2015 statement in 2013;

6

(2) the statement is merely one of future intent; and (3) nothing Plaintiff has pleaded suggests that the statement was false when made.

### B. Plaintiff's Fraudulent Inducement And Negligent Misrepresentation Claims Based On The 2017 Student Handbook Also Fail As A Matter Of Law.

#### i. Plaintiff Concedes His TAC Relies On A Student Handbook That Was Not In Effect In 2013.

Plaintiff claims fraudulent inducement and negligent misrepresentation based on five statements allegedly found in the 2013 Student Handbook. TAC ¶¶ 27, 70; Response at 9, n.8. However, in what can only be construed as an admission that the TAC is defective, Plaintiff concedes he was referencing the 2017 Student Handbook and that the 2013 Handbook does not actually contain three of the five allegedly fraudulent statements. *See* Response at 9-10. Instead, he argues that the 2013 Handbook contained different statements that are just as fraudulent. *See id.* at 9. This tactic is inappropriate. A plaintiff cannot file a lawsuit alleging fraud (which must be pled with particularity) based on one statement, receive a motion to dismiss based on the indisputable fact that the statement was not made, and avoid dismissal by claiming that different statements were made. *See, e.g.*, *Aniero Concrete Co., Inc. v. New York City Constr. Auth.*, No. 94 Civ. 3506, 2000 WL 863208, at *31 (S.D.N.Y. June 27, 2000) (excluding new facts in opposition brief as extra-pleading matters on motion to dismiss, and limiting consideration of the sufficiency of claim to the "four corners of the pleading"); *see also* 2 Moore's Federal Practice, § 12.34[2] (Mathew Bender 3d ed.) ("The court may not take into account additional facts asserted in a memorandum opposing the motion to dismiss . . . .").

7

Claims of fraudulent inducement and negligent misrepresentation based on the 2017 Student Handbook, which did not exist when Plaintiff allegedly was "enticed" to matriculate into Ross, should be dismissed with prejudice for this reason alone.

### ii. Regardless, The 2013 Handbook Does Not Contain Fraudulent Statements.

Even if the Court were to examine the five 2013 Handbook statements (which it should not), Plaintiff cannot proceed on his fraudulent inducement and negligent misrepresentation claims as a matter of law:

**Statement 1**: "Some examples of acts of misconduct that are unacceptable and therefore subject to discipline include, but are not limited to: ... Harassment." Response at 9. Plaintiff does not allege that he, or anyone else at Ross, was harassed or that Ross somehow condoned harassment as acceptable. *See* TAC *generally*. Therefore, this statement is not actionable and is irrelevant based on the underlying allegations in the TAC.

**Statement 2**: "As part of its dedication to making educational opportunities to a diverse range of students, [Ross] is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations . . . ."; and **Statement 3**: "[Ross] is committed to ensuring that qualified students with disabilities are afforded reasonable accommodation." Response at 9, 10-11. These are non-actionable statement of future intent. Plaintiff describes these statements as a "*present* commitment to take (and continue to take) certain actions," *id.* at 11 (emphasis in original), but highlighting the word "present" does not change the fact

8

that a "present commitment to take certain actions" is a statement of future intent. Of course, the statement is *made* in the present. The question is whether it is a statement of present fact or a statement of future intent. If the former, then it could plausibly be an actionably fraudulent statement. If the latter, then it cannot. Plaintiff does not dispute this standard and, here, based on a plain reading of the statement, it is a statement about future intent.

**Statement 4**: "The mental and emotional stability of students is a primary concern of [Ross]." Response at 11. This is non-actionable puffing. Although Plaintiff argues that it is not puffing because it "conjure[s] up specific, factual ideas about Ross' treatment of students with documented disabilities," *id.* at 12, he does not elaborate on what those ideas are. Instead, he relies on "published assurances" found elsewhere to argue that "primary concern" must means that Ross should have provided testing accommodations. *Id.* This confirms Statement 4 alone is not enough to "conjure up specific factual ideas." *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 122 (7th Cir. 1993) (words like "highest quality," "expertise," "finest ever," and "perfect for use," not actionable).

**Statement 5**: "Because the medical profession is governed by ethical principles . . . a veterinary student must have the capacity to understand, learn and abide by these values and laws. Examples of breaches of veterinary medical ethics include, but are not limited to: cheating, plagiarism or other forms of academic dishonesty . . . ." Response at 10. The TAC does not allege that this statement (or

9

the allegedly comparable 2017 statement) is false, so it is not actionable. *See Lagen*, 274 Ill. App. 3d at 17; *Board of Education*, 131 Ill. 2d at 452.

Plaintiff's misrepresentation claims should be dismissed in their entirety and with prejudice because he fails to state a cognizable claim on the face of his complaint.

## II. Count III: Other Than The Narrow Breach of Contract Claim Allowed To Proceed, Plaintiff Has Failed To Establish Any Other Cognizable Breach of Contract Claim.

### A. The Court Has Only Allowed Plaintiff's Breach Of Contract Claim To Proceed Based The Student Handbook's Disability Accommodations And Anti-Retaliation Provisions.

In footnote 12 of the Response, Plaintiff states that the Court allowed his claims "based on section 1.8.7.2, 1.11.3, and 1.11.4 to proceed." Response at 13, n.12. This is wrong. The Court explicitly said "there was no valid contract as to" Student Handbook § 1.11.3 (a promise to comply with federal and state laws). ECF No. 48 at 12. The Court allowed Plaintiff to proceed only on his claim that Ross breached contractual promises found in Sections 1.8.7.2. (anti-retaliation provision) and 1.11.4 (disability accommodation provision). *See id.* at 13-14.

### B. Plaintiff's Attempt To Resurrect A Breach Of Contract Claim Based On AVMA Policies Should Be Rejected Because The Court Has Already Dismissed This Claim And Plaintiff Fails To Allege An Underlying Contract.

The Court already dismissed any breach of contract claims based on AVMA policies. ECF No. 48 at 12-13 (dismissing the breach of contract claim based on AVMA policy); *see also* Response at 14, n.14 (Plaintiff acknowledging "the Court has previously determined that AVMA policies and procedures cannot form a valid basis

for Plaintiff's breach of contract claim due to privity issues"). For this reason alone, claims for breach of contract based on AVMA policies should be dismissed with prejudice.

Plaintiff tries to revive these claims by arguing that he is a "third-party beneficiary of the AVMA-Ross relationship," but this argument is unpersuasive. Plaintiff does not even allege that there is a contract between Ross and AVMA, but rather that "Defendants adopted policies mandated by the AVMA." *See* TAC ¶ 81; *see also* Response at 17 ("Here, Plaintiff was an intended third-party beneficiary of *the relationship* between Ross and the AVMA, its accrediting body.") (emphasis added). Because a contract is a prerequisite to third-party beneficiary status, and there is no contract alleged here, Plaintiff's claim based on AMVA policy provisions should be dismissed.

> **C.    Plaintiff's Attempt To Resurrect A Breach Of Contract Claim Based On The Student Handbook's Academic Probation Provision Should Also Be Rejected Because The Court Has Already Dismissed This Claim And It Is Not Reviewable Under The Court's Arbitrary And Capricious Review Standard For Academic Dismissals.**

The Court also already dismissed any breach of contract claims based on the Student Handbook's academic probation provisions explaining that Plaintiff cannot seek review of the school's decision to dismiss him on academic grounds based on a dispute over the proper interpretation of the academic probation provision. ECF No. 48 at 13-14 ("Applying academic-probation provisions differently than Galligan expected is a paradigmatic example of a decision that is not reviewable under [the arbitrary and capricious] standard.").

11

Regardless, Plaintiff's sole argument in support of his claim that he should be able to proceed on this ground is that he "should have not been subject to the same rules as students on 'Academic Probation'" because he successfully passed certain classes following his "sabbatical." TAC ¶ 77. This argument holds no ground because, as a matter of law, applying academic probation provisions differently than Plaintiff expected is not arbitrary and capricious. *See* ECF No. 48 at 13-14 (citing *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004)) ("Applying academic-probation provisions differently than Galligan expected is a paradigmatic example of a decision that is not reviewable under [the arbitrary and capricious] standard.").[3]

Any claim for breach of contract based on a breach of the Student Handbook's academic probation provisions should thus be dismissed with prejudice.

### D. Plaintiff's Breach of Contract Claim Based On The Student Handbook's Academic Misconduct And Honor Code Provisions Is Also Not Reviewable Under The Court's Arbitrary And Capricious Review Standard For Academic Dismissals.

Plaintiff's TAC alleges a new breach of contract theory that was noticeably absent from the SAC -- that Ross violated its Student Handbook academic

---

[3] Indeed, although Plaintiff argues that "this case presents allegations radically more random, unprofessional, unrestrained, unpredictable, and unreasonable than other student dismissals, such that it satisfies the 'arbitrary and capricious' standard," Response at 13, Plaintiff conveniently does not address or refute the facts that: (1) the Student Handbook specifically states that a student may be dismissed for failing just three classes during the first seven semesters or for failing to satisfy conditions of an Academic Warning letter, *see* ECF No. 63-3 at § 2.9; (2) Plaintiff admits he failed four classes, *see* TAC ¶¶ 35, 51; and (3) his January 2014 letter allowing him to return to school explicitly conditioned his reinstatement on not failing a fourth class, *see* ECF No. 63-1.

12

misconduct and honor code provisions by failing to police cheating by other students. *See* TAC ¶ 80. This claim fails for the same reasons as Plaintiff's claim premised on the academic probation provisions -- it is not reviewable under the Court's arbitrary and capricious review standard for academic dismissals. *See* ECF No. 48 at 13-14.

In response to Defendants' argument that this breach of contract claim cannot proceed under the Court's arbitrary and capricious review standard for academic dismissals, Plaintiff simply argues, without legal support, that, "by consciously turning a blind eye to rampant cheating by Ross students and permitting the continued use of test banks, Defendants knowingly prejudiced the honest students who did not partake in those activities (including Plaintiff)." Response at 15. This unsubstantiated and unsupported statement does provide any support for the Court to find a plausible allegation that Ross acted arbitrarily or capriciously in dismissing him from school for academic reasons. *See Cosio v. Medical College of Wisconsin, Inc.*, 139 Wis.2d 241, 246, 407 N.W.2d 302, 305 (Wis. App. 1987) (rejecting an argument that academic dismissal was arbitrary because MCW tolerated widespread cheating on examinations and, while it dismissed him, it permitted others, who engaged in cheating, to graduate).

The Court should thus bar Plaintiff's breach of contract claim to the extent he bases it on anything other than the allegation that he was denied disability accommodations or experienced retaliation for requesting accommodations, in violation of specific provisions in the Student Handbook to the contrary.

13

### III. Count IV: Plaintiff's Cited Legal Authority Confirms He Has Failed To Plead "Special Circumstances" To Warrant A Finding Of A Fiduciary Relationship.

Plaintiff argues that it is "very possible" for fiduciary duties to exist between a student and his university "because of the student's disability" and that it is "very possible" for a student "to adequately plead the existence of special circumstances." Response at 18. In this regard, Plaintiff relies on four decisions: *Bird v. Lewis & Clark College*, 104 F. Supp. 2d 1271 (D. Or. 2000); *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001); *Johnson v. Schmitz*, 119 F. Supp. 2d 90 (D. Conn. 2000); and *Orzechowitz v. Nova Southeastern Univ.*, No. 13-62217, 2014 WL 1329890 (S.D. Fla. March 31, 2014). Reliance on these decisions is misplaced because they are distinguishable, non-precedential, and came to the wrong conclusion.

Although Plaintiff specifically acknowledges that these decisions focus on "the special circumstances of the student [that] are unique to her or him," Response at 19, Plaintiff fails to mention that the common thread in those decisions is that there were allegations of *specific and personalized promises made directly to the individual plaintiffs by individuals employed by the institutions*. This case does not involve *any* specific promises made directly to Plaintiff about accommodating his disability or ensuring a fair grading system, *see* TAC ¶ 86, and do not support a finding that a fiduciary relationship can exist merely because a student attends a veterinary school while allegedly experiencing "test anxiety."

*Bird* involved a paraplegic student primarily claiming that the college failed to accommodate her extensive physical disabilities in an overseas study-abroad program. 104 F. Supp. 2d at 1277. In finding that it was plausible that a fiduciary

14

relationship may exist between her and the college, both the district court and the Ninth Circuit found that a fiduciary relationship was plausible *in her specific circumstances* because the college explicitly assured her and her parents on a number of occasions that the program would accommodate her specific disability. *Id.* at 1277; *see also* 303 F.3d 1015, 1023 (9th Cir. 2002). The courts found that she had reason to trust those specific assurances because the college worked closely with her in the past to accommodate her disability on campus, including by installing ramps, changing doors, remodeling bathrooms, and even rebuilding parts of its biology lab. 104 F. Supp. 2d at 1277; 303 F.3d at 1023. The courts did not find a plausible fiduciary relationship based on the plaintiff's disability alone. Rather, the university made specific promises directly to the student and her parents and had a history of acting consistently with those promises, and the courts held that this could give rise to a fiduciary relationship.

In *Chou*, a case involving a graduate student primarily suing her professor/advisor and university to correct inventorship of various patents, the court emphasized the specific promises made by the plaintiff's advisor in finding the plausibility of a fiduciary relationship. *See* 254 F.3d at 1362 (explaining that plaintiff's advisor "specifically represented to her that he would protect and give her proper credit for her research and inventions" and that he had "responsibility to make patenting decisions regarding Chou's inventions"). The plausibility of the breach of fiduciary duty claim against the university was based only on the theory of respondeant superior. *Id.* at 1363.

15

In *Johnson*, the court also focused on the individual relationship between a graduate student and his advisor, stating as follows: "Given the collaborative nature of the relationship between a graduate student and a dissertation advisor who necessarily shares the same academic interests, the Court can envision a situation in which a graduate school, knowing the nature of this relationship, may assume a fiduciary duty to the student." 119 F. Supp. 2d at 97-98. Again, this involved analysis of specific relationships with individuals, not a general student/university relationship.

In *Orzechowitz*, a case involving a nursing student primarily bringing race and pregnancy discrimination claims against her university, the court also emphasized the specific promises made by a professor before declining to dismiss a claim for breach of fiduciary duty. *See* 2014 WL 1329890 at *4-5. The court also noted that it had been unable to find any case establishing a fiduciary duty between student and university under Florida law. *Id.* at *4

Here, Plaintiff fails to allege any "special relationship" with individual advisors or any "specific promises" that Ross or any individual at Ross made to him personally about accommodating his test anxiety or ensuring a fair grading system. *See* TAC ¶ 86. Instead, he simply alleges he was 25 years of age at the time he applied to Ross, had virtually no business experience at the time, and had an alleged learning disability (severe test anxiety) whereas Ross had many years' experience running a for-profit school and was in a "dominant" position as the provider of his education. *Id.* ¶¶ 2, 86. Thus, the cases Plaintiff relies on are

16

distinguishable and irrelevant. As a matter of law, these allegations are not enough to plausible allege a fiduciary relationship. *See* ECF No. 48 at 14 (the "professional school/student" relationship does not create a fiduciary relationship as a matter of law, and "special circumstances" must exist to give rise to a fiduciary duty).

Not only are the cases distinguishable from Plaintiff's allegations, but the decisions are also non-precedential and reached the wrong conclusion. For example, in *Morrison v. Univ. of Miami*, No. 15-23856, 2016 WL 3129490, (S.D. Fla. Jan. 20, 2016), court explicitly disagreed with the finding in *Orzechowitz* and said that the *Orechowitz* court's reasoning "would convert many, if not all, employer/employee relationships into fiduciary relationships, and there is simply no support in the law for such a result." *Id.* at *7. There, the court granted the defendant's motion to dismiss a breach of fiduciary duty claim because "a fiduciary duty does not simply arise because of a student's status." *Id.* (collecting cases supporting its conclusions that a fiduciary duty does not simply arise because of a student's status).

Because Plaintiff fails to allege any "special circumstances" that would warrant a fiduciary relationship between him and Ross, the Court should dismiss Count IV with prejudice.

## IV. Count V: Plaintiff's Cited Legal Authority Confirms He Has Also Failed To Plead A Cognizable Alter Ego Claim.

Plaintiff relies on three cases in support for his argument that he has stated a viable alter ego claim. *See Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F.Supp.2d 992 (N.D. Ill. 2001); *Hann v. The Paul Revere Ins. Co.*, No. 03-1062, 2004 WL 557380 (N.D. Ill. Feb. 17, 2004); and *Flentye v. Kathrein*, 485 F.Supp.2d 903

17

(N.D. Ill. 2007). In reality, those decisions confirm that Plaintiff has failed to adequately plead a claim for alter ego because he failed to adequately allege that any combination of Defendants operated as a single entity.

First, the *Kellers* court recognized that piercing the corporate veil is an equitable remedy that Illinois courts "should undertake reluctantly" but allowed the alter ego claim in question to proceed past the motion to dismiss stage because: (1) the corporate entities shared common ownership by an individual and (2) the entities commingled funds in six separate payments made to the plaintiff. 172 F. Supp. 2d at 1000-01.

Second, the *Hann* court explained that "if a plaintiff alleges . . . a parent is the alter ego of its subsidiary, dismissal of her complaint is unwarranted if she alleges any facts which suggest that the corporations operated as a single entity." 2004 WL 557380, at *2. One way to do that was to allege that one corporation so controls the affairs of another that the other is "the mere instrumentality or dummy of another." *See id.* It elaborated that, there, dismissal of the alter ego claim was not warranted because the plaintiffs alleged that one corporate entity (a company providing insured disability benefits) controlled all its subsidiaries' claims processing and policies and made the decision to deny the plaintiffs' claims for benefits. *Id.*

Third, the *Flentye* court explained: "If the Complaint fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied.

18

485 F. Supp. 2d at 913 (internal quotations and citations omitted). The court denied the motion to dismiss because the plaintiff alleged that one corporate entity devised another "for the sole purpose of holding title to local real estate" that the first entity operated and nothing more. *Id.*

Here, Plaintiff fails to allege *any* commingling of funds generally or with respect to any specific transactions involving him. Plaintiff also does not allege that one defendant somehow "controls the affairs" of another entity so as to act as a single entity or that any entity was an "empty shell." Rather, Plaintiff's sole allegations in support of his alter ego claim are: (1) a single vague and confusing statement that loan paperwork and money "flowed through Adtalem/DeVry's[4] New Jersey office," *see* TAC ¶¶ 11, 48, & n.10, and (2) the following reference to a statement from an August 25, 2016 SEC Form 10-K:

> Indeed, as set forth on [Adtalem Global Education Inc.'s] SEC Form 10-K filed on August 25, 2016, [Adtalem Global Health, Inc.][5] is one of [Adtalem Global Education Inc.'s] "reporting segments," and [Adtalem Global Health, Inc.] in turn operates RUSVM. [Adtalem Global Health Inc.] also characterizes the employees of RUSVM and other educational programs under its umbrella as [Adtalem Global Education Inc.] employees. [Adtalem Global Education Inc.'s] SEC Form 10-K further recognizes that RUSVM is "supported by administrative staff located in Miramar, Florida and North Brunswick, New Jersey."

TAC ¶ 91.

---

[4] "Adtalem/DeVry" refers to one entity, "Adtalem Global Education Inc." "Adtalem Global Education Inc." is formerly known as DeVry Education Group." *See* TAC at p.1 (introduction).

[5] "Adtalem Global Health Inc." is formerly known as "DeVry Medical International, Inc." *See* TAC at p.1 (introduction).

To begin, statements made on August 25, 2016, are irrelevant to Plaintiff's assertion that Defendants were alter egos when he was dismissed from school in September 2015. In addition, the fact that certain paperwork or money allegedly "flowed through" the same location where Adtalem Global Education Inc. is located (without any further elaboration) or that Ross administrative staff are located there in no way amounts to allegations that there were commingled funds, that one entity controlled the affairs of another, or that any entity was just an empty shell. Plaintiff has not met the pleading standard for his alter ego claim and Count V should be dismissed with prejudice.

## Conclusion

For all the reasons set forth in Defendants' opening brief and in this reply, Defendants respectfully submit that Plaintiff's lawsuit should be dismissed with prejudice, except to the extent it alleges a breach of contract claim alleging breaches of the student handbook's disability accommodations and anti-retaliation provisions.

20

**DATED:** June 20, 2019

Respectfully submitted,

ADTALEM GLOBAL EDUCATION
INC.; ADTALEM GLOBAL HEALTH,
INC.; ROSS UNIVERSITY SCHOOL OF
MEDICINE SCHOOL OF
VETERINARY MEDICINE (ST. KITTS)
LIMITED

By:   s/Brian Stolzenbach

Brian Stolzenbach
bstolzenbach@seyfarth.com
Megan E. Troy
mtroy@seyfarth.com
Thomas M. Horan
thoran@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

21

## CERTIFICATE OF SERVICE

I do hereby certify that I have caused a true and correct copy of the foregoing by filing a copy with the Court's CM/ECF system, which will send notification to the following, on this 20th day of June, 2019:

> Michael W. Ford, Esq.
> Law Offices of Michael W. Ford
> 4 Timberwood Lane
> Riverwoods, IL 60015
> mfordski@aol.com
>
> Emil T. Bayko
> Ali Henderson
> Porter Hedges LLP
> 1000 Main Street, 36th Floor
> Houston, Texas 77002
> tbayko@porterhedges.com

> s/Brian Stolzenbach

22