# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER M. GALLIGAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 17 C 6310 |
| ADTALEM GLOBAL EDUCATION INC. F/K/A DEVRY EDUCATION GROUP; ADTALEM GLOBAL HEALTH, INC. F/K/A DEVRY MEDICAL INTERNATIONAL, INC.; ROSS UNIVERSITY SCHOOL OF MEDICINE SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LIMITED; and DOES 1 THROUGH 50, | ) ) Judge Joan H. Lefkow ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Peter Galligan was dismissed from Ross University School of Medicine School of Veterinary Medicine (St. Kitts) Ltd. ("Ross") in 2015. He now sues Ross, two of its corporate parents—Adtalem Global Health, Inc. f/k/a DeVry Medical International, Inc. ("DeVry Medical") and Adtalem Global Education, Inc. f/k/a DeVry Education Group ("Adtalem")—and fifty unnamed defendants. This court substantially narrowed his claims in a February 2019 order. (Dkt. 48.) After Galligan repleaded certain claims that were dismissed without prejudice, the defendants again move to dismiss. The motion is granted.[1]

---

[1] This court has jurisdiction under 28 U.S.C. § 1332. Galligan is a citizen of California. (Dkt. 48 ¶ 6.) Ross is a citizen of St. Kitts and Nevis. (*Id.* ¶ 9.) DeVry Medical is a Florida corporation with its principal place of business in New Jersey. (*Id.* ¶ 8.) Adtalem is a Delaware corporation with its principal place of business in Illinois. (*Id.* ¶ 7.) Although venue is proper under 28 U.S.C. § 1391(b)(1) to decide this motion because Adtalem resides here, the court dismisses Adtalem. Thus, as discussed further below, going forward it is no longer clear that venue is appropriate.

# BACKGROUND[2]

Peter Galligan suffers from severe test anxiety, which requires special accommodations when he takes exams. (Dkt. 57 ¶ 2.) While looking for a veterinary school, Galligan found Ross, which is in the Caribbean nation of St. Kitts and Nevis. (*Id.* ¶ 25.) Ross is operated by DeVry Medical, a Florida corporation with its principal place of business in New Jersey that is a "reporting division" of Adtalem, a Delaware corporation headquartered in Illinois. (*Id.* ¶¶ 6–8.) Ross is accredited by the American Veterinary Medical Association (AVMA). (*Id.* ¶ 20.)

Before applying, Galligan read and relied on Ross's corporate strategic vision statement, which promised to "increase total student numbers via reduced attrition . . . by increasing the quantity of quality student applicants, resulting in an increased completion rate." (*Id.* ¶ 26.) In July 2012, he also considered Adtalem's CEO's statement that "our culture of care is a palpable differentiator for us. . . . And how do we deliver DeVry Group Care? By staying true to DeVry Group's purpose, vision and . . . values . . . [one of which is] accountability." (*Id.* ¶ 28.) Galligan took these statements to mean that Ross would make efforts to ensure that its students did not fail and that their disabilities would be accommodated.

Galligan also reviewed Ross's Student Handbook before enrolling. (*Id.* ¶ 27.) He identifies five statements from the Handbook that he relied on in his decision to attend Ross:

- "It is RUSVM's policy to provide an environment free of unlawful harassment or discrimination based on ... disability";

- "RUSVM complies with all applicable laws regarding discrimination, harassment, retaliation and equal opportunity...";

---

[2] Unless otherwise noted, the following facts are taken from Galligan's third amended complaint (dkt. 57) and are presumed true for this motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

- "RUSVM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodation...";

- "The mental and emotional stability of students is a primary concern of RUSVM…."; and

- "It is an offense for any candidate to make use of unfair means in any RUSVM assessment, to assist a candidate to make use of such unfair means, [or] to do anything prejudicial to the good conduct of the assessment. . . . Receipt or transmission of unauthorized aid on assignments or examinations . . . unauthorized and/or improper use of examination materials, or other forms of dishonesty in academic fairs are also considered as academic misconduct."

(*Id.* ¶ 70.) In briefing on this motion, however, Galligan admits that these verbatim quotations from the Handbook that he alleges induced him to enroll at Ross in 2013 were in fact made in 2017. (Dkt. 69 at 9–10.) Indeed, though Galligan could have seen a modified version of two of the five quoted passages in handbooks that existed before the date he decided to enroll at Ross, the other three did not appear in any of them. (*Id.*)

Galligan matriculated at Ross in 2013 and immediately requested accommodations for his testing anxiety from Ross psychologist Dr. Janet Camp, which she denied. (*Id.* ¶¶ 32–34, 39.) This court held in its February 2019 order that Galligan plausibly claimed that this denial constituted a breach of contract. (Dkt. 48 at 17.) Galligan now also claims that it constituted a breach of Ross's obligations under the AVMA accreditation standards. (Dkt. 57 ¶ 58.) Without testing accommodations, Galligan failed three of his four classes during his second semester. (*Id.* ¶ 35.) Galligan was placed on academic probation and passed all of his classes in his repeat of his second semester, as well as in his third and fourth semesters. (*Id.* ¶¶ 40–41.)

In one class in Galligan's fifth semester at Ross, the professor recycled old test questions, allowing unscrupulous students to learn answers to an upcoming test by reviewing old exams they had stolen from a test bank. (*Id.* ¶¶ 52–54.) Galligan—an Eagle Scout and church leader— refused to cheat and failed the class. (*Id.* ¶¶ 47, 51, 54.) Galligan alleges that Ross tolerated

3

similar cheating in many other classes as well, in violation of both the student handbook and the AVMA accreditation standards. (*Id.* ¶¶ 43–50.)

After failing his fourth class, Galligan was dismissed from Ross. (*Id.* ¶ 54.) Galligan alleges that he received an inadequate appeal process and that his dismissal was in fact in retaliation for requesting accommodations and reporting widespread cheating. (*Id.* ¶¶ 55–57.) He alleges that other students who failed multiple classes were not expelled. (*Id.* ¶ 62.)

This suit followed. As stated above, only a breach of contract claim, based on Ross's failure to provide accommodations and alleged retaliatory dismissal, survived the first motion to dismiss. (Dkt. 48 at 17.) Galligan has repleaded all of his state-law claims in his third amended complaint. He claims that Ross either intentionally (count 1) or negligently (count 2) misstated facts to induce him to enroll because, in light of his experiences at Ross, everything he heard from Ross and Adtalem before enrolling was false. He also alleges that Ross breached both its contract with him and the AVMA accreditation standards by failing to follow its academic-probation protocols, overlooking other students' cheating, failing to accommodate his disability, and retaliating against him (count 3). He further claims that Ross breached its fiduciary duty to him (count 4), and that Adtalem and DeVry Medical are liable for all of Ross's alleged wrongdoing under an alter ego theory (count 5). Defendants now move to dismiss the third amended complaint.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th

Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

**I.     Fraudulent Inducement (Count 1) and Negligent Misrepresentation (Count 2)**

"In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman* v. *Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (quotation omitted). Negligent misrepresentation is similar, but the defendant's required mental state is reduced to "carelessness or negligence in ascertaining the truth of the statement," and a plaintiff must also allege that the defendant had "a duty . . . to communicate accurate information." *Tricontinental Indus., Ltd.* v. *PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A.* v. *Stewart Title*

*Guar. Co.*, 843 N.E.2d 327, 334–35, 218 Ill.2d 326 (2006)). The parties do not distinguish between the two counts for this motion.

As he did in earlier iterations of the complaint, Galligan alleges that Ross and its parent companies lied to him to induce him to enroll. Galligan first claims to have been misled by Adtalem's CEO's statement that DeVry schools follow a "culture of care" "[b]y staying true to DeVry Group's purpose, vision and . . . values . . . [one of which is] accountability." (Dkt. 57 ¶ 28.) This is no different from the statement that Ross is "value-driven," which Galligan alleged as an inducement in his second amended complaint and the court dismissed as non-actionable puffery. (Dkt. 48 at 9.) Galligan also alleges that he relied on Ross's strategic vision statement that it would try to reduce attrition. Though this may not be puffery, a statement that a defendant will "try" to do something is at most merely a statement of future intention, which is not actionable under Illinois law. *Am. Kitchen Delights, Inc.* v. *Nat'l R.R. Passenger Corp.*, No. 13 CV 4010, 2013 WL 6713776, at *2 (N.D. Ill. Dec. 19, 2013) (citing *Ault* v. *C.C. Servs., Inc.,* 597 N.E.2d 720, 772, 232 Ill. App. 3d 269 (1992)).

Moreover, Galligan has not plausibly shown that the statement was false. His dismissal has no bearing on whether Ross endeavored to improve its applicant pool. Nor does it disprove Ross's claim to focus on improving overall retention, and the court cannot reasonably infer otherwise. To the contrary, Galligan alleges that many other students were not dismissed after failing multiple classes, just as he was not dismissed after failing three classes in his second semester. (Dkt. 57 ¶¶ 37 (Galligan failed three classes but was not dismissed); *id.* ¶ 62 ("[O]ther students . . . failed multiple classes and were not dismissed . . . .").)

Finally, Galligan alleges that he relied on statements in the Student Handbook. Briefing on this motion establishes that he did not. Galligan alleges that "before applying to [Ross] in July

6

2012 and while his application was pending in April 2013, Galligan read . . . and was impressed with the [Ross] Student Handbook . . . ." (Dkt. 57 ¶ 27.) Galligan thus claims that "[i]n his decision to attend [Ross] . . ., [he] relied on [Ross] to fully comply with its own published policies . . . in the [Ross] Student Handbook, including" five policies that Galligan quotes verbatim in the complaint. (*Id.* ¶ 70.)

In their motion to dismiss, defendants demonstrate that the quotations came from the 2017 version of the Student Handbook—four to five years after they purportedly misled Galligan—and therefore could not have induced him to enroll. (Dkt. 63 at 7.) *See Venture Assoc. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (court may consider document without converting 12(b)(6) motion to summary judgment motion if document is referenced in pleading and central to claim). Indeed, three of the five statements did not appear in any form in the 2013 Student Handbook, the edition that was available when Galligan enrolled. (*Id.*) Galligan concedes that he was quoting the 2017 Student Handbook in his complaint. (Dkt. 69 at 9–10.)

"When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie* v. *Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citation omitted). Because the 2013 handbook demonstrably does not say what Galligan alleges that it said, Galligan cannot plausibly show either false statements or reliance, *Hoseman*, 322 F.3d at 476; *Tricontinental Indus., Ltd.* v. *PricewaterhouseCoopers, LLP*, 475 F.3d at 833–34, let alone with the particularity required under Rule 9(b).

Counts 1 and 2 are therefore dismissed for failure to state a claim. The dismissal is with prejudice because the court finds that amendment will be futile. First, Galligan has failed to state a claim after four attempts, giving the court no reason to believe that the fifth will succeed. *See*

7

*Anderson* v. *Deutsche Bank Nat'l Tr. Co., N.A.*, No. , 2014 WL 6806891, at *2 (N.D. Ill. Dec. 2, 2014). Second, in both of the last two iterations of the complaint, Galligan has cited statements as inducements that were demonstrably made after he enrolled. (Dkt. 48 at 8 n.5.) This repeated noncompliance with Rules 8 and 9(b) justifies dismissal of these claims with prejudice. *See, e.g.*, *Stanard* v. *Nygren*, No. 07 C 50132, 2009 WL 10681449, at *6 (N.D. Ill. Jan. 26, 2009) (dismissing action with prejudice for repeated noncompliance with Rule 8).

## II.     Breach of Contract (Count 3)

"To bring a successful breach of contract claim under Illinois law, a party must show '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *nClosures Inc.* v. *Block & Co.*, 770 F.3d 598, 601 (7th Cir. 2014) (citation omitted). "In Illinois, 'a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins.'" *DiPerna* v. *Chi. Sch. of Prof. Psychology*, 893 F.3d 1001, 1006–07 (7th Cir. 2018) (*quoting Raethz* v. *Aurora Univ.*, 805 N.E.2d 696, 699, 346 Ill. App. 3d 728 (2004)). But courts apply a distinct standard to claims that a university breached its contract with a student, allowing students "a remedy for breach of contract when it is alleged that an adverse academic decision has been made . . . only if that decision was made arbitrarily, capriciously, or in bad faith." *O'Driscoll* v. *Argosy Univ.*, No. 12 C 10164, 2014 WL 714023, at *2 (N.D. Ill. Feb. 25, 2014) (quoting *Raethz*, 805 N.E.2d at 699). The parties agree that Galligan and Ross had a contractual relationship, though they disagree about the terms of the contract.

Galligan alleges that Ross violated several terms of the Student Handbook, and thus its contract with him, by dismissing him. Under the "arbitrary, capricious, or bad faith" standard, courts do not second-guess academic decisions absent proof that the decision was made for

8

reasons wholly unrelated to academics, like retaliation for reporting the professor's sexual harassment, *O'Driscoll*, 2014 WL 714023, at *3, or national-origin discrimination, *Yakin* v. *Univ. of Ill., Chi. Circle Campus*, 508 F. Supp. 848, 853–54 (N.D. Ill. 1981). Galligan's dismissal was an academic decision. Ross dismissed him after he failed four classes, an action it was entitled to take after he failed three. (Dkt. 63-3 § 2.9 ("Events that may result in dismissal include . . . [r]eceiving three F . . . grades during the pre-clinical program (semester 1–7) . . . .").) Galligan acknowledges that he failed his fourth class for academic reasons—he did not answer correctly enough questions on the final exam to receive a passing grade. (Dkt. 57 ¶ 51.)

Galligan must therefore demonstrate that the academic dismissal was arbitrary, capricious, or in bad-faith, but he cannot. First, he claims that Ross failed to follow the academic probation procedures it outlined in its student handbook. The court has already dismissed this theory—it asks the court to interfere with precisely the kind of academic decision that courts do not second-guess. (Dkt. 48 at 13–14.) Moreover, the Student Handbook explains that Ross may dismiss a student for "[f]ailure to satisfy the conditions of Academic Warning" *or* "[r]eceiving three F . . . grades during the pre-clinical program (semester 1–7)." Galligan thus cannot plausibly claim that because he survived academic probation, he could not be dismissed for other academic reasons.

Second, he claims that Ross breached its contract with him by "turning a blind eye to cheating by its students." (Dkt. 57. ¶ 29.) There is little case law mirroring this specific situation where a plaintiff claims that a university has breached a contract by ignoring cheating. Both parties reference *Cosio* v. *Medical College of Wisconsin, Inc.,* 407 N.W.2d 302, 139 Wis. 2d 241 (Wis. Ct. App. 1987). Cosio claimed that his former academic institution breached its contract with him (created by the school Bulletin and Handbook) by tolerating cheating, a practice that

9

Cosio claimed caused him to fail. *Id.* at 244–45. The court found that Cosio's dismissal was not arbitrary and capricious because the institution had sufficient reasons for dismissal. *Id.* at 247 ("The test for arbitrary or capricious dismissal is whether the dismissal is based on sufficient reasons; if a school has sufficient reasons for dismissal, as [the Defendant] did, the court will not interfere." (citing *Frank* v. *Marquette Univ.*, 245 N.W. 125, 127, 209 Wis. 372 (1932))).

*Cosio* favors Ross, and the court finds it persuasive. Ross's response to other students' cheating does not fall within the exceptional category of arbitrary, capricious, or bad-faith reasons to make an academic decision. It is not "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *O'Driscoll*, 2014 WL 714023, at *2 (quoting *Raethz*, 805 N.E.2d at 699). To the contrary, how carefully a university polices cheating is nothing more than a series of other academic decisions. To accept Galligan's widespread-cheating theory as grounds to revisit his dismissal would require the court not only to second-guess Galligan's grades but also to micromanage Ross's academic decisions about how it punishes other students or how its professors prepare and protect their exams. Ross's alleged tolerance of other students' cheating did not make Galligan's dismissal after he failed four classes arbitrary, capricious, or in bad faith.

Finally, Galligan claims that Ross breached the AVMA standards, a theory the court dismissed in its February 2019 order because Galligan does not have a contract with AVMA. (Dkt. 48 at 13.) Galligan now argues that he is a third-party beneficiary of Ross's agreement with the AVMA. Even if that were true, Galligan does not argue that Ross promised the AVMA anything beyond what it promised him. Galligan states a claim for breach of Ross's contract with

10

him on some terms (*see* dkt. 48 at 17), and fails so state a claim on others (see above). Alleging that Ross also agreed to the same terms with the AVMA does not affect either category.

The motion to dismiss Count 3 is granted as to all theories of breach other than those the court explicitly permitted in its February 4, 2019 order. (Dkt. 48 at 17.)

## III.  Breach of Fiduciary Duty (Count 4)

Galligan argues that Ross breached its fiduciary duty to him. "To establish a breach of fiduciary duty under Illinois law, a plaintiff must show that '(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains.'" *nClosures*, 770 F.3d at 603 (citations omitted). Galligan claims that a fiduciary duty existed between him and Ross "because of the special circumstances of their relationship." (Dkt. 57. ¶ 86). Galligan emphasizes his youth, lack of business experience, and learning disability as special circumstances, claiming that he placed trust and confidence in Ross, which had much more business experience than he. Although Galligan correctly states that fiduciary duties may arise as a result of special circumstances such as disparity in age and business experience, *Autotech Tech. Ltd. P'ship* v. *Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006), those circumstances are not present here.

To support his contention that graduate professional schools can act as a fiduciary to students, Galligan cites four cases, only one of which applies Illinois law and the Illinois standard for breach of fiduciary duty. *Chou* v. *Univ. of Chi.*, 254 F.3d 1347 (Fed. Cir. 2001). *Chou* held that a graduate student stated a claim for breach of fiduciary duty against an individual supervisor where the supervisor patented the student's ideas as his own after convincing the student to entrust him with the responsibility of filing patents for her discoveries. *Id.* at 1362–63. The university was therefore liable under *respondeat superior*. *Id.* at 1363.

Galligan does not claim that Ross or its employees made representations of a fiduciary nature specifically to him; Galligan's Third Amended Complaint suggests the opposite. Galligan read statements on Ross's website, but not one representative from Ross made specific representations to him before he matriculated. He did not receive any specific representations when he met with Dr. Camp. Galligan does not plead a single instance where representatives of Ross made specific representations to him that would establish a fiduciary duty. Without a fiduciary duty, Galligan's breach of fiduciary duty claim cannot survive the motion to dismiss stage.

Count 4 is dismissed with prejudice.

## IV. Alter Ego (Count 5)

Galligan's final claim alleges alter ego liability for Adtalem and DeVry Medical. In Illinois, corporate veil piercing is governed by the law of the state where the defendant is incorporated. *Judson Atkinson Candies, Inc.* v. *Latini Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008). Accordingly, this court analyzes Galligan's alter ego claims under Delaware law for Adtalem and under Florida law for DeVry Medical.

### A. Adtalem: Alter Ego under Delaware Law

In order to state an alter ego claim under Delaware law, the plaintiff must allege "(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino* v. *Merscorp Inc.*, 583 F. Supp. 2d 521 (D. Del. 2008) (citation omitted). Seven factors guide this analysis: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the corporation; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of

the dominant stockholder or stockholders. *See United States* v. *Pisani*, 646 F.2d 83, 88 (3d Cir. 1981); Galligan does not plead sufficient facts to permit an inference that Adtalem manipulates Ross as is required to pierce the corporate veil. Galligan only pleads facts from DeVry Medical's 2016 10-K form, which was filed after Galligan was dismissed from the university. That 10-K form says only that DeVry Medical is a "reporting segment" of Adtalem, which does not remotely suggest that Ross, DeVry Medical, and Adtalem operated as a single entity. Furthermore, Galligan's sole allegation relating to Adtalem's employment characterizations does not implicate any of the seven factors outlined by the Third Circuit. Therefore, Galligan fails to plead a claim of alter ego liability against Adtalem.

### B. Defendant DeVry Medical: Alter Ego under Florida Law

In order to state an alter ego claim under Florida law, "a plaintiff must allege: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Damian* v. *Yellow Brick Capital Advisors (UK)*, No. 19-21538, 2019 WL 5887360, at *7 (S.D. Fla. Nov. 12, 2019) (citation omitted). Courts should consider twelve factors to assess domination and control:

> (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities,

such as keeping separate books and records and holding shareholder and board meetings.

*United Steelworkers of Am., AFL-CIO-CLC* v. *Connors Steel Co.*, 855 F.2d 1499, 1505 (11th Cir. 1988) (citing *United States* v. *Jon-T Chems., Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985)).

Galligan does not demonstrate any of these elements or factors. He has not shown that DeVry Medical controlled Ross such that Ross's "independent existence was in fact non-existent" and does not make any claims about either corporation's shareholders. *Damian,* 2019 WL 5887360 at *7. The information that Galligan provided from DeVry Medical's 10-K does not suggest any fraudulent conduct or an improper purpose. Galligan did not, and cannot, claim that DeVry Medical's corporate form caused him injury based on the facts alleged; the 10-K Galligan cites was filed with the SEC *after* Galligan was dismissed from Ross. Finally, Galligan's allegations that DeVry Medical operates Ross and recognizes Ross's US-based administrative staff do not implicate any of the twelve factors outlined by the Eleventh Circuit. Once again, Galligan fails to plead a claim of alter ego liability and this court will not incorporate DeVry Medical into this suit. DeVry Medical is dismissed as a defendant.

The motion to dismiss Galligan's alter ego claim against DeVry Medical is granted.

**ORDER**

Defendants' motion to dismiss (dkt. 62) is granted. Counts 1, 2, 4, and 5 are dismissed with prejudice. Count 3 is dismissed with prejudice except as to claims this court allowed in its February 4, 2019 order. (Dkt. 48.)

The matter is set for status on January 28, 2020. Because the only Illinois defendant has been dismissed from what is now a breach-of-contract case between citizens of California and St. Kitts and Nevis, the parties should be prepared to discuss whether this court is an appropriate forum in which to proceed.

Date: January 15, 2020                                      _____

U.S. District Judge Joan H. Lefkow