IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER M. GALLIGAN, | § § § § | |
| Plaintiff, | | |
| v. | § § | Case No. 1:17-cv-6310 |
| ADTALEM GLOBAL EDUCATION, INC. F/K/A DEVRY EDUCATION GROUP; ADTALEM GLOBAL HEALTH, INC. F/K/A DEVRY MEDICAL INTERNATIONAL, INC.; ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE (ST. KITSS) LIMITED; and DOES 1 THROUGH 50, | § § § § § § § § § § § § | Hon. Judge Joan H. Lefkow<br><br>JURY TRIAL DEMANDED |
| Defendants. | | |

**PLAINTIFF'S RESPONSE TO ROSS' MOTION TO DISMISS
ON THE GROUNDS OF *FORUM NON CONVENIENS***

Defendant Ross contends that Plaintiff Galligan's case should be dismissed on grounds of *forum non conveniens* and transferred to St. Kitts. Plaintiff contends that the case should be transferred to the Northern District of California or, alternatively, stay in the Northern District of Illinois which is the venue that Plaintiff chose originally.

Plaintiff hereby responds to Ross' Motion to Dismiss on the grounds of *forum non conveniens*.

**ARGUMENT**

In *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 949–50 (N.D. Ill. 2019), the Court stated:

> **District courts approach the doctrine [of** *forum non conveniens*] **with caution as it is "an exceptional one that a court must use sparingly."** *Id.* **As such, "[t]he exceptional nature of a dismissal for** *forum non*

> *conveniens* means that a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."
>
> To determine whether dismissal on *forum non conveniens* grounds is appropriate, a district court must decide whether there is an available and adequate alternative forum to hear the case and evaluate relevant private and public interest factors identified by the Supreme Court.
>
> The private interest factors to consider are:
>
>> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and [3] the cost of obtaining attendance of willing, witnesses; [4] possibility of view of premises, if view would be appropriate to the action; and [5] all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors to consider are:
>
>> [1] the administrative difficulties stemming from court congestion; [2] the local interest in having localized disputes decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

(Citations omitted, emphasis added).

The *Maui Jim* court, citing *Clerides v. Boeing*, 534 F.3d 623, 628 (7th Cir. 2008), also stated that a plaintiff's choice of forum is entitled to deference and that **"a plaintiff's choice of forum should only be disturbed if the balance of public and private interest factors strongly favors the defendant."** *Id.*, 386 F. Supp. 3d 926 at 950–51 (emphasis added).

1. **The Private Interest Factors Favor Plaintiff, not Ross.**

Relying on *Zara v Devry Educ. Grp., Inc.*, No. 16-CV-05156, 2017 WL 977002, at *4 (N.D. Ill. Mar 4, 2017) aff'd, 706 F. App'x 328 (7th Cir. 2017), and *Archut v Ross University Sch. of Veterinary Med.*, No. 10 CV-1681, 2013 WL 5913675 (D.N.J. Oct. 31, 2013), aff'd. 580 Fed

Appx. 90 (3rd Cir. 2014), Ross contends that Plaintiff's case should be dismissed on grounds of *forum non conveniens* and transferred to St. Kitts because St. Kitts is where: (1) Ross refused to accommodate Plaintiff's learning disabilities, and (2) Ross retaliated against Plaintiff for reporting a widespread test cheating scandal. The following facts reveal these arguments to be unpersuasive and wholly inadequate to overcome the overwhelming weight of the relevant factors favoring Plaintiff's position that this case properly should remain in the United States.

2. **The First, Second and Third Private Interest Factors (relative ease of access to sources of proof, availability of compulsory process for, and the cost of obtaining attendance of, unwilling witnesses) Favor Plaintiff.**

This case should not be transferred to St. Kitts, because none of the key discovery and trial witnesses reside in St. Kitts anymore, meaning the first, second and third private interest factors plainly favor Plaintiff here, not Ross. Specifically:

1. All of Ross' witnesses have either been fired by Ross or quit[1] and, whatever the nature of their separations, all have left St Kitts, and two are in the United States:

    a. Dr. Janet Camp - Former Head of Ross Counseling Services who refused Dr. Engelmann's testing accommodation request for Plaintiff: Current location: King Abdullah University of Science and Technology in Thuwal, Saudi Arabia. Source: https://www.facebook.com/janet.camp.75. Plaintiff Decl. (Dkt. 85-1) at ¶10.

---

[1] The behavior of Ross and its parents and affiliates resulted in a $100 million settlement with the FTC in December of 2016, causing many "heads to roll" - https://www.ftc.gov/news-events/press-releases/2016/12/devry-university-agrees-100-million-settlement-ftc. Separately, Ross' parents and affiliates were forced to disclose in their FYE June 30, 2018, Form 10-K filed with the SEC that 15% of its programs failed to meet required DOE debt-to-income and other metrics with graduates, jeopardizing future Title IV eligibility - caused in the opinion of Plaintiff by epidemic student cheating on tests at Ross resulting in low vet board licensure pass rates after graduation - "which may include RUSVM's veterinary medicine program ... we may discontinue such programs or direct students to third party lenders for financial support of student tuition and other expenses..." (*Id.*, at 31).

    b. Dr. Elaine Watson - Former Dean of Ross to whom Plaintiff appealed his case: Current location: University of Edinburgh College of Medicine and Veterinary in Edinburgh, Scotland. Source: https://www.linkedin.com/in/elaine-watson-88663793. *Id.*

    c. Dr. Guy St. Jean - Former Academic and Disciplinary Dean of Ross responsible for Plaintiff's dismissal in retribution after he raised mass student cheating on tests in his appeal: Current location: Universite' de Montreal Centre Hospitalier Universitaire Veterinaire in Montreal, Canada. Source: https://chuv.umontreal.ca/english/dt_team/guy-st-jean. *Id.*

    d. Dr. Carmen Fuentealba - Former Dean of Students at Ross who had direct knowledge of and implicitly condoned rampant student cheating on tests; also refused to intervene when apprised of Dr. Camp's non-accommodation of Plaintiff's disability: Current location: College of Veterinary Medicine at Long Island University in Brookville, New York. Source: https://www.zoominfo.com/p/Carmen-Fuentealba/304313531. *Id.*

    e. Adtalem CEO Daniel Hamburger to whom Plaintiff appealed his dismissal and who is no longer with the company, but remains in the Chicago area as CEO of Provation Medical (Source: https://www.linkedin.com/in/dmhamburger18). *Id.* at ¶11.

2. In addition to the former Defendant officials identified above who will be called as adverse witnesses by Plaintiff during trial, <u>all of Plaintiff's witnesses are in the United States</u>:

    a. Former classmates who graduated, now reside in the United States and will corroborate Plaintiff's testimony that he was run off Ross' campus on St. Kitts and threatened with arrest if he ever returned to the school. *See* Complaint, Dkt. 1 at 21, ¶. 56.

    b. Former classmates who graduated, now reside in the United States and will testify that Plaintiff's disability was not accommodated by Ross. Peter Galligan Declaration (Dkt. 85-1) at ¶ 9.

    c. Plaintiff's treating psychologist, Timothy C. Engelmann, Ph.D., who communicated with Dr. Janet Camp, head of Ross' counseling services, that accommodations were necessary to reduce Plaintiff's testing anxieties and diagnosed Plaintiff in Burlingame, California, south of San Francisco, where he continues his practice today. *Id.* at ¶ 10.

    d.  Michelle Kwok, MD, Board-certified in adult psychology and neurology, who diagnosed Plaintiff's issues and prescribed Klonopin and Zoloft. Dr. Kwok diagnosed Plaintiff in Menlo Park, California, south of San Francisco, where she continues her practice today. *Id.*

    e.  Dr. Karen Brandt, Director of the American Veterinary Medical Association, responsible for audits of vet schools receiving U.S. Department of Education student loan funds, will testify as to the adherence by Ross of the DOE's and AVMA's policies and procedures regarding student cheating and accommodation of student disabilities. Dr. Brant currently offices out of the AVMA's headquarters in Schaumburg, IL. (*See* attached Timothy J. Galligan, Esq. Declaration at 3-4, ¶¶ 9-12).

    f.  Howard D. Sorensen, Esq., senior attorney in the Office of the Inspector General of the U.S. Department of Education will be called to testify as to the testing practices of Ross and the fraudulent means by which Ross certified "Satisfactory Academic Progress" by students as required by law and received Title IV federal student loan proceeds. Mr. Sorensen continues to be employed by the OIG of the DOE in Washington, DC. (Timothy J. Galligan, Esq. Declaration at 2-3, ¶¶ 7-8).

    g.  Cindy Oakley, Defendant's ombudsman based in Downers Grove, IL and charged with the "highest level of escalation" responsibility to speak with Plaintiff's representative about subject case. Ms. Oakley is no longer employed by DeVry Education Group but remains in the greater Chicago area according to her LinkedIn page (Timothy J. Galligan, Esq. Declaration, at 4-5, ¶¶ 13-14).

    h.  Audrey B. Kaplan, Esq., Defendant's legal counsel based in Florida and Chicago who communicated with and threatened Plaintiff post-dismissal with full knowledge of his representation by legal counsel in violation of the Florida Rules of Professional Conduct (Timothy J. Galligan, Esq. Declaration at 5, ¶¶ 15-18).

As to witness accessibility and the two cases cited by Ross, Ross notably fails to acknowledge the following distinguishing facts: First, the *Zara* Court understandably found it relevant that in that case – very unlike the situation here: "the vast majority of witnesses … are on St. Kitts". 2017 WL 977002, at *4 – those witnesses in fact even including anticipated testimony relating to an arrest of the plaintiff by the local St. Kitts Police Department, as well as by local

apartment managers where the alleged perpetrator and victim lived together and had known past problems.

Ross also fails note that its second cited case, *Archut*, *supra*, similarly turned on the finding (not present here) that: "[t]he Court thus agrees with the defendants that the key witnesses still live in St. Kitts. . . ." [10-cv-1681 at 31].

In this case, by contrast, *there is no key fact witness left on St. Kitts to testify*. Both of Ross' cited cases on this point, therefore, are plainly distinguishable on the very important private interest grounds of local witness availability and are thus inapposite and fail to meet Ross' heavy burden.

A final consideration with respect to these factors that Ross fails to acknowledge is that, although English is the official language on St. Kitts, many natives speak Creole, complicating jury selection and testimony understanding at trial and revealing the United States to be the most appropriate place for the resolution of the remaining issues in this case.

Finally, all of Plaintiff's willing witnesses live in the United States at present (see above and Plaintiff's supporting declaration to this response) – distinguishing, as noted above, the *Zara* and *Archut* cases Ross cites. Some of Plaintiff's witnesses even reside in the Northern District of California – Plaintiff's requested destination court if this Court is inclined to transfer what is left of this case. The first, second and third factors, too, then, thus clearly favor the Northern District of California over St. Kitts.

   **3.**  **<u>The Fourth Factor (Ability to View the Premises) Also Favors Plaintiff.</u>**

The fourth factor (availability to view the premises) also, in fact, favors Plaintiff over Ross, because this is not a case in which the physical premises or its layout is at all relevant to Plaintiffs' claims for relief. While this factor possibly could become relevant in, say, a personal or premises liability case, it has no bearing on Plaintiff's claims here. See generally Plaintiffs' Complaint (none

of Plaintiffs' claims turns on the physical premises of the school or its layout). On the contrary, there is no dispute here that Plaintiff's claims turn on United States law, making this factor only further favor Plaintiff's position here that the case should remain in the United States and not be transferred to St. Kitts.

> **4.    The Fifth, Catch-All Factor (Practical Considerations that Make Trial of a Case Easy, Expeditious, and Inexpensive), Too, Favors Plaintiff.**

Unlike the factual situations in *Zara* and *Archut*, discussed above, none of the material and adverse discovery or trial witnesses to be called by Plaintiff reside or are presently located in St. Kitts, and all of the Plaintiff's witnesses reside in the United States, including some who reside in the Northern District of California and in Illinois. This factor alone clearly favors the Northern District of California, or Illinois, over St. Kitts and is yet another reason why *Zara* and *Archut* relied upon by Ross are distinguishable.

**The Public Interest Factors, Too, Favor Plaintiff over the Defendants.**

> **1.    The Interest in Having the Trial in a Forum That Is at Home with the Law that Must Govern the Action Requires a United States, not St. Kitts, Court.**

Ross implies, without sufficient authority, that St. Kitts' law governs this dispute. Ross is wrong. California law and United States law apply in this case. The United States, not St. Kitts, has the more significant relationship to this dispute, and the United States has a strong interest in making sure that an American with a disability is treated fairly by a university, owned by an American company – even where the university's campus happens to be located overseas.

The following facts are particularly relevant to this factor in underscoring that United States, not St. Kitts, law applies to this dispute.

1. During the summer of 2012, while living in Burlingame, California, which is in the Northern District of California, Plaintiff applied to Ross through its Office of Admissions located in North Brunswick, New Jersey. Plaintiff's Decl. at ¶2. Plaintiff became interested in attending Ross after reading its website, viewing a recruitment seminar in the

United States and feeling assured that the same testing accommodation of private space and more time, if needed, that had been afforded to him throughout all four years in high school and all four years in college would continue on the island of St. Kitts. *Id.*

2. When questions arose regarding Plaintiff's application or the applications process, Plaintiff called the tollfree U.S. phone number listed for Ross Admission Office: (855) 767-7838. *Id.* at ¶3.

3. In early April of 2013, Plaintiff was contacted by an admissions officer whom Plaintiff asserts was in New Jersey in Ross' Admissions Office. *Id.* at ¶4. Plaintiff and the admissions officer discussed the debt Plaintiff would have to incur to attend Ross, equal to $300,000; Plaintiff's academic record; and Plaintiff's passion for veterinary medicine. *Id*. The admissions officer responded positively to Plaintiff's answers and told Plaintiff his application would be accepted. *Id*.

4. Shortly thereafter, a large envelope arrived at Plaintiff's home in California from Ross' Administrative Office in New Jersey with all kinds of new student forms and other materials, including the admissions application and Ross Student Handbook (which form the basis of the contract between Plaintiff and Ross), to be completed Plaintiff before school started in a few weeks' time and to be mailed back to the Office of Admissions in New Jersey. *Id.* at ¶5.

5. The contract contemplates the application of U.S. law, making several references to the Family Educational Rights and Privacy Act, 20 U.S.C.A. 1232g (including the right to file a complaint with the U.S. Department of Education in Washington, DC if Ross failed to comply with FERPA requirements); the *Guide for the Care and Use of Laboratory Animals, NRC 2011, 8th Edition* sponsored by the National Institutes of Health, the U.S. Department of Health and Human Services and the U.S. Department of Agriculture; the Animal Welfare Act of 1966, P.L 89-544; and the Federal Copyright Act of 1976, P.L. 94-553, as amended. Ross students were specifically directed to a DeVry (Adtalem predecessor) Title IX associate and coordinator in Illinois (area code 630) for discrimination or "any alleged non-compliance with or activity prohibited by Title IX of the Education Amendment of 1972. 2015 Ross Student Handbook and 2013 Ross Student Handbook attached as Exs. "C" and "D", respectively, to defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Portions of Plaintiff's Third Amended Complaint.

6. The contract specifically states that Ross "complies with all applicable laws regarding discrimination, harassment, retaliation and equal opportunity." Moreover, the contract allows for a grade appeal resulting from "unlawful discrimination on the basis of ... disability or other similar improper consideration other than academic performance." Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. 701, prohibits any entity that receives federal financial assistance such as student loans, like Ross, from discriminating against persons with disabilities. Plaintiff's Decl. at ¶5.

7.  Thereafter, all federal student loan applications (Plaintiff was able to attend Ross as a result of U.S. Department of Education-sourced student loans), wired money transfers and other administrative paperwork were mailed or emailed either to, from or through Ross' Administrative Offices in New Jersey. *Id.* at ¶6.

8.  On May 5, 2014, Plaintiff's treating psychologist, Timothy C. Engelmann, PhD, emailed Dr. Janet Camp, head of Ross' counseling services, at jcamp@rossvet.edu.kn, with a copy to Plaintiff, Subject: Galligan Accomodation (sic) that requested testing accommodations to reduce Plaintiff's testing anxieties. *Id.* at ¶7. Prior to admission to Ross, Plaintiff had been seeing Dr. Engelmann in Burlingame, California where Dr. Engelmann continues his practice today. *Id.*

It was agreed in the United States that United States law-based accommodations were supposed to be provided to Plaintiff when he ultimately arrived in St. Kitts (but were not provided as agreed). And although Ross initially retaliated against Plaintiff in the first instance in St. Kitts when he brought attention to widespread test cheating at Ross, the retaliation continued when he left St. Kitts for the United States and continues here to this day.

Moreover, California, not St. Kitts, has the more significant relationship to this dispute. It is indisputable that the Northern District of California is better equipped to understand and apply California and United States laws, than a St. Kitt's court. The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action thus clearly favors of the Northern District of California, and not St. Kitts. Defendants cannot reasonably argue that St. Kitts' courts are better suited to interpret and apply United States education and disability laws or the operative agreements and other documents here explicitly incorporating and choosing U.S. law (not St. Kitts law).

Defendant's citation of *Panchal v. Med. Univ. of the Americas, Ltd.*, Claim No. NEVHCV 2003/0096 Eastern Caribbean Sup. Ct., St. Kitts and Nevis, Nevis Cir. March 28, 2011 is misplaced, because <u>all</u> facts chronicled by the court there, in its favorable ruling for a student accused of cheating in that case, occurred at the school on St. Kitts. That is not at all our case,

where the operative agreements being sued on choose, incorporate, and apply United States law and where the complained of behavior here began and continued in the United States.

### 2. The Local Interest in Having Localized Disputes Decided at Home

Plaintiff is a natural born U.S. citizen who resided in the Northern District of California at the times most relevant to the resolution of the remaining cause of action. Therefore, there is a local interest in having a localized dispute decided at home in the Northern District of California, not in St. Kitts. St. Kitts was simply the location of the campus where Plaintiff briefly attended classes, but the contractual and other legal wrongs complained of under U.S. law began in the United States and continued here after Plaintiff left the school and returned home. This is not a "localized" St. Kitts dispute. St. Kitts cannot reasonably be argued to have a greater interest than a U.S. court in deciding these long-running U.S.-law issues existing between a U.S. citizen and a U.S.-owned, operated, and controlled school that merely happens to have a campus the plaintiff briefly attended in St. Kitts.

### 3. The Avoidance of Unnecessary Problems in the Application of Foreign Laws

If this Court were to dismiss this case subject to Defendants agreeing to be sued in St. Kitts, the court in St. Kitts would still have to apply California law and United States law. All of the very obvious problems associated with such an outcome can be avoided by transferring this case to the Northern District of California where it belongs, or retaining it in this District, where it also belongs.

### Other Factors

### St. Kitts is Not an Adequate Alternative Forum

Earlier, out of an abundance of caution, and in light of Defendants' expected attempts to avoid justice in the United States, Plaintiff sought the advice and representation of 11 attorneys

licensed to practice in St. Kitts/Nevis. It is a telling indication of Plaintiff's inability to get a fair trial against Ross in St. Kitts that none of the attorneys were willing to challenge Ross in St. Kitts. Three refused outright. Seven did not reply to two separate invitations. And one raised issues regarding its inability to depose necessary witnesses outside St. Kitts. Timothy J. Galligan, Esq. Declaration at 1-2, ¶¶. 3-5. St. Kitts, a remote island in the West Indies in which no local attorney is willing to sue Ross cannot reasonably be deemed an adequate forum for this dispute. And to add insult to injury, Plaintiff has been threatened by Ross that if he returns to St. Kitts he will be arrested. *See* Complaint at 21, ¶56.

Defendant's reliance on *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund,* 589 F. 3rd 417, (7th Cir. 2009) is also misplaced. That case involved a loan contract drafted, executed, and allegedly breached in Bulgaria, containing a Bulgaria choice-of-law provision, written in Bulgarian, supported by local documents also written in Bulgarian, with witnesses located in Bulgaria, and where the plaintiffs initially brought suit in Bulgaria making claims under Bulgarian law where all legal claims were rejected by local courts. For the reasons already discussed, that is not at all this case, which is brought under United States law and involving United States parties on both sides.

## **Plaintiff's Choice of Forum is Due Some Deference**

A strong presumption of convenience exists in favor of a plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests "clearly" favor an alternative forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1991). Ross, for the reasons discussed here, fail to show any proper legal or factual basis justifying moving this case to St. Kitts and thus fail meet their heavy burden of overcoming this presumption. Ross also fails to justify the manifest prejudice and inequity that will result from

forcing an individual plaintiff, Galligan, to litigate this matter overseas against a large, multi-national corporation. This public interest factor, too, then, strongly favors Plaintiff and the Northern District of California.

### The Balance of Private and Public Interest Factors

Ross must show that the balance of the public and private factors tips decidedly in favor of trial in St. Kitts. *See Lacey v. Cessna Aircraft Company,* 932 F.2d 170, 180 (3$^d$ Cir. 1991). Ross fails to do this. The above discussion of the way in which all of the private and public interest factors strongly favor Plaintiff, not Ross, makes clear this balance tips only in Plaintiff's favor.

### Venue Would have Been Proper in Either California or Illinois at the Time this Suit Was Filed

Venue is not affected by events occurring after the suit is filed, such as the dismissal of one of the parties. *Exxon Corp., v. FTC*, 588 F.2d 895, 899 (3rd Cir. 1978), *overruled on other grounds.* Under the general venue statute, among other places, venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. §1391(b)(2). And regardless of where the events giving rise to this lawsuit occurred, a defendant who is not a resident of the United States can be sued in any judicial district. 28 U.S.C. §1391(c)(3). For the reasons stated *supra,* venue is therefore proper in either California or Illinois.

### The Personal Jurisdiction of the Northern District of California and of This Court

Ross cannot reasonably contest, and in fact has not specifically contested, the jurisdiction of the Northern District of California. Ross has not contested personal jurisdiction in this Court. Rather, thus far, Ross has only asked to transfer the case to St. Kitts, which is a manifestly inadequate forum for all the reasons just discussed. If Ross chooses to contest personal jurisdiction of the Northern District of California, it should be required do that in that court once this case is transferred there.

**CONCLUSION**

This Court has discretion to dismiss on *forum non conveniens* grounds "when an alternative forum has jurisdiction to hear (the) case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to the defendant ... out of all proportion to plaintiff's convenience ... or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

Because this case is now reduced to a single breach of contract claims, and because the contract was formed in California (and New Jersey) and explicitly chooses and incorporates U.S. statutory and other law, St. Kitts would appear to not even have jurisdiction, much less be the most appropriate or convenient forum for the parties. And because Ross' parent is headquartered in Downers Grove, Illinois, and has litigated here extensively, Ross cannot reasonably argue, in a Northern Illinois courtroom with which it has grown familiar, the oppressiveness and vexation of litigating in the United States.

A threshold requirement for a *forum non conveniens* dismissal is the existence of an alternative forum that is both available and adequate, *Stroitelstvo, supra.* For the reasons stated herein St. Kitts cannot reasonably be deemed a better court to interpret and apply U.S. law than the Northern District of California or Illinois, both substantively and in terms of convenience and fairness to the parties in the United States. It is also not even reasonably "available" to Plaintiff given the power and presence of Ross on the small island.

Plaintiff cannot find a more telling example of why "convenience," "sources of proof," and "ends of justice" favor the United States and rule out the availability and adequacy of St. Kitts than the fact that, out of the 11 St. Kitts attorneys consulted for this matter, none agreed to oppose Ross,

one raised issues regarding the inability of its local judicial system to apply appropriate law, and another raised concerns about its inability to depose necessary witnesses outside St. Kitts. *See* Timothy J. Galligan, Esq. Declaration at 1-2, ¶¶ 3 - 5).

Because all of the private and public interest factors favor Plaintiff's choice of forum in the Northern District of California or Illinois over the island of St. Kitts, and because Ross fails to present any sufficient factual or legal basis overcome the strong presumption in favor of Plaintiff's choice of forum, this case, if transferred, should remain in the United States and go to the Northern District of California, not St. Kitts.

Respectfully submitted this 4th Day of March 2020,

/s/ Michael W. Ford
Michael W. Ford, Esq.
LAW OFFICES OF MICHAEL W. FORD (local counsel)
IL Bar # 0846139
4 Timberwood Lane
Riverwoods, IL 60015
Tel. 847.948.7884
Email: mfordski@gmail.com


-AND-

/s/ Emil T. Bayko
Emil T. Bayko
IL Bar # 0141356
PREBEG, FAUCETT & ABBOTT, PLLC
8441 Gulf Freeway, Suite 307
Houston, TX 77017
Tel. 832.742.9260
Fax 832.742.9261
Email: tbayko@pfalawfirm.com

***ATTORNEYS FOR PLAINTIFF PETER M. GALLIGAN***

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record in this matter, including those listed below, by filing it using the Court's CM/ECF system on today's date:

>Brian Stolzenbach
>Megan Troy
>Thomas Horan
>SEYFARTH SHAW LLP
>233 S. Wacker Drive, Suite 8000
>Chicago, IL 60606-6448
>Tel. 312.460.5551
>bstolzenbach@seyfarth.com
>mtroy@seyfarth.com
>thoran@seyfarth.com

DATED this 4th Day of March 2020,

>*/s/ Emil T. Bayko*
>EMIL T. BAYKO