**THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PETER M. GALLIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17 C 6310 |
| | ) | |
| ROSS UNIVERSITY SCHOOL OF | ) | Judge Joan H. Lefkow |
| MEDICINE SCHOOL OF VETERINARY | ) | |
| MEDICINE (ST. KITTS) LIMITED; and | ) | |
| DOES 1 THROUGH 50, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Peter Galligan, a Texas citizen, filed this lawsuit against Ross University School of

Medicine School of Veterinary Medicine (St. Kitts) Limited ("Ross"), a citizen of St.

Christopher and Nevis ("St. Kitts"), bringing several claims related to his dismissal from Ross's

veterinary school program. After this court dismissed the only party located in Illinois, the court

requested briefing on jurisdiction and venue. Ross moved to dismiss on *forum non conveniens*

grounds. (Dkt. 84.) Galligan moved to transfer venue to the Northern District of California. (Dkt.

85.) Both motions are denied.[1]

**STATEMENT**

**I.     Background**

In 2012, Galligan applied to Ross's veterinary program while living in California. Ross is

a private ordinary company organized under the laws of St. Kitts, and its campus is located there.

---

[1] This court has jurisdiction under 28 U.S.C. § 1332 because the parties' citizenship is completely
diverse and the amount in controversy exceeds $75,000. Venue lies under 28 U.S.C § 1391(b) because, at
the time of filing, one of the defendants resided in this district.

When Galligan had questions about the application process he called Ross's United States phone number. In 2013, Galligan was contacted by an admissions officer located in New Jersey to discuss the potential cost of attending the program at Ross, financing options, and his academic record and interest in veterinary sciences. Shortly after this conversation, Galligan received a packet in the mail including forms and materials to be mailed back to New Jersey before school began, and the Ross Student Handbook. As the court explained in an earlier order, the Student Handbook forms part of a contract between Galligan and Ross. (Dkt. 48 at 11–12.)

Galligan began school at Ross in St. Kitts in 2013 and requested accommodations for test anxiety. In May 2014, Galligan's treating psychologist emailed the head of Ross's counseling services with information about the accommodation request. Galligan's request was denied. Galligan was eventually dismissed from Ross for failure to meet academic requirements. Galligan alleges that Ross breached the Student Handbook by failing to provide his requested testing accommodations and by retaliating against him. The Student Handbook does not contain a choice of law or venue provision. (Dkt. 63-3.)

Although Galligan now lives in Texas and Ross is a St. Kitts corporation, Galligan sued Ross in this district, which is home to Adtalem Global Education, Inc., the parent company of the parent company of Ross. Ross was represented by the same Illinois attorneys as Adtalem, who continue to represent Ross. After the court dismissed Adtalem, severing the last link this case has to Illinois, the court ordered the parties to brief the issue of venue. Galligan proposes transferring this case to the Northern District of California. Ross proposes dismissing the case for *forum non conveniens*, with the expectation that Galligan could refile in St. Kitts. This court could also keep the case, although it is neither party's first choice. Venue is appropriate, and the court has personal jurisdiction over Ross because Ross appeared and litigated the suit on the merits for

nearly three years without contesting jurisdiction. *See, e.g.*, *Continental Bank, N.A.* v. *Meyer*, 10 F.3d 1293, 1296–97 (7th Cir. 1993); Fed. R. Civ. P. 12(h) (personal jurisdiction objection waived by failing to include it in Rule 12 motion or initial responsive pleading).

Venue analysis requires the court to consider the location of potential witnesses. Two potential witnesses live in Illinois—Cindy Oakley, formerly of the Adtalem Ombudsman's Office, and Audrey Kaplan, formerly Ross's counsel. Galligan interacted with them after he was dismissed, making them at best tangential witnesses. Galligan's treating psychiatrist and psychologist, who will support his claim that he has testing anxiety, reside and practice in California. His former classmates, who could corroborate his lack of testing accommodations, reside elsewhere in the United States. Dr. Camp, the former counselor at Ross who denied Galligan's testing accommodation, lives in Saudi Arabia. Dr. St. Jean, the former academic and disciplinary dean of Ross who dismissed Galligan, lives in Canada. Dr. Watson, the former dean of Ross who handled Galligan's administrative appeal, lives in Scotland. No witnesses are in St. Kitts.

Galligan lists other potential fact witnesses, some in Illinois, who are not truly witnesses in this case. Galligan names the former CEO of Adtalem as having denied Galligan's appeal of his dismissal. There is no evidence that the CEO of the multibillion-dollar parent company of the parent company of Ross participated personally in Ross's individual academic decisions. To the contrary, Galligan's own evidence suggests that "The Office of Ombudsman is the highest level of escalation for student concerns in the [Adtalem] Organization." (Dkt. 87-1 ¶ 3.) Galligan also names the director of the American Veterinary Medicine Association (who lives in Illinois), and a senior attorney at the Department of Education's Office of the Inspector General (in DC). Galligan proposes that they can testify to Ross's failure to adhere to testing and accommodation

policies. (Dkt. 87 at 4–5.) Here too Galligan's evidence undermines his assertion. Galligan's

father, Timothy Galligan, asked both of these people whether, hypothetically, it would be

problematic if a school condoned cheating and failed to accommodate disabled students;

unsurprisingly, both said yes. (Dkt. 87-1 ¶¶ 7–11.) That does not make them witnesses to the

concrete factual issues that this case presents—whether Galligan was entitled to and denied

accommodations, and whether he was retaliated against. The court does not consider these

people in its analysis.

The court must also consider whether St. Kitts is an adequate forum in which Galligan

could pursue his claims. Galligan argues that it is not because Timothy Galligan could not find

counsel for him in St. Kitts. Timothy Galligan reached out to eleven different law firms in St.

Kitts. Of those eleven, three declined, one suggested St. Kitts would be unable to apply the

relevant laws, seven never responded, and one indicated potential interest but raised questions

about its ability to depose foreign witnesses. Otherwise, Galligan has identified no material

limitations on the St. Kitts judiciary's ability to handle this case. Although neither party has

raised the issue, the court takes judicial notice that St. Kitts is not a signatory to the Hague

Evidence Convention, making the acquisition of evidence abroad somewhat more difficult in St.

Kitts courts than in a United States federal court. *See Brown* v. *Marriott Int'l, Inc.*, No. 14 C

5960, 2017 WL 4484194, at *8 n.5 (E.D.N.Y. Sept. 29, 2017).

II.     **Motion to Transfer to the Northern District of California**

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been

brought . . . ." 28 U.S.C. § 1404(a) (2018). "[A] transfer under § 1404(a) is appropriate if: (1)

venue is proper in the transferor court; (2) venue and jurisdiction would be proper in the transferee

court; and (3) transfer will serve the convenience of the parties and witnesses and the interest of

justice." *Genocide Victims of Krajina* v. *L-3 Servs., Inc.*, 804 F. Supp. 2d 814, 822 (N.D. Ill. 2011).

Galligan, as the party seeking transfer, bears the burden of proof. *Hirst* v. *SkyWest, Inc.*, 405 F. Supp.

3d 771, 778 (N.D. Ill. 2019).

The Northern District of California is not a proper venue. Venue lies in a district where (1)

any defendant resides, (2) "a substantial part of the events or omissions giving rise to the claim

occurred," or, if neither applies, (3) any defendant is subject to personal jurisdiction. 28 U.S.C.

§ 1391(b). Ross does not reside in California. Only an insubstantial portion of the breach of contract

claim occurred in California, which is where Galligan received a copy of the Student Handbook that

forms part of his contract with Ross. But Galligan did not negotiate the contract in California, the

contract appears to have been drafted in New Jersey, and the breach occurred in St. Kitts. Receiving

a portion of a contract in a state is not a substantial connection.

Because neither of the first two sections applies, venue is appropriate only if the Northern

District of California has jurisdiction over Ross. Galligan has made no showing that it does. Ross is

incorporated and located in St. Kitts. Galligan does not provide any evidence that Ross has any

contacts with California. Indeed, his only response to Ross's argument that California lacks

jurisdiction is that Ross should have to contest jurisdiction after the case is transferred. That is

incorrect. Galligan must prove that venue is appropriate in the Northern District of California.

The only way venue could be appropriate in California is if Galligan proves that Ross "is subject

to personal jurisdiction" in California. 28 U.S.C. § 1391(b)(3). Because he has not met that

burden, the motion to transfer is denied.

### III.    Motion to Dismiss for *Forum Non Conveniens*

#### A.    Legal Standard

A trial court may dismiss a case it has jurisdiction over for *forum non conveniens* "if it

best serves the convenience of the parties and the ends of justice." *Kamel* v. *Hill-Rom Co., Inc.*,

5

108 F.3d 799, 802 (7th Cir. 1997). If a foreign forum has jurisdiction over a case, and when trial

"in the chosen forum would result in vexation and oppression to the defendant which would far

outweigh [Galligan's] convenience or when the chosen forum would generate administrative and

legal entanglements the court may dismiss the case." *Id.* To determine whether the case should

be dismissed for *forum non conveniens*, the trial court must first determine whether there is an

available and adequate alternative and, if there is, balance relevant public and private interest

factors. *Id.* "A *forum non conveniens* determination is consigned to the trial court's sound

discretion." *Id.* "The doctrine of *forum non conveniens*, however, is an exceptional one that a

court must use sparingly." *Deb* v. *SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). "[U]nless the

balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

disturbed." *Id.*

### B.       Available and Adequate Forum

A threshold question during a *forum non conveniens* analysis is whether the proposed

alternative forum is available and adequate. *Id.* at 803. A forum is available "if all parties are

amenable to process and are within the forum's jurisdiction." *Id.* A forum is adequate if "the

parties will not be deprived of all remedies or treated unfairly." *Id.* The parties agree that St.

Kitts is an available forum.

St. Kitts is also adequate. Ross argues St. Kitts is an adequate forum because it

recognizes breach of contract claims and would provide Galligan with a remedy even if it is not

the same remedy he would receive in a U.S. court. To support its argument, Ross cites several

cases recognizing St. Kitts as an adequate forum. *See, e.g.*, *Archut* v. *Ross Univ. Sch. of*

*Veterinary Med.*, No. 10-1681, 2013 WL 591365, at *4–6 (D.N.J. Oct. 31, 2013), *aff'd*, 580 F.

App'x 90 (3d Cir. 2014).

6

Galligan asserts that St. Kitts is inadequate because "no local attorney is willing to sue Ross" there. (Dkt. 87 at 11.) Galligan's evidence disproves his argument. In his supporting affidavit, Timothy Galligan states that "[o]ne firm did indicate a potential interest in representation contingent upon answers to certain questions." Timothy Galligan Aff. ¶ 6. Further, Ross has cited an example of a case where a student prevailed in a similar suit against a school in St. Kitts. *See Panchal* v. *Med. Univ. of the Americas, Ltd.*, Claim No. NEVHCV 2003/0096 (Eastern Caribbean Sup. Ct., St. Kitts and Nevis, Nevis Cir. Mar. 28, 2011), *available at* http://www.worldcourts.com/ecsc/eng/decisions/2011.03.28_Panchal_v_Medical_University_of _the_Americas.pdf. Galligan therefore fails to prove he could not receive a fair trial in St. Kitts. Thus, St. Kitts is both adequate and available as an alternate forum.

### C.    Public and Private Interest Factors

Once it is established an adequate alternative forum is available, the court must balance the relevant public and private interest factors. When a plaintiff chooses his home forum to file suit, it is reasonable to assume this choice is convenient, and a court should not supplant that choice. *Kamel*, 108 F.3d at 802 (citing *Piper*, 454 U.S. at 241). However, when a plaintiff chooses to file suit in a forum foreign to him, their "choice of forum deserves less deference." *Id.* Here, because Galligan was a resident of St. Kitts when the incident occurred, California when he filed suit, and Texas now, his choice to file suit in Illinois against a foreign defendant is given less deference.

#### 1.    Private Interest Factors

In a *forum non conveniens* analysis the private interest factors are: (1) "the relative ease of access to sources of proof," (2) the "availability of compulsory process for the attendance of unwilling witnesses" and "the cost of obtaining the attendance of willing witnesses," (3) "the

possibility of viewing the premises, if necessary," and (4) "all other practical problems that make trial of a case easy, efficient and economical." *Id.* Neither party in this case addresses the first or fourth factor, which the court assumes are neutral. The third factor is neutral because there are no premises to view. Galligan's claim stems from alleged failure to accommodate a mental disability in St. Kitts, which does not turn on the state of Ross's facilities.

The availability of compulsory process and the cost of obtaining the appearance of willing witnesses weigh against dismissal. There are no potential witnesses in St. Kitts, but there are two in Illinois, although their testimony will be tangential at best. The key nonparty witnesses who allegedly denied Galligan's accommodations and dismissed him all reside abroad: Dr. Camp in Saudi Arabia, Dr. Watson in Scotland, and Dr. St. Jean is in Canada. Neither party proposes whether these witnesses would appear voluntarily in either St. Kitts or Illinois, but either forum would be inconvenient for Dr. Camp and Dr. Watson. Illinois would be less inconvenient for Dr. St. Jean. *See Rowell* v. *Franconia Minerals Corp.*, 582 F. Supp. 2d 1031, 1037 (N.D. Ill. 2008) ("Travel between Canada and Illinois is not particularly difficult or expensive."). Compulsory process will, however, be slightly easier here, in a country that has signed the Hague Evidence Convention, than in St. Kitts, which has not.

Galligan's treating psychologist and psychiatrist, who are both in California, will also have important testimony. Illinois is significantly more convenient than St. Kitts for these witnesses. Moreover, compulsory process across federal district courts is much easier than across national boundaries. Galligan's classmates all reside within the United States, though their testimony is less important because it merely corroborates Galligan's likely uncontested claim that he did not receive testing accommodations. Galligan does not specify where in the United States his witnesses reside, and some parts of the United States are closer to St. Kitts than to the

8

Northern District of Illinois—Puerto Rico, U.S. Virgin Islands, and some parts of Florida. Still, because federal law streamlines cross-district discovery and because domestic flights are typically cheaper and easier than international ones, compulsory process is likely easier and voluntary appearance more convenient in this court than in St. Kitts. Because compulsory process is easier across the board in this forum and this forum is substantially more convenient for most witnesses if they are willing to appear, this factor weighs against dismissal.

### 2. Public Interest Factors

A district court must also balance the relevant public interest factors. The public interest factors for the court to consider include: (1) "the administrative difficulties stemming from court congestion," (2) "the local interest in having localized disputes decided at home," (3) "the interest in having the trial of a diversity case in a forum that is at home with the laws that must govern the action," (4) "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law," and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* Because neither party addresses administrative difficulties, the court assumes that factor is neutral. Moreover, this is a modest breach of contract case that should not meaningfully burden any court's docket.

The local interest factor weighs in favor of dismissal. Because Galligan's request for accommodation, denial of accommodation, and denied appeal occurred in St. Kitts, St. Kitts has the stronger local interest in this dispute. Galligan argues that because he a United States citizen and because the alleged contractual harm began in the United States, the United States has the larger interest in resolving this dispute. The United States has some interest in protecting its citizens from breaches of contract, even if the breaches and counterparties are abroad. As this court is likely the only court in the United States with jurisdiction over Ross for this claim, this

9

district shares, to a lesser extent, the same interests as the nation. But that does not mean that the

United States has a stronger interest than St. Kitts. Galligan chose to go to school in St. Kitts; he

was a St. Kitts resident when all his injuries occurred. Indeed, the crux of his injury is that he

was not allowed to stay in St. Kitts longer. St. Kitts has a much stronger interest in this case than

the United States—and therefore this district—does.

Next, the choice of law factor weighs against dismissal. The district court is not required

to determine which law applies for a *forum non conveniens* analysis but must "consider the

impact of choice of law problems on the forum, particularly since the need to apply foreign law

points towards dismissal. *Archut*, 2013 WL 5913675, at *11 (citing *Piper Aircraft Co.* v. *Reyno*,

454 U.S. 235, 251 (1981)). Because it is burdensome both to apply foreign law and to evaluate

thorny choice-of-law issues, even if there is doubt about which law applies, it supports dismissal.

Although choice of law would ordinarily be difficult, this case comes in an unusual posture: the

parties have waived choice of law issues in this court by briefing two motions to dismiss on the

assumption that Illinois law governs the contract. (Dkt. 19 at 8 n.3 ("Defendants are content to

apply the case law of the forum state . . . .")); *McCoy* v. *Iberdrola Renewables, Inc.*, 760 F.3d

674, 684 (7th Cir. 2014) ("The choice of law issue may be waived . . . if a party fails to assert

it."). Thus, if this court kept the case, there would be no choice of law problems; the court would

continue to apply Illinois law. If the court dismissed the case, however, it is unclear whether a St.

Kitts court would consider the parties bound by their representations in this court that Illinois law

controlled. If so, a St. Kitts court would have to apply foreign law, weighing against dismissal. If

not, there is still a chance that the St. Kitts court would have to apply foreign law if its choice of

law rules apply the law where the contract was formed instead of the law with the most

10

significant relationship. Because this court will apply local law but a St. Kitts court might have to apply foreign law, this factor weighs against dismissal.

Finally, the fairness-to-jurors factor weighs in favor of dismissal. Illinois citizens have little stake in this suit between a Texas citizen and a St. Kitts company over events that occurred in St. Kitts. Their primary interest is as citizens of the United States, not of the Northern District of Illinois. St. Kitts citizens, however, have a strong interest in the case, which not only involves one of its own companies but concerns alleged wrongdoing and injuries that occurred in St. Kitts against a former resident of St. Kitts.

###### D.      Balancing Public and Private Interest Factors.

In the court's judgment, the balance of these factors does not support dismissal. First, the court ordinarily should not invoke the rare remedy of *forum non conveniens* dismissal unless the public and private interest factors strongly favor dismissal, which they do not. *Deb*, 832 F.3d at 806. The public and private interest factors point in opposite directions, which does not "strongly" favor dismissal. Moreover, the private interest in keeping the case in the United States is slightly stronger than the public interest in moving it to St. Kitts. Most importantly, while the events transpired in St. Kitts, the plaintiff and all witnesses have left St. Kitts and the parties do not suggest that there are any documents there. Not only are all witnesses beyond St. Kitts courts' compulsory process, but St. Kitts is not a member to international evidentiary treaties, making it more difficult to secure the testimony of foreign witnesses there than here. Although there are few witnesses in this district, and their testimony is relatively unimportant, there are several witnesses in the United States.

On the public-interest side, St. Kitts has a much stronger connection in the subject-matter of the case and it asks much of the Northern District of Illinois's citizens to resolve a dispute that

11

connects so remotely to their home district. But keeping the case does not pose any issues of comity, as this court will apply Illinois law, and a St. Kitts court would have to resolve a thorny choice-of-law question that might have led to the application of some U.S. state's law. On balance, the public interest factors point less strongly toward dismissal than the private interest factors point toward retaining the case.

Finally, the goal of analyzing the public and private interest factors is to answer the ultimate question of whether Galligan's choice to litigate in the Northern District of Illinois so vexes and harasses Ross that justice requires dismissal. Although Galligan does not live here and no longer advocates for this case to remain in this district, he wishes to keep the case in his home country. That appears to be possible only in this district. Ross, on the other hand, has not shown that it is overwhelmingly inconvenient or unfair to keep the case here. Indeed, Ross appears to have little burden litigating here, as a private entity the top of whose corporate ladder is in Illinois. Ross has failed to object to jurisdiction here, litigated here for nearly three years, and even agreed that Illinois law should govern. Ross is represented by the same counsel that represented the now-dismissed Adtalem defendants, suggesting some comfort in this forum.

## ORDER

Both the motion to dismiss (dkt. 84) and the motion to transfer (dkt. 85) are denied.

Date: May 20, 2020

_____

U.S. District Judge Joan H. Lefkow